
FILED
2023 Jul-28 PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| KAI SPEARS | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | **7:23-CV-00692-LSC** |
| THE NEW YORK TIMES COMPANY | ) | |
| | ) | **ORAL ARGUMENT** |
| **Defendant.** | ) | **REQUESTED** |

## DEFENDANT THE NEW YORK TIMES COMPANY'S
## MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6)
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice* pending)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice* pending)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant**
**The New York Times Company**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

RELEVANT BACKGROUND .......................................................................... 4

    A.    The Parties ..................................................................................... 4

    B.    The Shooting ................................................................................. 4

    C.    The Challenged Report ................................................................. 6

    D.    The Complaint .............................................................................. 8

ARGUMENT ................................................................................................... 8

I.      STANDARD OF REVIEW ................................................................. 8

II.     THE CHALLENGED REPORT DOES NOT REASONABLY
       CONVEY A DEFAMATORY MEANING ABOUT SPEARS .................. 11

    A.    Because Spears Did Not Plead Special Damages, His
          Complaint Fails as a Matter of Law Unless the Challenged
          Statements Constitute Defamation Per Se ................................... 13

    B.    It is Not Defamatory Per Se to State, Even Erroneously, that
          Someone was a Bystander to, or Victim of, a Crime .................... 15

III.    SPEARS' FALSE LIGHT CLAIM ALSO FAILS AS A
       MATTER OF LAW .......................................................................... 22

    A.    It is Not "Highly Offensive" to Report Incorrectly that
          Spears Was in a Teammate's Car Shortly After He Actually
          Was in the Car ............................................................................. 22

    B.    The Complaint Does Not Plausibly Allege Actual Malice ............. 24

          1.    The Actual Malice Standard Places a "Daunting"
                Burden On Plaintiffs .............................................................. 25

2.    None Of The Complaint's Allegations Satisfies The
      Actual Malice Test ..................................................................... 26

CONCLUSION ........................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Ride Co. v. Vance,*
  235 Ala. 263 (1938) .................................................................................20

*Anderton v. Gentry,*
  577 So. 2d 1261 (Ala. 1991) ..................................................................12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................8

*Bell v. Smith,*
  281 So. 3d 1247 (Ala. 2019) ..................................................................10

*Berisha v. Lawson,*
  973 F.3d 1304 (11th Cir. 2020) ................................................20, 26, 27

*Blevins v. W.F. Barnes Corp.,*
  768 So. 2d 386 (Ala. 1999) ....................................................................12

*Bufalino v. Associated Press,*
  692 F.2d 266 (2d Cir. 1982) ...................................................................17

*Burrascano v. Levi,*
  452 F. Supp. 1066 (D. Md. 1978) ..........................................................18

*Butler v. Town of Argo,*
  871 So. 2d 1 (Ala. 2003) .............................................................13, 14, 15, 23

*Ceravolo v. Brown,*
  364 So. 2d 1155 (Ala. 1978) ..................................................................11

*Chaparro v. Carnival Corp.,*
  693 F.3d 1333 (11th Cir. 2012) ................................................................8

*Clark v. America's First Credit Union,*
  585 So. 2d 1367 (Ala. 1991) ..................................................................14

*Clawson v. St. Louis Post-Dispatch, L.L.C.*,
   906 A.2d 308 (D.C. App. 2006) ..........................................................................18

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   6 F.4th 1247 (11th Cir. 2021) .....................................................................26, 27

*Cottrell v. NCAA*,
   975 So. 2d 306 (Ala. 2007)........................................................................12, 13

*Croce v. N.Y. Times Co.*,
   930 F.3d 787 (6th Cir. 2019) ...........................................................................10

*Drill Parts & Service Co. v. Joy Manufacturing Co.*,
   619 So. 2d 1280 (Ala. 1993).............................................................................20

*Flickinger v. King*,
   2023 Ala. LEXIS 40 (Ala. Apr. 21, 2023) .......................................................23

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989)...........................................................................................27

*Hayes v. Wal-Mart Stores*,
   953 F. Supp. 1334 (M.D. Ala. 1996) ................................................................14

*Hearn v. U.S. Bank, N.A.*,
   2017 U.S. Dist. LEXIS 224778 (N.D. Ala. July 12, 2017) ........................*passim*

*Jones v. Taibbi*,
   400 Mass. 786 (1987) ........................................................................................17

*Kelly v. Arrington*,
   624 So. 2d 546 (Ala. 1993).........................................................................12, 16

*King v. SPLC*,
   594 F. Supp. 3d 1272 (M.D. Ala. 2022) ........................................................3, 25

*Klayman v. City Pages*,
   2015 U.S. Dist. LEXIS 49134 (M.D. Fla. Apr. 3, 2015)...................................25

*Lovingood v. Discovery Communications, Inc.*,
   275 F. Supp. 3d 1301 (N.D. Ala. 2017).............................................................24

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991).....................................................................................20

*McCaig v. Talladega Publishing Co.*,
  544 So. 2d 875 (Ala. 1989)................................................................11, 12, 21

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ........................................................8, 9, 25, 27

*Michtavi v. N.Y. Daily News*,
  587 F.3d 551 (2d Cir. 2009) ...........................................................................18

*Moseley v. Birmingham News Co.*,
  1990 WL 300846 Media L. Rep. 1742 (Ala. Cir. Ct. 1990) .......................22, 24

