FILED
2023 Sep-05  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
|  | * |  |
|  | * |  |
| **KAI SPEARS,** | * |  |
|  | * |  |
| **Plaintiff,** | * |  |
|  | * |  |
| **vs.** | * | **NO. 7:23-CV-00692-LSC** |
|  | * |  |
| **THE NEW YORK TIMES CO.** | * |  |
|  | * |  |
| **Defendant.** | * |  |

———————————————

## KAI SPEARS' BRIEF IN RESPONSE TO
## THE NEW YORK TIMES' MOTION TO DISMISS

———————————————

R. Matt Glover
Prince Glover Hayes
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama  35406
Phone: (205) 345-1234
Email: mglover@princelaw.net

Stephen P. New (WV Bar#7756)
Pro Hac Vice
Stephen New and Associates
P.O. Box 5516
430 Harper Park Drive
Beckley, West Virginia 25801
Email: steve@newlawoffice.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

Table of Citations ................................................................................... ii

Preliminary Statement ........................................................................... 1

Relevant Factual Background ................................................................. 4

Argument ................................................................................................. 8

  I.   THE NYT HAS FAILED TO ESTABLISH THAT THE DEFAMATION CLAIM IS DUE TO BE DISMISSED .......................................................... 8

    A. SPEARS IS NOT REQUIRED TO SHOW SPECIAL DAMAGES ............. 8

    B. THE MOTION TO DISMISS THE DEFAMATION CLAIM IS DUE TO BE SUMMARILY DENIED BECAUSE IT FAILS TO APPLY THE CORRECT STANDARD TO THE LIBEL CLAIM ........................................................ 11

    C. SPEARS HAS PLAUSIBLY PLED THAT THE FALSE STATEMENTS EXPOSED HIM TO PUBLIC RIDICULE OR CONTEMPT ...................... 14

  II.  THE NYT HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THE AFFIRMATIVE DEFENSE OF SUBSTANTIAL TRUTH ............... 20

  III.  THE NYT HAS FAILED TO ESTABLISH THAT THE FALSE LIGHT CLAIM IS DUE TO BE DISMISSED ......................................................... 22

    A. IT IS HIGHLY OFFENSIVE TO INCORRECTLY REPORT THAT SPEARS WAS AT THE SCENE OF A DEADLY SHOOTING IN THE CAR WHICH WAS REPORTED TO HAVE TRANSPORTED THE GUN TO THE SCENE ................................................................................................ 23

    B. THE COMPLAINT PLAUSIBLY ALLEGES ACTUAL MALICE ........... 23

Conclusion .............................................................................................. 33

Certificate of Service ............................................................................. 34

## **TABLE OF CITATIONS**

**Cases**

*Anderton v. Gentry*,
   577 So.2d 1261 (Ala. 1991) ................................................................13

*Berman v. Kafka*,
   661 Fed. Appx. 621 (11th Cir. 2016) ..................................................20

*Blevins v. W.F. Barnes Corp.*,
   768 So.2d 386 (Ala. 1999) ................................................................13

*Butler v. Town of Argo*,
   871 So.2d 1 (Ala. 2003) ....................................................................12

*Ceravolo v. Brown*,
   364 So.2d 1155 (Ala. 1978) ................................................................9

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001) ..............................................................25

*Clarage v. Kuzma*,
   795 N.E.2d 348 (Ill. 2003) ................................................................21

*Cottrell v. NCAA*,
   975 So.2d 306 (Ala. 2007) ................................................................13

*Curtis Publishing Co. v. Butts*,
   388 U.S. 130 (1967) .................................................................... 26, 27

*Drill Parts and Service Co., Inc. v. Joy Mfg. Co.*,
   619 So.2d 1280 (Ala. 1993) ..............................................................15

*First Independent Baptist Church of Arab v. Southerland*,
   373 So.2d 647 (Ala. 1979) ................................................................11

*Gary v. Crouch*,
   867 So.2d 310 (Ala. 2003) ........................................................ 9, 13, 14

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..........................................................................10

*Glennon v. Rosenblum*,
   325 F. Supp. 3d 1255 (N.D. Ala. 2018) ............................................19

*Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*,
   708 F.2d 944 (5th Cir. 1983) ............................................................30

*Gray v. WALA-TV*,
 384 So.2d 1062 (Ala. 1980) ...................................................................28

*Herbert v. Lando*,
 441 U.S. 153 (1979) ................................................................... 25, 27

*Hunt v. Liberty Lobby*,
 720 F.2d 631 (11th Cir. 1983)................................................................25

*Hutchinson v. Proxmire*,
 443 U.S. 111 (1979) ................................................................................24

*Iron Age Publishing Co. v. Crudup*,
 5 So. 332 (Ala. 1889) ....................................................................... 9, 10

*Loveless v. Graddick*,
 325 So.2d 137 (Ala. 1975) ....................................................................25

*Lovingood v. Discovery Communications, Inc.*,
 Case No.: 5:14-cv-00684-MHH, 2015 WL 5719169. (N.D. Ala. Sept. 30, 2015)
 ................................................................................................................21

*Marion v. Davis*,
 114 So. 357 (Ala. 1927) ...........................................................................9

*Masson v. New Yorker Magazine, Inc.*,
 501 U.S. 496 (1991) ...............................................................................21

*McGraw v. Thomason*,
 93 So.2d 741 (Ala. 1957) .......................................................................15

*Nelson v. Nationstar Mortgage, LLC*,
 504 F. Supp. 3d 1307 (S.D. Ala. 2020)......................................... 11, 14

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ...............................................................................24

*Peisner v. Detroit Free Press, Inc.*,
 304 N.W.2d 814 (Mich. App. 1981) ......................................................30

*Regions Bank v.Plott*,
 897 So. 2d 239 (Ala. 2004) ....................................................................23

*St. Amant v. Thompson*,
 390 U.S. 727 (1968) ......................................................................... 24, 26

*Tanner v. Ebbole*,
 88 So.3d 856 (Ala. 2011) .......................................................................28

*Tidmore v. Mills*,
  32 So.2d 769 (Ala. 1947) ......................................................... 10, 17, 18

*Weaver v. Lancaster Newspapers, Inc.*,
  926 A.2d 899 (Pa. 2007)........................................................... 27, 29

*White v. Birmingham Post Co.*,
  172 So. 649 (Ala. 1937) .................................................................9

**Statutes**

Ala. Code §6-5-186...........................................................................7

**Other Authorities**

*Restatement (Second) of Torts* §569 (1977) ...............................................10

*Restatement (Second) of Torts* §580A (1977)................................. 28, 29

**<u>PRELIMINARY STATEMENT</u>**

This case arises out of grossly incompetent reporting by the New York Times which lead to Kai Spears being exposed to public ridicule and contempt after the New York Times falsely reported Spears' "involvement" in a deadly shooting, and named him as the previously "unidentified passenger" in a car it reported as having delivered the gun used in the killing.