*Myers v. Mobile Press-Register, Inc.*,
  266 Ala. 508 (1957) ..............................................................................13, 14, 17

*Nelson v. Lapeyrouse Grain Corp.*,
  534 So. 2d 1085 (Ala. 1998)............................................................................11

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).......................................................................................26

*Parekh v. CBS Corp.*,
  820 F. App'x 827 (11th Cir. 2020) .............................................................10, 20

*Regions Bank v. Plott*,
  897 So. 2d 239 (Ala. 2004)........................................................................22, 24

*Romaine v. Kallinger*,
  109 N.J. 282 (1988) .......................................................................................18

*S.B. v. St. James School*,
  959 So. 2d 72 (Ala. 2006)..............................................................................19

*Sanguedolce v. Wolfe*,
  62 A.3d 810 (N.H. 2013) ................................................................................18

*Schifano v. Greene County Greyhound Park, Inc.*,
  624 So. 2d 178 (Ala. 1993)........................................................................23, 24

*Silvester v. ABC*,
   839 F.2d 1491 (11th Cir. 1988) ...........................................................25

*Staples v. H. Walker Enterprises, LLC*,
   2019 U.S. Dist. LEXIS 122939 (N.D. Ala. July 24, 2019) ...............................11

**Statutes**

Ala. Code § 6-5-186 ...........................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12 .....................................................1, 8

RESTATEMENT (SECOND) OF TORTS § 652E ............................................23

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017) ..............................10

COMES NOW Defendant The New York Times Company ("The Times"), and moves this Honorable Court to dismiss the Complaint, ECF 1, by Plaintiff Kai Spears pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.   In support of this Motion, The Times submits the following Memorandum of Law.

## PRELIMINARY STATEMENT

This case arises from a news report that, regrettably, incorrectly stated that Spears, a player on the University of Alabama men's basketball team, was a passenger in a car struck by bullets.   In fact, earlier in the night, Spears had been in that car and, less than ten minutes before the shooting, he was with others who *were* in the car when it was hit.   With respect to Spears' claim for defamation, this motion raises a threshold question of law for the Court based upon the undisputed alleged material facts:   Is it defamatory *per se* to state incorrectly that someone was *present* at the scene of a crime, or a *victim* of a crime?   As set forth below, in Alabama the answer clearly is "no" as a matter of law.   And with respect to Spears' claim for false light invasion of privacy, this motion similarly presents two threshold questions of law:   (a) whether such a statement is "highly offensive," which as a matter of Alabama law it is not, and (b) whether Spears plausibly alleges the challenged statements were published with "actual malice" fault, which as a matter of law he does not.

1

More specifically, the Complaint and its attached affidavit allege that, late on the night of January 14, 2023, Spears and two high school friends went to the popular student gathering area on University Boulevard in Tuscaloosa called "the Strip." On the Strip, they met up with Spears' University of Alabama teammate Brandon Miller and the team's student manager, Cooper Lee. At approximately 12:35 a.m., Miller drove Spears and others to a barbeque restaurant and bar. Then, at approximately 1:40 a.m. on January 15, they left together. Spears got into the car of his high school friend and drove back to his dorm room at Bryant Hall, while Lee entered Miller's car. Minutes after Spears left his teammate and manager—sometime between 1:40 a.m. and 1:48 a.m., according to the Complaint[1]—gunfire was exchanged on a narrow street on the Strip, tragically killing a young woman, Jamea Harris, and the crossfire hit Miller's car. The parties agree on two key facts: *first*, that Miller and his passenger were *not* involved in the shooting, and *second*, that when the shooting occurred, several University of Alabama students, including four who were affiliated with the University of Alabama men's basketball team, were in close proximity to

---

[1] The Tuscaloosa News has, based at least in part on surveillance video, placed the shooting at precisely 1:45:37 a.m. Nick Kelly, *Breaking down Darius Miles capital murder case surveillance video: What we learned*, Tuscaloosa News (June 15, 2023), *available at* https://www.tuscaloosanews.com/story/sports/college/basketball/2023/06/15/darius-miles-capital-murder-case-surveillance-video-jamea-harris-michael-davis/70234398007/.

the incident, including one who was charged with capital murder for his involvement in the shooting.

The party's dispute here is a legal one—whether The Times actionably defamed Spears or cast him in a false light by mistakenly identifying him as one of the team members at the scene at the precise moment the shooting happened.  On March 15, 2023, The Times published a news report about the incident (the "Challenged Report"),[2] which began by stating the "fatal January shooting . . . could have been even more deadly, as surveillance video showed that two players were in a car struck by bullets in the crossfire."  Ex. 1 at 2.  The Challenged Report noted that Miller was the driver of that car.  *Id.* at 2.  The Challenged Report, however, incorrectly identified Spears as Miller's passenger at the time it was struck by bullets.  *Id.*  In his Complaint, Spears for the first time publicly revealed that Lee was that passenger.  Compl. at Ex. A ¶ 14.  The Times does not dispute that it erred in identifying Spears as being in Miller's car when it was hit by the crossfire, and has since published a correction.[3]

---

[2] By referring to and quoting from the article, Spears incorporated it into his pleading for purposes of the instant motion.  *See, e.g.*, *King v. SPLC*, 594 F. Supp. 3d 1272, 1275 n.1 (M.D. Ala. 2022) ("Because the contents of the reports are alleged in the complaint and form the basis of the Plaintiffs' claims, and are not challenged on authenticity or content by either party, the Court properly considers the contents of the reports in ruling on the [defendant's] motion to dismiss.").