In the NYT's reporting following a preliminary hearing for Darius Miles, a former UA basketball player who owned the gun used in the shooting, the NYT noted that testimony revealed that team member Brandon Miller transported the gun to the scene after receiving a text from Miles telling him he had left his gun in Miller's back seat and asking him to bring it to him. The NYT reported that a police detective also referenced an "unidentified passenger in Miller's car" at the scene of the shooting.  The NYT reported it as "Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported." That same article describes the killing as a "shooting that ***involved*** members of the top-ranked Alabama men's basketball team," and asserts that the University of Alabama had "kept quiet" "the ***involvement*** of" these "other players" in the shooting. In fact, Spears was not "the unidentified passenger in Miller's car" referenced by police detectives, he was not at the scene, and he most certainly was not "involved" in the shooting.

1

The test for "libel per se" in Alabama is whether "the language used exposes the plaintiff to public ridicule or contempt." At no point does the NYT ever discuss or apply this standard and, instead, focuses on the much different test used in slander cases, which has no application here.

There is no question but that Spears has plausibly alleged that the NYT's false identification of him as the "unidentified passenger" in the car which it reported had just transported the gun to the scene exposed him to "public ridicule or contempt." Spears was hounded on social media following the false report and subjected to meanspirited, threatening comments, including threats on his life.

For these same reasons, the false reporting was "highly offensive" for purposes of Spears' false light claim. Additionally, Spears has plausibly alleged that the false report was made "with reckless disregard for the truth," the standard applicable to the false light claim.[1] Both the US Supreme Court and the Alabama Supreme Court have stated this is not an appropriate issue for summary disposition because it calls a defendant's state of mind into question. Furthermore, there is ample legal authority that a failure to retract a libelous statement when presented with contradictory reports, as well as subsequent republication, are both evidence of actual malice at the time of the original publication. Following the NYT's initial

---

[1] [1] The NYT does not dispute, for purposes of this motion, that negligence is the standard for the defamation count nor does it dispute that it was negligent in its false reporting.

false report, the NYT was informed by Spears, his attorney, his father, and credible University of Alabama representatives with knowledge of the truth, that Spears was not the "unidentified passenger in Miller's car" and was not at the scene.  The NYT responded by doubling down on its insistence that the passenger was, in fact, Spears. This is competent evidence of actual malice at the time of the original publication as well as malice at the time of republication.  Thus, the Complaint plausibly alleges actual malice for purposes of the false light claim.

For all these reasons, the Motion to Dismiss is due to be denied.

## RELEVANT FACTUAL BACKGROUND

Late on the night of January 14, 2023, Kai Spears and two high school friends, Dylan Serafini and Esai Morse, who were visiting Spears in Tuscaloosa for the weekend, went to "the strip" following the Alabama-LSU basketball game. *Compl.* ¶¶21, 22, 27. Spears, a West Virgina resident, was a freshman at UA at the time and is a guard on the basketball team. *Compl.* ¶1. Around 12:30 a.m., Spears, Morse, and Serafini met up with one of Spears' teammates, Brandon Miller, outside of Houndstooth Bar, and they left to eat at Moe's Original BBQ downtown. *Compl.* ¶29. Morse and Spears rode to Moe's with Miller, and they were later joined by Serafini who arrived in his own car. *Compl.* ¶29, *Doc. 1-1* ¶10-12.  Cooper Lee, a UA basketball manager, also arrived at Moe's at some point. *Compl.* ¶32, *Doc. 1-1* ¶12.  While at Moe's, Spears FaceTimed another teammate, Jaden Bradley. *Compl.* ¶30.  Bradley and Miller invited Spears and his friends to go out with them, but they declined. *Compl.* ¶¶30-31.  Around 1:40 a.m., Spears and Morse got into Serafini's vehicle and rode back to Spear's dorm, Bryant Hall. *Compl.* ¶¶23, 32. Lee got into Miller's car, and drove to the strip. *Compl.* ¶32. At 1:48 a.m., Spears FaceTimed Bradley again from Bryant Hall. *Compl.* ¶33.  Bradley informed Spears that Miller's windshield had just been hit by gunfire, but Bradley and Miller were frantic and unsure exactly what had just happened. *Compl.* ¶33, *Doc. 1-1* ¶15. That afternoon Spears went to the police station as the police wanted to interview all the basketball

4

players who were out the previous night. *Compl.* ¶38. The police investigation established that Spears was not present at the time of the shooting. *Compl.* ¶39.¶

On March 15, 2023, NYT reporter Billy Witz approached Spears at UA's shoot around in Birmingham and, with no explanation for his question and with knowledge that student athletes were told not to discuss the shooting with reporters, asked Spears, "The night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?" *Compl.* ¶40.  A confused Spears simply responded, "No comment" as per the UA Athletics' Department guidance *Compl.* ¶¶ 41-42. That night the NYT published an article purporting to describe Spears' "involvement" in the shooting. *Compl.* ¶43, Ex. 1. The article is headlined, "A Fourth Alabama Player Was at a Deadly Shooting, in a Car Hit by Bullets," and it begins by characterizing the killing as a "shooting that ***involved members*** (plural) of the top-ranked Alabama men's basketball team…." Ex. 1 (emphasis added). The article, in noting earlier testimony given at Darius Miles' preliminary hearing, stated,

> [A] police detective testified at a pretrial hearing about the presence of Miller and Bradley at the scene. He said that Miles had texted Miller, telling him to pick him up and that "I need my joint," referring to Miles's ***gun,*** which he had left in the ***back seat of Miller's car.***

Ex. 1 (emphasis added).

The next paragraph states, "The detective also made note of an ***unidentified passenger in Miller's car***. A person familiar with the case identified that person as ***Spears***." Ex. 1 (emphasis added).