[3] *See* Billy Witz, *A Shooting That Ensnared Alabama Players Could Have Been Deadlier*, NYTimes.com (Updated June 2, 2023) *available at* https://www.nytimes.com/2023/03/15/sports/ncaabasketball/alabama-

As set forth more fully below, Spears' claim for defamation fails as a matter of law because the challenged statements are not defamatory on their face, as it is not presumptively harmful to one's reputation to be a crime victim or bystander. Spears' false light claim, meanwhile, fails because the Challenged Report is not "highly offensive" as a matter of law and because the Complaint does not plead facts plausibly establishing that The Times published with "actual malice" fault.  For each of these reasons, the Complaint should be dismissed with prejudice.

## **RELEVANT BACKGROUND**

### A.    **The Parties**

Spears is a student at the University of Alabama and a guard on the University of Alabama men's basketball team.  Compl. ¶¶ 1-2.  At the time of the shooting, Spears was in his freshman year at Alabama.  *Id.*

The Times is the publisher of the news report at issue in this litigation, "A Fourth Alabama Player Was at a Deadly Shooting, in a Car Hit by Bullets," published on March 15, 2023 (Ex. 1).

### B.    **The Shooting**

Late on the night of January 14, 2023, Spears and two of his high school friends, Dylan Serafini and Esai Morse, left Spears' dorm in Bryant Hall and went

---

shooting.html; *see also Editors' Note: June 3, 2023*, NYTimes.com (June 3, 2023), *available at* https://www.nytimes.com/2023/06/03/pageoneplus/editors-note-june-3-2023.html.

to the Strip. Compl. ¶¶ 21, 23, 27. Soon after midnight, Spears and his friends met Spears' teammate Brandon Miller outside Houndstooth Bar. *Id*. ¶ 29. Spears and Morse got into Miller's car and drove to Moe's Original BBQ. *Id*. at Ex. A ¶ 10. Soon thereafter, while Spears and his friends were at Moe's BBQ with Miller, Spears placed a video call to a second teammate, Jaden Bradley. *Id.* ¶ 30. Bradley and Miller asked Spears and the others "if they wanted to go out with them," but Spears and the others declined. *Id*. ¶¶ 30-31. At approximately 1:20 a.m., Serafini arrived and joined Spears, Miller, Lee and Morse. *Id.* at Ex. A ¶ 12.

Twenty minutes later, at approximately 1:40 a.m. according to the Complaint and its attached affidavit, Spears, Miller, Lee, Morse and Serafini left the restaurant. *Id.* at Ex. A ¶ 13. Spears and Miller placed a second video call to Bradley to ask where he was. *Id.* Miller then got into his car with Lee while Spears got into Serafini's car and returned to Bryant Hall. *Id*. ¶ 32; *id.* at Ex. A ¶ 14. Eight minutes later, at 1:48 a.m., Spears placed a third video call to Bradley and Miller to ask where they had gone, and Spears learned that, in the minutes after Spears left Moe's BBQ, there had been a shooting on the Strip and Miller's car had been hit by bullets. *Id*. ¶ 33; *id.* at Ex. A ¶¶ 15.

Later that day, January 15, 2023, Tuscaloosa police investigating the incident interviewed members of the basketball team, including Spears, who had been out the night before. *Id.* ¶ 38. Police ultimately charged two men, including a then-current

member of the basketball team, Darius Miles, with capital murder charges related to the shooting and the death of Jamea Harris.  Ex. 1 at 2.  No one else, including any of the people Spears interacted with in the minutes and hours before the shooting, including Lee (the person in Miller's car at the time of the shooting), have been charged.

**C.      The Challenged Report**

In its reporting on the incident, The Times learned that surveillance video showed that two people "were in a car struck by bullets in the crossfire," and that a "detective also made note of an unidentified passenger in Miller's car."  Ex. 1 at 2, 4.  In March 2023, on the eve of Alabama's first game in the NCAA Men's "March Madness" tournament, a confidential source who was "familiar with the case" told The Times that Spears was in Miller's car when it was hit with the gunfire.  *Id.* at 4 ("A person familiar with the case identified that person as Spears.  That person spoke on condition of anonymity to discuss sensitive matters in the case.").

A reporter for The Times approached Spears on March 15 and asked him, "[t]he night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?"  Compl. ¶ 40.  Spears replied "No comment."  *Id.* ¶ 41. The Times' reporter again asked Spears if he wanted to comment on being present the night of the shooting, and Spears again replied "[n]o comment."  *Id.* ¶ 42.

Later that evening, The Times published an initial version of the Challenged Report, including the statement: "In another car that was struck were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported." *Id*. ¶ 44; Ex. 1 at 2. The Report stated that "[i]ncluding Spears, at least four Alabama players have now been placed at the scene of the shooting," and it described how Bradley's car was parked ahead of Miller's car, which was itself ahead of a Jeep where Harris sat in the front passenger seat. Compl. ¶¶ 45-46; Ex. 1 at 2. The Challenged Report included a statement by Spears in response to questions from The Times: "I'm sorry, I'm not going to be able to speak about that." *Id.* at 3. It also noted that "Alabama athletic officials did not immediately respond to messages seeking comment on Wednesday." *Id.* at 4.