The article goes on to assert that the University of Alabama "kept quiet" "the

*involvement* of other *players*" (plural) in the shooting after Miles was arrested:

> In its aftermath, the school has sought to distance itself from the shooting. Miles was dismissed from the team and kicked out of school within hours of his arrest, and ***the involvement of other players was kept quiet*** as the Crimson Tide established themselves as the toast of the Southeastern Conference and one of the best teams in the country.

Ex. 1 (emphasis added).

The article further describes the "involvement" of those "players" as follows:

> The shootout, which sent people nearby scrambling for cover, killed Jamea Harris, who was a passenger in a car. In another car that was struck were Brandon Miller, a star player for the Crimson Tide, and ***Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported***.
>
> Including ***Spears***, at least four Alabama players have now been placed ***at the scene of the shooting***….
> …
>
> Jaden Bradley, a freshman guard, was also at the scene. A review of surveillance video showed his car was in a narrow lane that intersects University Boulevard, parked ahead of Miller and ***Spears***. Behind Miller and ***Spears*** was a Jeep with Harris in the front passenger seat.

*Compl*. ¶¶44-46, Ex. 1 (emphasis added).

The NYT's article was republished by a number of other media outlets with

headlines such as "Another Alabama basketball player, Kai Spears, linked to deadly

shooting scene." *Compl*. ¶¶53, 64, 66. Within hours of the NYT's publication,

Spears was being bombarded with texts, calls, and mentions on social media. The

article and its republication has exposed Spears to public ridicule or contempt.

*Compl*. ¶62. Spears has been harassed by strangers regarding his alleged involvement in the incident and those interactions have been meanspirited, and threatening, including threats against his life. *Compl*. ¶59.

Following the original publication, the NYT was advised by Spears, his attorney, his father, and credible UA representatives that Spears was not at the scene. *Compl*. ¶¶50, 70  Additionally, Spears' attorney made an official written demand on the NYT for a public retraction pursuant to Ala. Code §6-5-186. *Compl*. ¶51.  Not only did the NYT refuse to retract the false report or delete the false statements from its online publication of the story, the NYT doubled down on the libelous claims by issuing a statement reasserting, "We're confident in our reporting and stand by it." *Compl*. ¶70.  The NYT also published an update to the original story containing at least part of the statements issued by University spokespersons denying that Spears was present at the time of the shooting, but it otherwise republished the same assertion that Spears was, in fact, the "the unidentified passenger in Miller's car." Def. NYT's Ex. 2 at 4.  Only after Spears provided the NYT with the actual identity of Miller's passenger in this lawsuit did the NYT agree to publish a retraction.[2]

---

[2] https://www.nytimes.com/2023/03/15/sports/ncaabasketball/alabama-shooting.html, June 3, 2023 update.

## ARGUMENT

## I. THE NEW YORK TIMES HAS FAILED TO ESTABLISH THAT THE DEFAMATION CLAIM IS DUE TO BE DISMISSED

In its Motion to Dismiss, the NYT limited the issues[3] relevant to whether Spears has plausibly alleged a prima facie case of defamation to one: Whether its false statement naming Spears as "the unidentified passenger in Miller's car" was "defamation per se" such that Spears is not required to show special damages.

However, the NYT fails to understand the relevant difference between libel and slander under Alabama law and fails to apply the proper standard for libel per se. Therefore, its Motion to Dismiss this count is due to be summarily denied.

Furthermore, Spears has plausibly alleged that the NYT's false statements exposed him to public ridicule or contempt, which is the proper standard in a libel action. Therefore, the false statements are actionable per se without the necessity of pleading or proving special damages.

### A. SPEARS IS NOT REQUIRED TO SHOW SPECIAL DAMAGES

In asserting that Spears must prove special damages, the NYT fails to understand the relevant distinction between libel and slander under Alabama law and the different standards applicable to each:

> ***A material distinction between verbal and written slander has been long settled***…. Many charges are actionable when written or printed

---

[3] The NYT does not argue, for purposes of this motion, that it was not negligent, nor does it argue that negligence is not the proper standard for Spears' defamation claim. NYT Brief at 24, n. 24.

which are not when merely spoken. When the words are spoken, and do not impute an indictable offense, and are not of such nature as carries a legal presumption of injury to an individual in his office, profession, trade, or business, special damages must be alleged and proved; but **when the charge is written or printed**, and is libelous per se, **special damages need not be averred**. In such case, the law infers injury as the natural consequence.

*Iron Age Publishing Co. v. Crudup*, 5 So. 332-333 (Ala. 1889)(emphasis added).

"'In cases of libel, if the language used **exposes the plaintiff to public ridicule or contempt**, though it does not embody an accusation of crime, **the law** presumes damage to the reputation, and **pronounces it actionable per se**." *Gary v. Crouch*, 867 So.2d 310, 316 (Ala. 2003)(quoting *Marion v. Davis*, 114 So. 357, 359 (Ala. 1927)). "While to constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude." *Ceravolo v. Brown*, 364 So.2d 1155, 1157 (Ala. 1978)(quoting *Marion*, 114 So. 357 at 359);

It is well settled that, to constitute libel, it is not necessary that written statements should contain an imputation of an offense that may be punished as a crime. It is sufficient if the language tends to injure the reputation of the party, or to throw contumely or to reflect shame or disgrace upon him. As a general rule **written words exposing the person** to whom they refer to **hatred, ridicule, contempt, shame or disgrace** are **libelous per se.**"

*White v. Birmingham Post Co.*, 172 So. 649, 652 (Ala. 1937)(emphasis added).

It is important to note that this definition of "libel per se" is identical to the underlying definition of libel:

"It may be said that any publication, expressed either by **printing or writing** … which tends to injure one's reputation in the common

9

estimation of mankind, to throw contumely, shame or disgrace upon him, or which ***tends to hold him up to scorn, ridicule or contempt***, or which is calculated to render him infamous, odious or ridiculous, ***is prima facie a libel***…

*Tidmore v. Mills*, 32 So.2d 769, 774 (Ala. 1947)(quoting Newell, *Slander and Libel* p. 36 (3rd ed.)(emphasis added).

Thus, in Alabama,[4] all libel is actionable per se. This is in accord with the majority rule stated in the *Restatement of Torts*: "One who falsely publishes matter defamatory of another in such a manner as to make the publication a ***libel*** is subject to liability to the other although ***no special harm***[5]***results*** from the publication." *Restatement (Second) of Torts* §569 (1977)(emphasis added).