Following publication, the University of Alabama and people affiliated with Spears told The Times that Spears was not present during the shooting. Compl. ¶¶ 50, 70. On March 20, 2023, legal counsel for Spears requested a public retraction of the statement pursuant to Ala. Code § 6-5-186, but—absent proffered evidence or specific details contradicting its source's information—The Times declined. *Id*. ¶ 51; *see also id.* ¶ 71. The Times did, however, publish an update to the Challenged Report quoting a spokeswoman for the Alabama athletic department as saying that "based on the information we have, there were no current student-athletes present at

the scene other than Brandon Miller and Jaden Bradley." Ex. 2 at 4.  The published

update also quoted Alabama's athletic director as saying that "it was not true that

Spears was 'present at the time of the incident.'"  *Id.*

## D.   The Complaint

Spears filed this action against The Times, pleading claims for

Defamation/Libel and False Light Invasion of Privacy.  Compl. ¶¶ 60-80.  Spears

alleges he suffered "severe emotional distress, there is no measurable dollar

amount." *Id.* ¶ 68.  Following the filing of this Complaint, and the attached affidavit,

The Times published a correction and follow-up report.  *See supra* note 3.

## ARGUMENT

## I.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While courts accept well-pleaded

factual allegations in a complaint as true and construe them in the light most

favorable to the plaintiff, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th

Cir. 2012) (per curiam), such factual allegations still must "raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Michel v. NYP*

*Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).  As this Court has explained:

> *Iqbal* establishes a two-step process for evaluating the complaint. First, the Court must identify pleadings that because they are no more than conclusions, are not entitled to the assumption of truth. Second, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Factual allegations in a complaint need not be detailed, but they must be enough to raise a right to relief above the speculative level.

*Hearn v. U.S. Bank, N.A.*, 2017 U.S. Dist. LEXIS 224778, at * 5 (N.D. Ala. July 12, 2017) (Coogler, J.) (cleaned up).

Beyond the typical standard of review for a motion to dismiss, two additional considerations are relevant to such motions in the context of defamation and similar speech-related tort claims. First, because such cases involve constitutional defenses involving protected speech, the Eleventh Circuit has emphasized that rigorous application of the plausibility standard takes on particular importance. *Michel*, 816 F.3d at 702. In such cases, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation" and "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict" the "'breathing space' needed to ensure robust reporting on public figures and events." *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)).

Second, and more practically, in media defamation cases the content of the statements at issue are published and—as is the case here—therefore not in dispute. Because certain constitutional speech protections are questions of law for the Court,

they can and should be resolved on preliminary motions.  As a leading treatise authored by a Senior Judge on the Second Circuit notes:

> [U]nlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage. . . .  He or she may assess it upon a motion to dismiss, firsthand and in context.  Thus, courts routinely consider, on motions to dismiss . . . issues such as whether the statement at bar is capable of bearing a defamatory meaning . . . and they frequently grant motions on these grounds and others.

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017); *see also Croce v. N.Y. Times Co*., 930 F.3d 787, 792 (6th Cir. 2019) ("Although a court must view all facts in the light most favorable to the plaintiff at this stage, the article also speaks for itself.").  Both federal and Alabama courts thus can, and frequently do, resolve defamation claims at the motion to dismiss stage.  *See, e.g.*, *Bell v. Smith*, 281 So. 3d 1247, 1255-56 (Ala. 2019) (dismissal of defamation complaint appropriate because "in this case the article that is the source of the defamation claim was before the circuit court as an attachment to various motions.  [Plaintiff] does not highlight any additional context that is needed to determine whether the communication is one that is reasonably capable of a . . . defamatory meaning."); *see also Parekh v. CBS Corp.*, 820 F. App'x 827, 834 (11th Cir. 2020) (affirming dismissal of defamation claim because challenged statement not defamatory as matter of law); *Hearn*, 2017 U.S. Dist. LEXIS 224778, at **11-12 (complaint dismissed due to failure to plead special damages for libel *per quod* claim).

## II.   THE CHALLENGED REPORT DOES NOT REASONABLY CONVEY A DEFAMATORY MEANING ABOUT SPEARS

Under Alabama law, "[t]he elements of a cause of action for defamation are: 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)); *accord Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1998) ("the plaintiff must show that the defendant was at least negligent, in publishing a false and defamatory statement to another concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)" (cleaned up)); *Staples v. H. Walker Enters., LLC*, 2019 U.S. Dist. LEXIS 122939, at *39 (N.D. Ala. July 24, 2019).

Of particular consequence in this matter is the requirement that the challenged statement be *defamatory*.  That is, not every false statement is presumptively harmful to reputation such that a claim is viable without plausibly pleading, and later proving, special damages.  *See Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978) ("While it may be odious to berate someone in public with threats and ethnic slurs and to attack someone with epithets such as 'dead beat' and 'crook,' such

questionable behavior is, nevertheless, not actionable in Alabama absent allegations of special damages.").  Thus, Alabama courts have held a variety of highly negative statements not to be defamatory *per se*, including allegedly false allegations that a bank officer had made a loan due to an illicit relationship with a woman, that a lawyer had "extorted" a settlement, and that a man had "abandoned his family." *Anderton v. Gentry*, 577 So. 2d 1261, 1263-64 (Ala. 1991) (oral statement that bank officer made loan due to illicit relationship not actionable *per se* because "statements made by [defendant] do not suggest actions within the definition of adultery or prostitution") (citations omitted); *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 391 (Ala. 1999) (read in context, statement that lawyer attempted to "extort" money not defamatory *per se*); *Cottrell v. NCAA*, 975 So. 2d 306, 346 (Ala. 2007) (rejecting argument that challenged "statement that [plaintiff] had abandoned his family imputed . . . indictable offenses").