The reason Alabama applies different standards in libel and slander cases "is that words may be spoken in haste or heat of passion, and impressions created soon pass away; but, when written or printed, they are premeditated, more permanent, and calculated to do more injury." *Iron Age Publishing*, 5 So. at 332-333;

> "The primary reason assigned by the courts from time to time to justify the imposition of ***broader liability for libel than for slander*** has been the ***greater capacity for harm*** that a writing is assumed to have because of the ***wide range of dissemination*** consequent upon its permanence in form."

---

[4] *Compare Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1245 (5th Cir. 1980), "[T]he Mississippi Supreme Court clearly stated that all libel is actionable per se."

[5] "Special harm" here is different than "actual injury" which the Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) noted includes "personal humiliation, and mental anguish and suffering." The NYT's has not asserted that Spears suffered no "actual injury."

*First Independent Baptist Church of Arab v. Southerland*, 373 So.2d 647, 649 (Ala. 1979)(quoting *Hartmann v. Winchell*, 296 N.Y. 296, 73 N.E.2d 30, 33 (1947)( Fuld, J., concurring)(emphasis added).

Accordingly, Spears is not required to plead or prove special damages. Since "[t]he question of whether an article is libel per se is identical to … whether the article is defamatory," either the NYT's false statements regarding Spears "exposes him to public ridicule or contempt," in which case it is libelous per se, or it does not, in which case it is not actionable as defamation. *Brewer,* 626 F.2d at 1246.

## B. THE MOTION TO DISMISS THE DEFAMATION CLAIM IS DUE TO BE SUMMARILY DENIED BECAUSE IT FAILS TO APPLY THE CORRECT STANDARD

The NYT's Motion to Dismiss the defamation claim should be summarily denied because it fails to address whether its false statements concerning Spears meet the "exposes the plaintiff to public ridicule or contempt" standard. In *Nelson v. Nationstar Mortgage, LLC*, 504 F. Supp. 3d 1307 (S.D. Ala. 2020), the court noted that the plaintiffs' "defamation claim against Nationstar sounds in libel … because it is predicated on allegations of written or printed malicious aspersions of character." 504 F. Supp. 3d at 1322-1323. The court explained that under Alabama law, "[i]n cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes

damage to the reputation, and pronounces it actionable *per se*." *Id*. at 1323 (quoting

*Butler v. Town of Argo*, 871 So.2d 1, 16 (Ala. 2003). The court pointed out,

> In its summary judgment memoranda, however, ***Nationstar neither addresses nor applies this legal standard to the facts at issue***. Instead, in its principal summary judgment brief, Nationstar argues only the legal standard for slander *per se*, which has no application here because the subject statements were written (*i.e.*, libel) rather than oral (*i.e.*, slander).

*Id*. (emphasis added).

The court thus concluded,

> Absent any argument or discussion by movant as to why the written statements at issue … cannot satisfy the "exposes the plaintiff to public ridicule or contempt" legal standard for a written statement to constitute libel *per se*, the Court will not fill in the blanks on Nationstar's behalf. As briefed, then, Nationstar's Motion for Summary Judgment is denied … because Nationstar has failed to demonstrate that the statements identified in the Amended Complaint cannot satisfy the proper standard for libel *per se*, so as to be actionable even without special damages.

*Id*.

Similarly, in the present case, the NYT confuses the standards applicable to

slander and libel throughout its brief and never argues that its false statements about

Spears "cannot satisfy the 'exposes the plaintiff to public ridicule or contempt' legal

standard for a written statement to constitute libel *per se*." *Nelson*, 504 F. Supp. 3d

at 1323.  For instance the NYT argues, "Here, Spears alleges that the Challenged

Report, in mistakenly reporting that he was at the scene of a crime, 'exposed Plaintiff

Spears to public ridicule or contempt,' …but he does not allege (and nor could he)

that the challenged statement *accused him* of criminal activity." NYT Brief at 19 (emphasis in original). However, this is unnecessary in a libel action: "In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se." *Gary*, 867 So.2d at 316.

The NYT also cites a number of cases to this Court which it contends held that statements were not "defamatory *per se*" when, in fact, those cases held that there was no **slander** per se. The NYT argues,

> Thus, Alabama courts have held a variety of highly negative statements not to be defamatory *per se*, including allegedly false allegations that a bank officer had made a loan due to an illicit relationship with a woman, that a lawyer had "extorted" a settlement, and that a man had "abandoned his family."

NYT Brief at 12.

The NYT then cites *Anderton v. Gentry*, 577 So.2d 1261 (Ala. 1991), *Blevins v. W.F. Barnes Corp.*, 768 So.2d 386 (Ala. 1999) and *Cottrell v. NCAA*, 975 So.2d 306 (Ala. 2007) for those holdings. However, in *Anderton* the court found that the oral statement was not **slander** per se "[b]ecause the statements imputed to [defendant] do not suggest a crime of infamy or moral turpitude…." 577 So. 2d at 1264. The relevant finding in *Blevins* was noted in *Cottrell* as follows: "In *Blevins*, … the Alabama Court of Civil Appeals held that a statement that the plaintiff 'tried to extort money out of me because I refused to pay his demands' was not **slander**

13

per se." *Cottrell*, 975 So. 2d at 347 (emphasis added).  Likewise, in *Cottrell* the court found that the statement that Cottrell had "abandoned his family" was not **slander** per se: "[F]or Culpepper's statement that Cottrell had abandoned his family to be actionable, he must establish that the statement is **slander** per se, i.e., the statement **imputed an indictable offense** involving infamy or moral turpitude." 975 So. 2d at 346 (emphasis added).

As was true in *Nelson*, the NYT fails to make any argument as to "why the written statements at issue … cannot satisfy the 'exposes the plaintiff to public ridicule or contempt' legal standard for a written statement to constitute libel *per se*." *Nelson*, 504 F. Supp. 3d at 1323. Accordingly, this Court should summarily deny the Motion to Dismiss the defamation count.