The determination of whether a particular challenged statement is reasonably understood as defamatory "is a question of law for the trial court's determination." *McCaig*, 544 So. 2d at 878; *see also Cottrell*, 975 So. 2d 346; *Kelly v. Arrington*, 624 So. 2d 546, 548 (Ala. 1993) (courts must determine the "meaning which would be ascribed to the language by a reader . . . of ordinary or average intelligence" (cleaned up)).

**A.     Because Spears Did Not Plead Special Damages, His Complaint Fails as a Matter of Law Unless the Challenged Statements Constitute Defamation *Per Se***

As a general matter,

> [t]he foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation

*Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003) (cleaned up).  Defamation includes two distinct categories.  Defamation *per se* encompasses statements "which on their face and without the aid of extrinsic proof are recognized as injurious," while defamation *per quod* encompasses statements not injurious "from their face in the usual and natural signification, but only in consequence of extrinsic facts, showing the circumstances under which they were said or the damages which resulted to the defamed party therefrom."  *Myers v. Mobile Press-Register, Inc.*, 266 Ala. 508, 510-11 (1957) (cleaned up); *accord Cottrell*, 975 So. 2d at 346.  When a challenged statement "is not actionable per se, it is incumbent on the plaintiff to allege special damages."  *Myers*, 266 Ala. at 511.  These damages "must be 'alleged, in order that the defendant may have notice thereof and be prepared to meet the same upon trial.'"  *Hearn*, 2017 U.S. Dist. LEXIS 224778, at * 11 (quoting *Irby v. Wilde*, 150 Ala. 402, 404-05 (1907)).

"Special damages 'are the material harms that are the intended result or natural consequence of the slanderous statement.' . . . They are generally 'limited to material loss capable of being measured in money.'" *Id.* at *6 (quoting *Butler*, 871 So. 2d at 18). Conclusorily pleading that the plaintiff suffered emotional distress without pleading special damages, is not sufficient as a matter of law to support a claim for defamation *per quod*. *See Hayes v. Wal-Mart Stores*, 953 F. Supp. 1334, 1343 (M.D. Ala. 1996) (pleading "hurt feelings" without evidence of special damages "cannot support [plaintiff's] defamation claim"); *see also Butler*, 871 So. 2d at 18 ("to support her claim for slander per quod, Butler must not only demonstrate that Jennings's statements subjected her to ridicule and contempt, she must also plead and prove that she suffered special damage"); *Hearn*, 2017 U.S. Dist. LEXIS 224778, at *10 ("While the Hearns have alleged that the publication 'affected their credit and their business,' they have not presented any facts to support that allegation.").

Where, as here, a plaintiff fails to allege special damages, "the publication complained of must be libel per se or the complaint states no cause of action." *Myers*, 266 Ala. at 511; *see also Hayes*, 953 F. Supp. at 1343 ("the alleged communication . . . caused . . . no damage and thus is not actionable. In the absence of language that is defamatory per se, a plaintiff must allege and prove special damages resulting from the defamation."); *Clark v. America's First Credit Union*,

14

585 So. 2d 1367, 1371 (Ala. 1991) ("Even assuming that the statements in question were defamatory . . . he has neither alleged nor proven any special economic damages sustained").

Spears alleges that he "suffered special harm," Compl. ¶ 67, but he fails to provide *any* facts to support that general allegation. Rather, the Complaint alleges only that Spears "suffered the following damages: severe emotional distress, there is no measurable dollar amount." *Id.* ¶ 68. As this Court explained, "general allegations of loss, with no specific factual support," is not "'enough to raise a right to relief above the speculative level.'" *Hearn*, 2017 U.S. Dist. LEXIS 224778, at *11 (quoting *Twombly*, 550 U.S. at 555). Indeed, as is clear on the face of his Complaint, the University of Alabama and the basketball team are standing by Spears. *See, e.g.*, Compl. ¶ 70. There is no indication that Spears suffered *any* direct, or even indirect, specific financial loss. Because Spears failed to plead factual allegations plausibly establishing special damages, his Complaint fails as a matter of law *unless* the Challenged Report constitutes defamation *per se*. For the reasons discussed below, however, it does not.

### B.   It is Not Defamatory *Per Se* to State, Even Erroneously, that Someone was a Bystander to, or Victim of, a Crime

Spears' claim for defamation is premised entirely on the Challenged Report incorrectly stating that Spears was "presen[t] at a crime scene." Compl. ¶ 61. Spears does not allege, and nor could he, that the Challenged Report anywhere states that

he *participated* in the crime.  *See Butler*, 871 So. 2d at 15 (allegedly defamatory publication must be "read in its full context" to determine whether the statement is defamatory as a matter of law).