## C. SPEARS HAS PLAUSIBLY PLED THAT THE FALSE STATEMENTS EXPOSED HIM TO PUBLIC RIDICULE OR CONTEMPT

Furthermore, the Complaint plausibly alleges facts showing that the NYT's false statements "expose[d] the plaintiff to public ridicule or contempt." *Gary*, 867 So.2d at 316.  The NYT disingenuously protests that it merely reported that Spears and Miller[6] were "present at the scene" and were victims themselves. NYT Brief at

---

[6] The true headline with regard to the NYT's motion is its backpedaling with regard to its portrayal of Miller.  The NYT asserts, "The parties agree on two key facts: first, that **Miller** and his passenger were **not involved** in the shooting," and that Miller, like Spears, was a mere "bystander" and a "victim." NYT Brief at 2, 15 (emphasis added). This is very much at odds with its reporting which repeatedly characterized Miller, Bradley, and Spears as being "involved" with the shooting.

15, 19.   The NYT assets that there is nothing defamatory about reporting "that someone was a bystander to a crime or a victim of a crime." NYT brief at 15.  This tortured construction of the article does not comport with the proper analysis for a libel claim under Alabama law. "The test to be applied in determining whether a newspaper article makes a defamatory imputation is whether an ***ordinary reader*** or a reader of average intelligence, ***reading the article as a whole***, would ascribe a defamatory meaning to the language." *Drill Parts and Service Co., Inc. v. Joy Mfg. Co*., 619 So.2d 1280, 1289 (Ala. 1993)(emphasis added);

> In determining their actionable character, the printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them. ***A forced construction is not to be put upon them in order to relieve the defendant from liability***, ***nor*** are they to be ***subjected to the critical analysis of a trained legal mind***, but must be construed and determined by the natural and probable effect on the mind of the average lay reader.

*McGraw v. Thomason*, 93 So.2d 741, 744 (Ala. 1957)(emphasis added).

An "ordinary reader" "reading the article as a whole" is not going to understand the March 15 article as depicting either Spears or Miller as mere bystanders at a crime scene or as victims. The first sentence of this article refers to the killing as a "***shooting*** that ***involved members*** (plural) of the top-ranked Alabama men's basketball team…." Ex. 1 (emphasis added).  The article goes on to repeat this characterization in its accusation that UA "kept quiet" "the ***involvement*** of other ***players***" (plural) in the shooting after Darius Miles was arrested:

> In its aftermath, the school has sought to distance itself from the shooting. Miles was dismissed from the team and kicked out of school within hours of his arrest, and ***the involvement of other players was kept quiet*** as the Crimson Tide established themselves as the toast of the Southeastern Conference and one of the best teams in the country.

Ex. 1 (emphasis added).

Who would an "ordinary reader" think the NYT was referring to as "other players" whose "***involvement*** …. was kept quiet" if not the three players named in the article: Brandon Miller, Jaden Bradley, and Kai Spears?

Furthermore, the article read "as a whole" does not merely place Spears "at the scene." It places him ***in Miller's car*** after reporting that Miller had transported the gun that was ultimately used in the shooting. In the paragraph preceding the one which purports to identify Spears as the "unidentified passenger" whom a police detective had noted was in Miller' vehicle, the NYT writes,

> [A] police detective testified at a pretrial hearing about the presence of Miller and Bradley at the scene. He said that Miles had texted Miller, telling him to pick him up and that "I need my joint," referring to Miles's ***gun,*** which he had left ***in the back seat of Miller's car.***

Ex. 1 (emphasis added).

The article goes on to report,

> Jaden Bradley, a freshman guard, was also at the scene. A review of surveillance video showed his car was in a narrow lane that intersects University Boulevard, parked ahead of Miller and ***Spears***. Behind Miller and ***Spears*** was a Jeep with Harris in the front passenger seat.

*Compl*. ¶¶44-46, Ex. 1 (emphasis added).

Accordingly, "an ordinary reader" reading the "article as a whole" would not understand the false identification of Spears as Miller's passenger to be describing Spears as an mere "bystander" at a crime scene or a victim.  They would read it as Spears being "involved" in the shooting by being in the vehicle which had just transported the murder weapon to the scene and which was blocking the deceased's vehicle in the narrow alley as she was shot to death.

Furthermore, our courts have explained that in determining whether a false statement could reasonably be seen as defamatory, the statement must be interpreted "in relation to the conception and *opinion of the public at the time* which and in the community where the publication appears." *Tidmore*, 32 So.2d at 775 (emphasis added). In *Tidmore* the court found that a prominently posted sign referring to the plaintiffs as "the Two Hitlers of Moundville" was defamatory due to the climate in which the statement was made. The court noted the sign was erected at a time "that our Country was at war with Germany," and "that *feeling was high* against Germany and the German people and their leaders." 32 So.2d at 772 (emphasis added).  The court thus concluded, "[T]he publication in question is libelous per se." *Id*. at 777.

In the present case, the climate in which the NYT made its false accusation against Spears is aptly described in the article itself.  The article reports, "Miller … has become a *lightning rod* since *his presence* during the shooting *became public*." Ex. 1 (emphasis added).  The article notes that Miller had been subjected to crowd

chants of "lock him up" and "Brandon Killer" at basketball games, and that Miller had to be "accompanied by an armed guard" due to death threats. Ex. 1.  Similarly, in an earlier article published when Miller and Bradley had been the only two non-charged basketball players named as being present during the shooting, the NYT noted that the University was being publicly criticized for not disciplining *every* basketball player who was "at the scene". The NYT reported,

> [T]wo players who were at the scene have continued to compete — including *Miller*, who police said *transported the gun* that was used to kill 23-year-old Jamea Jonae Harris.
> …
> Questions about Miller's *involvement* and Alabama's decision *not to discipline* either *him or Bradley* have continually *shrouded the Crimson Tide* in the last month.[7]

The NYT understood full well that in naming Spears as, not only another Alabama basketball player at the scene, but actually a passenger in the car that "transported the gun" to the scene, at a time when "feeling was high against" the University for failing to take action against every player at the scene, it was serving up Spears to these same angry people. *Tidmore*, 32 So.2d at 772.  At the very least, the NYT would reasonably expect that naming Spears as the "unidentified passenger in Miller's car" in the midst of this climate would expose Spears to public ridicule or contempt. And indeed it has. After the NYT published its article falsely

---

[7] https://www.nytimes.com/2023/03/10/sports/ncaabasketball/alabama-murder-indictment.html?smid=url-share

identifying Spears as the "unidentified passenger in Miller's car," which was then republished by numerous local and national news outlets, Spears was subjected to interactions with strangers that "have been meanspirited, threatening … up to and including threats against his life." *Compl.* ¶59. Spears was hounded on social media and subjected to insults such as "go kill yourself." *Compl.* ¶¶48, 57, 58. This is similar to *Glennon v. Rosenblum*, 325 F. Supp. 3d 1255, 1265 (N.D. Ala. 2018) in which the court concluded, "Ms. Glennon alleges, and the Court agrees, that she was subjected to public ridicule and contempt because of [defendant's] story. The comments that readers made in response to the story give an indication of the public humiliation that [defendant] caused Ms. Glennon to suffer."