Spears' claim is analytically similar to a claim for defamation dismissed as a matter of law by the Alabama Supreme Court.  In *Kelly v. Arrington*, the Court considered whether it was defamatory *per se* for a local mayor to publish a statement that a federal prosecutor was *present* at a meeting where others "met and tried to solicit information from some individuals who might incriminate" the local mayor and that questioned "'how ethical the feds' involvement in this matter was.'"  624 So. 2d at 547.  The plaintiff-federal prosecutor admitted to attending a meeting with the other individuals, but maintained that the mayor "was not the subject of discussion" and that the suggestion the plaintiff had attended a meeting where others discussed the merits of an investigation and colluded to incriminate the mayor during the mayor's re-election campaign, impugned the plaintiff's reputation and caused the Department of Justice Office of Professional Responsibility to investigate him. *Id*. at 550.  The Alabama Supreme Court, however, disagreed, and held that the statement "could not reasonably be understood by the average layperson as having a defamatory meaning." *Id*. at 550-51.  In other words, the Alabama Supreme Court held that, even if the challenged statement could be understood as accusing the federal prosecutor of being present at a meeting where *others* discussed interfering

in an ongoing investigation, the statement *did not* defame the prosecutor by merely stating, incorrectly, that he was present at the time that conversation took place.

Spears' defamation claim here rests on the notion that The Times defamed him by incorrectly stating he was nearby when *someone else* committed a crime. This type of statement is insufficient to rise to the level of *per se* defamation. As is evident from another Alabama Supreme Court decision, a more direct statement of involvement in criminality is needed to support such a claim. In *Myers v. Mobile Press-Register, Inc.*, the court considered whether it was defamatory to falsely state that the plaintiff was a saloon keeper at a time when state law provided that "no so-called open saloon be operated within this state." 266 Ala. at 511. As the court explained, however, "[i]n an ordinary usage, to say of the plaintiff that he is a saloon keeper is to say that he is the keeper of a place where intoxicating liquors are sold, but unless more is said, such a statement does not on its face say that plaintiff is keeping such a place in an unlawful manner, or that he is otherwise violating the law." *Id.* In this same vein, courts around the country have similarly concluded that statements describing a person's proximity or relation to another person who is accused of criminal activity does not defame the non-criminal. *See, e.g.*, *Bufalino v. Associated Press*, 692 F.2d 266, 269 (2d Cir. 1982) ("A mere imputation of family relationship [to an alleged mobster] generally is not actionable."); *Jones v. Taibbi*,

400 Mass. 786, 793 (1987) ("The description of someone as a friend (or even relative) of a criminal ordinarily is not in itself defamatory.").

In *Romaine v. Kallinger*, for example, the New Jersey Supreme Court considered a defamation claim arising from the observation in a book that a woman had visited the plaintiff to learn news about "a junkie they both knew who was doing time in prison." 109 N.J. 282, 285, 288-89 (1988). Although the plaintiff alleged that the statement was defamatory *per se* in conveying that she associated with criminals, the court disagreed:

> [O]nly the most contorted reading of the offending language could lead to the conclusion that it accuses plaintiff of illegal drug use or criminal associations. . . . At most, the sentence can be read to imply that plaintiff knew a junkie. . . Absent exceptional circumstances, the mere allegation that plaintiff knows a criminal is not defamatory as a matter of law.

*Id.* at 291-92.[4]

---

[4] Similarly, a line of cases stand for the proposition that even false statements of cooperating with authorities, or being an informant to law enforcement, cannot be defamatory *per se*. *See Clawson v. St. Louis Post-Dispatch, L.L.C.*, 906 A.2d 308, 316-17 (D.C. App. 2006) (statement alleging cooperation with federal agency incapable of carrying defamatory meaning, even where it may have harmed plaintiff's professional reputation); *Michtavi v. N.Y. Daily News*, 587 F.3d 551, 552 (2d Cir. 2009) (affirming dismissal of complaint where the only challenged statement was about cooperating with authorities); *Burrascano v. Levi*, 452 F. Supp. 1066, 1072 (D. Md. 1978) (false statement about plaintiff assisting authorities "render[s] plaintiff's complaint incurably susceptible to demurrer"), *aff'd*, 612 F.2d 1036 (4th Cir. 1979); *Sanguedolce v. Wolfe*, 62 A.3d 810, 813 (N.H. 2013) ("Our review of the legal precedents . . . reveals widespread rejection of the proposition that a false statement that a person cooperated with authorities in bringing another person to justice may constitute defamation.").

Here, Spears alleges that the Challenged Report, in mistakenly reporting that he was at the scene of a crime, "exposed Plaintiff Spears to public ridicule or contempt," Compl. ¶ 62, but he does not allege (and nor could he) that the challenged statement *accused him* of criminal activity.   Rather, the Challenged Report expressly, if incorrectly, said that Spears was with Miller "in a car struck by bullets in the crossfire," Ex. 1 at 2, *i.e.*,—as the introduction stated—the shooting "could have been even more deadly." *Id*. at 1.  As the Report later stated, neither of the two bullets "struck Miller or Spears." *Id*. at 3.

Merely being described as present at the scene of an event where *others* engaged in criminal activity is not defamatory as a matter of law.  Indeed, the person in Miller's car at the moment of the shooting—Lee, as it has now been revealed—has not been charged with any crime, or even characterized as a suspect.  That The Times initially identified Spears rather than Lee as the passenger was a mistake.  But under settled Alabama law it was not defamation *per se*.

Further, to the extent that Spears claims a defamatory meaning arising from the suggestion that he was *associated* with others who were present at in the shooting, such a meaning is not only non-defamatory under the authority set forth above, but it is also substantially true.  "Truth is an absolute defense to a defamation claim." *S.B. v. St. James Sch.*, 959 So. 2d 72, 100 (Ala. 2006).  In that regard, the question is whether a plaintiff has alleged that a statement is *substantially* or

19

*materially* false.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("The common law of libel . . . overlooks minor inaccuracies and concentrates upon substantial truth."); *see also Alabama Ride Co. v. Vance*, 235 Ala. 263, 266 (1938) ("If the matter published was substantially true—that is—true without qualification, in all respects material the plea of truth was sustained and this was a complete defense to the action").  Courts thus look to whether the "gist" or "sting" of a statement is true.  *Parekh*, 820 F. App'x at 834.