The NYT then compounded the damage by reasserting the truthfulness of its account after Spears and others publicly denied the story. Following the initial publication of the false statements regarding Spears' presence at the scene, Spears, his attorney, his father, and credible representatives of the University all issued statements attempting to inform the public that Spears was not, in fact, the "unidentified passenger in Miller's car" at the scene of the shooting. *Compl.* ¶70. The NYT responded by asserting, "We're confident in our reporting and stand by it." *Compl.* ¶70. The NYT also published an update to the story noting the denials but then ***republished the same assertion*** that Spears was, in fact, "the unidentified passenger in Miller's car." Def. NYT's Ex. 2 at 4.  An "ordinary reader" would view

the NYT posting the denials and yet standing by its story as an indication that not only was Spears in Miller's car, but now he was lying about it, and the University was covering for him.  This is particularly true in light of the NYT's accusation that "the involvement of other players" "was kept quiet" by the University following Miles' arrest. Ex. 1. Other media outlets characterized the NYT's republication of the accusations against Spears as, "NYT Doubles Down on Report that Alabama's Kai Spears Was Present at Shooting Scene Despite Denials."[8]

The NYT's false statements, both in the original article, and in its later reassertions and republications, which name Spears as the "unidentified passenger in Miller's car" at the scene of the shooting, exposed Spears to public ridicule or contempt and, therefore, are actionable per se under Alabama law.

## II. THE NYT HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING THE AFFIRMATIVE DEFENSE OF SUBSTANTIAL TRUTH

The NYT asserts the affirmative defense[9] of substantial truth and contends that its report that Spears was the "unidentified passenger in Miller's car" at the scene of the shooting was "substantially true." NYT Brief at 19.  This is not a proper case for the application of the substantial truth doctrine. Either Spears was that

---

[8] https://www.breitbart.com/sports/2023/03/17/nyt-doubles-down-on-report-that-alabamas-kai-spears-was-present-at-shooting-scene-despite-denials/

[9] *See e.g. Berman v. Kafka*, 661 Fed. Appx. 621 (11th Cir. 2016) explaining that "substantial truth" is an affirmative defense which the defendant has the burden of proving.

unidentified passenger or he was not. The NYT eventually published a retraction admitting it "misidentified the person who was in the car with Brandon Miller when the shooting occurred," so it is in no position to now assert that the statement was "substantially true." *See e.g. Clarage v. Kuzma*, 795 N.E.2d 348 (Ill. 2003)(defendant could not claim its statements were "substantially true" after publishing a retraction admitting the earlier statements "are not true").

The NYT argues that this action is barred because "the 'gist' or 'sting'[10] of" its statements about Spears were true. NYT Brief at 20. The Supreme Court has noted, "***Minor*** inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)(quoting *Heuer v. Kee*, 59 P.2d 1063, 1064 (Cal. 1936)(emphasis added).   However, the NYT article "contains more than a minor inaccuracy" with regard to Spears. *Lovingood v. Discovery Communications, Inc.*, Case No.: 5:14-cv-00684-MHH, 2015 WL 5719169 at *4 (N.D. Ala. Sept. 30, 2015). There is ***no*** truth in what the NYT said about Spears. Spears was not the "unidentified passenger in Miller's car," Spears was not "at the scene." and Spears was most certainly not "involved" in the shooting. Rather, Spears was at his dorm

---

[10] This presents the question as to why the NYT wanted to "sting" Spears at all.  This phrase is used in cases when the defendant has admittedly accused the plaintiff of something despicable, but slightly missed the mark of accurately reporting the truth, which was equally despicable. The NYT not only admits that Spears engaged in no wrongdoing, but it adamantly denies it ever accused him of such.  So its reliance on the "sting of the statement" language is puzzling.

nearly a mile away when he FaceTimed Bradley at 1:48 a.m. and learned of the shooting which had just occurred.  The NYT argues that the "gist" of the story was true because Spears was "nearby" at the time of the shooting. NYT Brief at 21. Nearby in the sense that his dorm is within a one mile (barely) radius of the shooting? In that sense, every UA student that lives on campus was "nearby" at the time of the shooting.  But not all those students found themselves named in the New York Times as being in the car with Miller when the murder weapon was retrieved from his car. The only way the "gist" of the story with regard to Spears was true is if the "gist" was "college boy arrives safely at dorm oblivious to shooting nearly a mile away."

Kai Spears was a freshman student athlete far from home when he found himself suddenly thrust into nationwide public scorn through no fault of his own due to the NYT's publication and reassertion of false statements placing him in a car which just delivered a gun to the scene of a deadly shooting.  There was no truth in these statements which exposed Spears to public ridicule and contempt. The NYT's Motion to Dismiss the defamation count is due to be denied.

## III. THE NYT HAS FAILED TO ESTABLISH THAT THE FALSE LIGHT CLAIM IS DUE TO BE DISMISSED

The NYT correctly notes that a defendant is liable for publicizing information that places the plaintiff in a false light "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter

and the false light in which the other would be placed." *Regions Bank v.Plott*, 897 So. 2d 239, 244 (Ala. 2004). However, the NYT incorrectly asserts that these elements are not plausibly alleged in Spear's Complaint.

### A. IT WAS HIGHLY OFFENSIVE TO REPORT INCORRECTLY THAT SPEARS WAS AT THE SCENE OF A DEADLY SHOOTING IN THE CAR WHICH WAS REPORTED TO HAVE TRANSPORTED THE GUN TO THE SCENE

The NYT argues that Spears cannot meet the "highly offensive" element of his false light claim because "it it is not highly offensive to say that he was in a car— in which he had ridden earlier that night—at the moment it was hit by crossfire." NYT Brief at 24. This is a misconstruction of the article read as a whole. As discussed above, the article placed Spears in the vehicle the NYT described as having just "transported the gun" to the scene of the shooting.  The article described the crime as a "shooting that involved" Spears, Miller, and Bradley. The article claimed that the University "kept quite" "the involvement" of Spears, Miller, and Bradley. Spears was not in Miller's car when the murder weapon was retrieved from the car, was not at the scene, and was not involved in the shooting. It was "highly offensive" to falsely report that he was.