In *Parekh*, the court also considered a defamation claim premised on a statement that allegedly implied the plaintiff was aware of a crime perpetrated by an acquaintance—in that case, a scam perpetrated by his ex-girlfriend.  *Id.*  As the court held, however, although the plaintiff had plausibly alleged that the reporting was inaccurate, "under the substantial truth doctrine, a statement does not have to be perfectly accurate if the gist or sting of the statement is true."  *Id.* (internal marks and citations omitted).  In other words, "[e]ven if this statement is false, it is not actionable because it is not defamatory."  *Id.*; *see also Berisha v. Lawson*, 973 F.3d 1304, 1316 (11th Cir. 2020) (none of the allegedly inaccurate statements in the book "undermine . . . the book's core claims about Berisha"); *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993) ("Because we conclude that a jury, when reading these articles in their entirety, could not find that they conveyed a false meaning, we affirm the summary judgment as to plaintiff's defamation claim.");

*McCaig*, 544 So. 2d at 878-79 ("the facts set out in the article are in their most literal sense true.  Given the truthfulness of the published statements, the trial court correctly determined that the statements, as a matter of law, were not capable of having a defamatory meaning, the first prong of the test for defamation.").

So too here.  The Complaint itself acknowledges that Spears spent the evening of the shooting on the Strip, including portions of the evening with Miller and Lee. Compl. ¶¶ 30-31.  The Complaint's attached affidavit also makes clear that Spears rode in Miller's car about an hour before the shooting.  *Id.* at Ex. A ¶ 10.  And both the Complaint and its attached affidavit aver that Spears was with Miller and Lee— the two people in the car hit by crossfire—just minutes before the shooting.  *Id.* ¶ 33; *id.* at Ex. A ¶ 15.  Had The Times reported all of these undisputed facts, and stated that Spears was with Miller just minutes before the shooting happened, the "gist" of the Challenged Report—that Spears was also nearby and that the shooting "could have been even more deadly"—would not have changed.  In other words, any suggestion that The Times defamed Spears by incorrectly stating that he had been in the group of people nearby at the moment of the shooting is therefore foreclosed because it is substantially true based on the pleadings themselves.  On this basis, too, any claim for defamation fails.

## III.   SPEARS' FALSE LIGHT CLAIM ALSO FAILS AS A MATTER OF LAW

Spears attempts to state a second cause of action for "false light" invasion of privacy.   Compl. ¶¶ 71-80.   A defendant may be held liable for publicizing information that places the plaintiff in a false light "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."   *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler*, 871 So. 2d at 12).   Here, the claim fails as a matter of law on both elements.

### A.   It is Not "Highly Offensive" to Report Incorrectly that Spears Was in a Teammate's Car Shortly After He Actually Was in the Car

Spears alleges that The Times cast him in a false light by stating that he "was present at a murder crime scene, when, in fact, Plaintiff Spears was not present." Compl. ¶ 72.[5]   Courts, however, are cautious about finding that a statement is "highly

---

[5] Spears also alleges that the article "implie[d]" he "may have had some role in the death of Jamea Harris," "been involved in criminal activity," and "withheld information of his presence at the murder scene from investigating officials." Compl. ¶¶ 72-73.   As discussed above, however, the Challenged Report does not say or by any reasonable reading even remotely suggest any of those things.   Rather, it merely states—albeit incorrectly—that Spears was present at the scene when the shooting occurred.   Spears' attempts to enlarge the meaning of the statements in the Report are not reasonable.   *See supra* 19-21; *see also Moseley v. Birmingham News Co.*, 1990 WL 300846, 18 Media L. Rep. 1742, at *4 (Ala. Cir. Ct. 1990) (analyzing article for purposes of plaintiff's false light claim "only in its most literal sense, not

offensive to a reasonable person." *See Butler*, 871 So. 2d at 16. Even when it is "undisputed that the statement was false," the plaintiff must still explain how the particular "mistaken comment could be 'highly offensive' to a reasonable person, as required for a false-light claim." *Id*. at 15. A statement is highly offensive "only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.[6] If a statement, "when read in context," "does not impute any wrongdoing," then even if the statement is false it is not "highly offensive." *Id*.; *see also Flickinger v. King*, 2023 Ala. LEXIS 40, at * 29 (Ala. Apr. 21, 2023) (statement alleging that person was "racist" was not "highly offensive" for purposes of false light tort.). That is, "only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position . . . is there a cause of action for invasion of privacy." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.

Spears' claim fails for the straightforward reason that it is not highly offensive to say that he was in a car—in which he had ridden earlier that night—at the moment

---

reading between the lines, and not stretching the article beyond its exactly stated terms." (citing *McCaig*, 544 So.2d at 879)).

[6] Alabama adopted RESTATEMENT (SECOND) OF TORTS § 652E in *Schifano v. Greene Cty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993).

it was hit by crossfire.  For the same reason that it is not defamatory as a matter of law to report, even incorrectly, that someone was a bystander to a crime or a victim of a crime, it is not "highly offensive" to do so.  *See supra* at 15-19.