### B. THE COMPLAINT PLAUSIBLY ALLEGES ACTUAL MALICE

The NYT's assertion that the Complaint fails to plausibly allege that the NYT had "knowledge of or acted in reckless disregard as to the falsity of the publicized

matter" is without merit.[11] The NYT notes this is the same standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964) with regard to the standard of culpability in defamation cases involving public figures. Accordingly, cases applying that standard are instructive in determining whether the NYT "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter" for purposes of Spears' false light claim.

There are a number of problems with the NYT's effort to dispose of the issue of actual malice at the pleading state. First, the Supreme Court has stated, "The proof of 'actual malice' calls a defendant's state of mind into question, … and does ***not readily lend itself to summary disposition***." *Hutchinson v. Proxmire*, 443 U.S. 111, n. 9 (1979)(emphasis added). *St. Amant v. Thompson*, 390 U.S. 727 (1968) similarly emphasized that the question of actual malice is generally a jury question: "The defendant in a defamation action brought by a public official cannot … automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The ***finder of fact must determine*** whether the publication was indeed made in good faith." 390 U.S. at 732 (emphasis added).

The Alabama Supreme Court has similarly held, "The issue of actual *malice* on the part of defendants seems peculiarly inappropriate for disposition by summary

---

[11] Spears reserves the right to argue, at a later time, that this is no longer the proper standard for false light claims involving private figures. *See Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 250-252 (1974) which leaves open that question for a case which presents it.

judgment because it concerns 'motive, intent, and subjective feelings and reactions.'" *Loveless v. Graddick*, 325 So.2d 137, 143 (Ala. 1975)(quoting *Goldwater v. Ginzburg*, 261 F. Supp. 784 (S.D.N.Y. 1966), aff'd, 414 F.2d 324 (2d Cir. 1969), cert. denied, 396 U.S. 1049 (1970).

Additionally, "resolution of … actual malice inquiries typically requires discovery." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). The Supreme Court has expressly held that a plaintiff is entitled to conduct discovery inquiring into the editorial process and state of mind of those responsible for publication. In *Herbert v. Lando*, 441 U.S. 153 (1979), the court noted, "*New York Times* and its progeny made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant." 441 U.S. at 160. The court reasoned that this necessarily contemplates "the thoughts and editorial processes of the alleged defamer would be open to examination." *Id*.

In the present case that information, which can only be uncovered during the discovery process, is relevant to whether the NYT's "investigation for [the] story ... was grossly inadequate in the circumstances." *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983).  In *Hunt* the court explained, "[W]hen an article is not in the category of 'hot news,'[12] that is, information that must be printed immediately or it

---

[12] The only sense in which the naming of Spears as "the unidentified passenger in Miller's car" could be "hot news" is if the NYT wanted to publish the account in time to negatively affect the Tide's performance in the NCAA tournament.

will lose its newsworthy value, 'actual malice may be inferred when the investigation for a story ... was grossly inadequate in the circumstances.'" *Id*. (quoting *Vandenburg v. Newsweek, Inc*., 441 F.2d 378, 380 (5th Cir. 1971).

Additionally, the NYT's statement about Spears appears to be have based entirely on one source, whose identity the NYT has not disclosed: "The detective also made note of an unidentified passenger in Miller's car. ***A person*** familiar with the case identified that person as Spears. That person spoke on condition of anonymity to discuss sensitive matters in the case." (Ex. 1)(emphasis added).  The Supreme Court has noted that "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732.  In *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), the Saturday Evening Post famously published an informant's false description of a purported agreement between Wally Butts and Bear Bryant to "fix" the Alabama-Georgia game. The informant, as it turned out, was an insurance salesman who knew nothing about football and did not understand that the conversation he overheard was nothing but "general football talk." 388 U.S. at 137. The court noted "there was reason to question the informant's veracity," as he had been arrested on bad check charges, yet the defendant "proceeded to publish the story on the basis of his affidavit without substantial independent support." *Id*. at 157.

In this case, the NYT has not disclosed the identity of the "person familiar with the case" who "identified [the passenger] as Spears," yet it wants us to take its word for it that the person is reliable. Spears has had no opportunity to even discover exactly what the informant told the NYT, whether the informant purported to actually know Spears, and what, if anything, the NYT did to find "substantial independent support" for the allegation. *Butts*, 388 U.S. at 157. Furthermore, the NYT has offered nothing to establish the veracity or reliability of that witness who clearly turned out to be wrong.

Additionally, the NYT's subsequent reassertion and republication of its false statements when presented with contradictory reports by reliable individuals, and its failure to delete the defamatory comments from its online publication or issue a retraction, are all evidence of malice at the time of the original publication. In *Herbert,* the Supreme Court expressly noted, "The existence of actual malice may be shown in many ways" including "***subsequent*** defamations, subsequent statements of the defendant." 441 U.S. at n. 12 (emphasis added). *See Weaver v. Lancaster Newspapers, Inc*., 926 A.2d 899, 906 (Pa. 2007), discussed below, which reasoned, "This list makes it clear that subsequent acts can be relevant to the determination of previous states of mind."

The Alabama Supreme Court has also found that both a failure to retract and subsequent republication of libelous statements are evidence of malice at the time of

the original publication. In *Tanner v. Ebbole*, 88 So.3d 856 (Ala. 2011), the court sustained the trial court's finding that actual malice was a jury question where the defendant "received the demand letter from [plaintiff's] counsel" requesting a retraction of defamatory comments on her website, yet "she did not issue a retraction and did not delete any of the comments posted on her Web page." 88 So.3d at 868. In affirming the trial court's finding, the Alabama Supreme Court reasoned,

> The trial court was apparently of the view *that malice could be inferred from Tanner's failure, after receiving a demand letter from Ebbole's counsel, to retract* her statements *or to delete* the third-party comments that were posted on her *Web page*. That view has some support. *See Restatement (Second) of Torts* §580A cmt. d (1977)("Under certain circumstances evidence [of a failure to retract] might be relevant in showing recklessness *at the time the statement was published*.").