### B.   The Complaint Does Not Plausibly Allege Actual Malice

Spears' false light claim also is properly dismissed on the independent ground that he fails to plead facts that plausibly allege that The Times had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Regions Bank*, 897 So. 2d 244 (quoting *Butler*, 871 So. 2d at 12); *Schifano*, 624 So.2d at 180-81.  This is the same "actual malice" fault standard that a public figure plaintiff must prove to prevail on a defamation claim.  *See Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301, 1314 (N.D. Ala. 2017); *see also Moseley*, 1990 WL 300846, 18 Media L. Rep. 1742, at *4 ("Moseley's false light and defamation claims are essentially identical. . . To insure that the constitutional safeguards of defamation law are not circumvented, the Court will analyze Moseley's false light claim as if it were a defamation claim.").[7]

---

[7] On this motion, The Times advances this argument regarding the lack of actual malice only with respect to the claim for false light invasion of privacy, for which it is an element of the cause of action for every plaintiff.  Although actual malice is frequently an element discussed in the context of public-figure defamation claims, The Times does not assert the public-figure status of Spears in this motion, which is based solely on the pleadings and materials properly incorporated therein (like the Challenged Report).  Should this action proceed, however, The Times would expect the plaintiff's public-figure status to be a subject of discovery.

1.   The Actual Malice Standard Places a "Daunting" Burden On Plaintiffs

In the First Amendment context, actual malice is a term of art that does not denote personal spite or ill will, but, rather, that the defendant published the statement either with knowledge that it was false, or with reckless disregard of its likely falsity.  *See, e.g.*, *King*, 594 F. Supp. 3d at 1278-79 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989)).  This standard is "not an objective one," and therefore the beliefs or actions of a hypothetical reasonable person are irrelevant.  *Michel*, 816 F.3d at 702-03 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  Courts instead ask whether the defendant *actually* entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.  *Id.*; *see also Silvester v. ABC*, 839 F.2d 1491, 1493 (11th Cir. 1988).  This constitutional standard "is a rather daunting one," *Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, at *39-40 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016), in order to protect speech on matters of public concern.

The heightened fault standard applies to the allegations of a complaint, and plaintiffs faced with this standard must allege facts plausibly establishing actual malice.  *Michel*, 816 F.3d at 702.  Courts "can disregard the portions of the complaint where [plaintiff] alleges in a purely conclusory manner that the defendants were 'reckless' in publishing the article."  *Id.* at 703-04 (citing *Iqbal*'s rejection of

"threadbare recitals" and "mere conclusory statements"); *see also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021) (affirming dismissal of defamation claim for failure to plead facts plausibly demonstrating actual malice); *Berisha*, 973 F.3d at 1316 (same).

> 2. None Of The Complaint's Allegations Satisfies The Actual Malice Test

The Times published a statement that was incorrect—that Spears was in Miller's car when the car was hit by crossfire, rather than earlier in the evening.  Yet there are no properly pleaded facts in the record to suggest that The Times published the statement knowing, or recklessly disregarding, that the statement was false, and that it therefore would place Spears in a false light.

Rather, as The Times reported in the Challenged Report, surveillance video showed that two people were in Miller's car when it was hit, that a detective made note of an "unidentified passenger" in Miller's car at that moment, and that a person who was "familiar with the case" identified Spears as Miller's passenger.  Ex. 1 at 2, 4.  The Complaint acknowledges that The Times sought comment from Spears and the University of Alabama prior to publication—the relevant time for evaluating knowledge of falsity, *Sullivan*, 376 U.S. at 286—and that Spears declined to comment, and University officials did not respond to the requests.  Compl. ¶¶ 40-42; Ex. 1 at 4.  Indeed, Spears does not allege in his Complaint that either he or his lawyers provided any details or evidence to The Times beyond bare denials.  But

"the press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Connaughton*, 491 U.S. at 691 n.37 (citation omitted). Absent any factual allegations that would plausibly establish that The Times published the Challenged Report with knowledge that Spears was not in Miller's car when it was struck by bullets, the false light claim must be dismissed for this independent reason as well. *Coral Ridge Ministries Media, Inc*., 6 F.4th at 1253; *Berisha*, 973 F.3d at 1316; *Michel*, 816 F.3d at 692.

## CONCLUSION

For each and all of the foregoing reasons, Defendant The New York Times Company respectfully moves this Court for an order dismissing Plaintiffs' Complaint in its entirety, with prejudice, and granting such other relief as it deems just and proper.

Dated: July 28, 2023          Respectfully submitted,

                     */s/ John G. Thompson*
                     John G. Thompson
                     *jthompson@lightfootlaw.com*
                     Matthew J. Winne
                     *mwinne@lightfootlaw.com*
                     Lightfoot, Franklin & White, L.L.C.
                     The Clark Building
                     400 North 20th Street
                     Birmingham, AL 35203-3200
                     (205) 581-0700
                     (205) 581-0799 (facsimile)

                     Chad R. Bowman (*pro hac vice* pending)
                     *bowmanchad@ballardspahr.com*
                     Emmy Parsons (*pro hac vice* pending)
                     *parsonse@ballardspahr.com*
                     Ballard Spahr LLP
                     1909 K Street NW, 12th Floor
                     Washington, DC 20006
                     (202) 661-2200
                     (202) 661-2299 (facsimile)

                     **Attorneys for Defendant**
                     **The New York Times Company**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

　　　*/s/ John G. Thompson*
OF COUNSEL