*Id*. at 868-869 (emphasis added).

Similarly, in *Gray v. WALA-TV*, 384 So.2d 1062 (Ala. 1980), limited on other grounds in *Nelson v. Lapeyrouse Grain Corp*., 534 So. 2d 1085, n. 3 (Ala. 1988)), a radio station ran reports indicting that the plaintiffs had been awarded a contract by the City of Mobile but not had performed under that contract notwithstanding having been paid.  Following the initial broadcast, one of the plaintiffs informed the news director of the station that the report was inaccurate.  In response, the station conducted further investigation including contacting various officials at city hall. Subsequently, the plaintiff's attorney sent a letter to the news director informing him the broadcast was inaccurate. Additionally, a city commissioner issued a statement

which contradicted the station's report.  The station "continued with its version of the story." 384 So.2d at 1066. The court found under these facts, "Whether the defendant entertained serious doubts as to the truth of these broadcasts is a question peculiarly suited for a jury determination." *Id*.

Other jurisdictions have similarly found that both reassertions of false statements following denials and refusals to retract are relevant to the question of actual malice at the time of the original publication. In *Weaver*, *supra*, the Pennsylvania Supreme Court reversed the lower court's finding that a republication of libel after suit was filed was not evidence of actual malice at the time of the original publication. The court noted, "The Restatement instructs that, 'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard." 926 A.2d at 905 (quoting *Restatement (Second) of Torts* §580A cmt. d (1977)).  The court reasoned that notice to the defendant that the statement was false "would make any republication of the statement relevant to an inquiry of actual malice ***at the time of initial publication*** because it tends to indicate a disregard for the truth that may have been present at the time of initial publication." *Id*. at 905-906 (emphasis added). The court further relied on the same quote from the *Restatement of Torts* the Alabama Supreme Court cited in *Tanner*: "The *Restatement* also discusses the effect of the defendant's refusal to retract a statement after it has

been demonstrated to him to be both false and defamatory stating, 'Under certain circumstances evidence to this effect might be relevant in showing recklessness at the time the statement was published.'" *Id.* at 906. The court concluded, "Republications, retractions and refusals to retract are similar in that they are subsequent acts used to demonstrate a ***previous state of mind***." *Id.* (emphasis added).

*See also Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944 (5th Cir. 1983)(jury's finding that an article was published with reckless disregard for the truth was supported by evidence that the defendant refused to publish a retraction pursuant to the plaintiff's request); *Peisner v. Detroit Free Press, Inc.*, 304 N.W.2d 814, 816 (Mich. App. 1981)(finding that both a demand for retraction and a subsequent reassertion of libelous statements were admissible to show "the existence of malice at the time of the original publication").

In this case, the NYT was advised of the falsity of its statement that Spears was "the unidentified passenger in Miller's car" by Spears, his attorney, and his father. *Compl.* ¶50. Furthermore, the NYT was informed as to the falsity of its report by credible representatives of the University. A spokesperson for the athletic department issued the following statement,[13]

---

[13] *E.g.* https://www.usatoday.com/story/sports/ncaab/sec/2023/03/16/report-over-fourth-alabama-hoops-player-involved-shooting-disputed/11484652002/

***Your story is inaccurate***.[14] Based on the information we have, there were no current student-athletes present at the scene other than Brandon Miller and Jaden Bradley, who are both fully cooperating witnesses. From the outset, UA Athletics has fully cooperated with law enforcement and supported their investigation.

UA Athletic Director Greg Byrne also publicly stated, "Last night, an inaccurate report was published about Kai Spears, one of our student-athletes, being present at the time of the incident. This is ***untrue***."[15] (Emphasis added).

Additionally, Spears's attorney made a written demand upon the NYT for a public retraction on March 20, 2023. *Compl*. ¶51. Nonetheless, the NYT failed to issue a retraction or to remove the defamatory statements from its online publication of the original story. *Compl*. ¶52. To the contrary, notwithstanding this overwhelming notice of the falsity of its reporting by credible sources with knowledge of the truth, the NYT doubled down on its false claim by issuing a statement asserting, "We're confident in our reporting and stand by it." *Compl*. ¶70.

The NYT ultimately agreed to issue a retraction only after Spears provided it with the actual identity of "the unidentified passenger in Miller's car" in this lawsuit. A reasonable juror could conclude, therefore, that this was the NYT's strategy all along: Name Spears as the passenger based on an unreliable informant and, if that

---

[14] The NYT conveniently omitted those first four words from its publication of the denial and from its pleading filed with this court.

[15] https://twitter.com/UA_Athletics/status/1636462009486024740?s=20

turned out to be false, the University would be pressured to provide the actual name in order to protect young Spears from the wrath of the same people whose threats had made extra security for Miller necessary.  Ideally, the actual passenger would turn out to be a team member who had actually engaged in tournament play and had contributed to those victories the NYT was seething about.

The NYT also asserts that there is no evidence of its reckless disregard for the truth because "[t]he Times sought comment from Spears" and he "declined to Comment." NYT Brief at 26.  To the contrary, the NYT knew from its own reporting that the team had been instructed not to talk to reporters about the shooting at the time its reporter hit Spears with the question, "The night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?" *Compl*. ¶40-42.  If the NYT's idea of responsible investigative journalism is directing random accusations at a confused teenager and then printing them as true if the boy does not deny them, it is welcome to try to convince a jury of this.  But this is not a matter for summary disposition in a motion to dismiss.

For all these reasons, the NYT's Motion to Dismiss the false light claim is due to be denied.

## CONCLUSION

For the reasons stated herein, the New York Times' Motion to Dismiss is due to be denied as to both the defamation count and the false light count.

Respectfully submitted this 5th  day of September, 2023.

/s/ R. Matt Glover (asb-7828-a43g)
R. MATT GLOVER
Attorney for Plaintiff/Appellant
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
Phone: (205) 345-1234
Email: mglover@princelaw.net

/s/ Stephen P. New (WV Bar #7756)
STEPHEN P. NEW
Attorney for Plaintiff
STEPHEN NEW AND ASSOCIATES
P.O. Box 5516
430 Harper Park Drive
Beckley, West Virigina  25801
Phone: (304) 250-6017
Email: steve@newlawoffice.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on September 5, 2023. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Matthew J. Winne, Esquire
John G. Thompson, Esquire

*/s/ R. Matt Glover*
R. MATT GLOVER

34