FILED
2023 Dec-06  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **KAI SPEARS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **7:23-cv-00692-LSC** |
| | ) | |
| **THE NEW YORK TIMES** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.  INTRODUCTION

Plaintiff Kai Spears ("Spears") brings this action based on allegedly defamatory statements made about him in connection with a shooting that occurred in Tuscaloosa, Alabama, on January 15, 2023. Before the Court is Defendant The New York Times Company's ("The Times") Motion to Dismiss Complaint Pursuant to Rule 12(b)(6). (Doc. 12.) The motion is fully briefed and ripe for review. Upon due consideration and for the reasons stated herein, the motion to dismiss is due to be **GRANTED IN PART** and **DENIED IN PART**.

### II.  BACKGROUND

On the night of January 14, 2023, Spears and his two high school friends, Dylan Serafini and Esai Morse, went to the popular student gathering area called

"The Strip" located on University Boulevard in Tuscaloosa, Alabama, following the Alabama-LSU basketball game. At the time, Spears was a freshman at The University of Alabama and played guard on the Alabama basketball team. At 12:30 a.m., Spears and his friends met up outside of Houndstooth Bar with one of Spears's teammates, Brandon Miller, and were also joined at some point by the team's student manager, Cooper Lee. (Doc. 1 ¶¶ 29, 32.) After meeting up, they drove to Moe's Original BBQ in downtown Tuscaloosa where they stayed until 1:40 a.m. (*Id.* ¶ 29.) While at Moe's BBQ, Spears FaceTimed another teammate, Jaden Bradley, who invited Spears and his friends to join Bradley and others. After declining the invitation to go out, Spears and his friends drove back to his dorm room while Miller and Lee drove to The Strip in Miller's car. (*Id.* ¶ 31, 32.) At 1:48 a.m., Spears FaceTimed Bradley again to see where they had gone, which is when Spears learned that there had just been a shooting on The Strip and bullets had struck Miller's windshield. (*Id.* ¶ 33.) Later that day, Tuscaloosa police investigated the incident and interviewed members of the basketball team who were out the night before, including Spears. (*Id.* ¶ 38.) Police ultimately charged two men in relation to the shooting. No one else, including Spears, was charged.

In its investigation of the incident, The Times learned that surveillance video showed two people "were struck by bullets in the crossfire," and that a "detective

also made note of an unidentified passenger in Miller's car." (Doc. 12 at 13; 12-1 at 3, 5.) In March, a confidential source "familiar with the case" purportedly told The Times that Spears was the unidentified passenger in Miller's car at the time of the shooting. (*Id.* at 5.)

On March 15, a reporter for The Times approached Spears and asked, "The night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?" (Doc. 1 ¶ 40.) Spears replied, "No comment." (*Id. ¶* 41.) The reporter then asked Spears if he wanted to comment on his presence the night of the shooting to which Spears again replied, "No comment." (*Id.* ¶ 42.)

Later that night, The Times published an article describing Spears's alleged presence at the shooting with the headline: "A Fourth Alabama Player Was at a Deadly Shooting, in a Car Hit by Bullets." (Doc. 12-1 at 2–3.) The article included various statements about Spears's alleged involvement, such as, "[i]n another car that was struck were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported," and "[i]ncluding Spears, at least four Alabama players have now been placed at the scene of the shooting that took place in the early morning hours of Jan. 15…." (*Id.* at 3.) Following publication, representatives of The University of Alabama and affiliates of Spears told The Times that Spears was not present at the

shooting. (Doc. 1 ¶ 50.) On March 20, Spears's attorney requested a public retraction of the statements pursuant to Ala. Code § 6-5-186, which The Times declined. (*Id.* ¶¶ 51, 52.)

Spears then filed this action against The Times, claiming defamation and false light invasion of privacy. Spears alleges that, as a result of the publication, he suffered "severe emotional distress, [for which] there is no measurable dollar amount." (*Id.* ¶ 68.) Following the filing of this suit, The Times issued a retraction of their report, admitting they "misidentified the person who was in the car with Brandon Miller when the shooting occurred." (*See* doc. 12 at 10 n.3.)

## III.   STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual

allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## IV.   DISCUSSION

Spears contends that The Times is liable for defamation for failing to use reasonable care in publishing and disseminating the false statements regarding his involvement in the shooting. (Doc. 1 ¶ 61.) He also claims that The Times cast him in a false light by stating that he was present at a murder scene and by implying he was involved in criminal activity. (*Id.* ¶ 72.) Because the challenged article's contents are alleged in the complaint, are central to Spears's claims, and the authenticity of the article is not challenged by either party, the Court properly considers the contents of the article in ruling on The Times's motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## A. Defamation/Libel

To state a claim for defamation, a plaintiff must plead that the defendant was at least negligent in publishing a false and defamatory statement to another which is either actionable upon proof of special damages (defamation *per quod*) or actionable without having to prove special damages (defamation *per se*). *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988). For the purposes of this motion, The Times disputes only whether the challenged statements are defamatory.

Defamation may involve either slander, i.e., spoken statements, or libel, i.e., printed statements. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). The legal distinction between the two "is merely in respect to the question as

to whether the imputed language or words are actionable per se." *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003) (quoting *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978)). Slander is actionable *per se* only when it concerns "an indictable offense involving infamy or moral turpitude." *Id.* at 17. By contrast, libel is actionable *per se* "if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime." *Id.* at 16. Here, the allegedly defamatory statements were printed and are thus charged as libel.

### 1. Special Damages (Libel Per Quod)

To state a claim for libel *per quod*, a plaintiff must allege special damages. *Nelson*, 534 So. 2d at 1091. Special damages represent "the material harms that are the intended result or natural consequence" of the defamatory statement, and the general rule is that they are limited to "material loss capable of being measured in money." *Butler*, 871 So. 2d at 18 (quoting *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)) (internal citations omitted); *compare, e.g.*, *Silvaris Corp. v. Craig*, No. 1:21-CV-332-TFM-N, 2023 WL 2578950, at *10 (S.D. Ala. Mar. 20, 2023) (allegations including lost sales were sufficient to plead special damages) *with Butler v. Dunn*, No. 2:19-CV-530-ALB, 2019 WL 7041866, at *4 (M.D. Ala. Dec. 20, 2019) (allegations of damage to reputation did "not reflect a measurable, material loss—such as loss of employment or the like").

In his complaint, Spears alleges he "suffered the following damages: severe emotional distress, [for which] there is no measurable dollar amount." (Doc. 1 ¶ 68.) As this allegation plainly shows, Spears does not plead a "material loss capable of being measured in money." *Butler*, 871 So. 2d at 18. Accordingly, Spears fails to plead special damages as necessary to state a claim for libel that is actionable *per quod*. *See id.* at 19 ("Although there was abundant evidence that [the plaintiff] suffered mentally and emotionally as a result of the untrue statements about her, there was no evidence of a material loss capable of being measured in money." (citation and internal quotation marks omitted)); *Shook*, 74 F. Supp. 2d at 1181 (finding plaintiff's general claim of emotional distress insufficient to show special damages); *see also* Fed. R. Civ. P. 9 ("If an item of special damage is claimed, it must be specifically stated.").

Spears contends that he is not required to show special damages because, in Alabama, "all libel is actionable per se." (Doc. 20 at 15.) Spears is correct that he need not show special damages to the extent that he states a claim for libel that is actionable *per se*. However, the assertion that all libel claims are actionable *per se* in Alabama is contradicted by long-standing precedent. *See, e.g.*, *Trimble v. Anderson*, 79 Ala. 514, 516 (1885) ("The action is one for libel. The complaint contains no averment of any special damage alleged to have been sustained by the plaintiff. To

be actionable, therefore, the publication made by the defendants concerning the plaintiff must be libellous [*sic*] per se…."); *White v. Birmingham Post. Co.*, 233 Ala. 547, 550 (1937) ("Words libelous per se import damage, while words actionable only per quod are those whose injurious effect must be established by allegation and proof."); *McGraw v. Thomason*, 265 Ala. 635, 637 (1957) (distinguishing legal standards "where the publication is not libelous per se but only per quod"); *Blevins*, 768 So. 2d at 389–90; *Nelson*, 534 So. 2d at 1091. Spears having failed to plead special damages, "the publication complained of must be libel per se or the complaint states no cause of action." *Myers v. Mobile Press-Reg., Inc.*, 266 Ala. 508, 511 (1957) (citing *Trimble*, 79 Ala. at 514).

### 2. Libel Per Se

When printed defamatory language "exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime," damages are presumed and libel is actionable *per se. Butler*, 871 So. 2d at 16 (quoting *Ceravolo*, 364 So. 2d at 1157); *accord Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1246 (5th Cir. 1980) ("The question of whether an article is libel per se is identical to the question [of] whether the article is defamatory.").

The test for determining whether an article is defamatory is "whether an ordinary reader or a reader of average intelligence, reading the article as a whole,

would ascribe a defamatory meaning to the language." *Drill Parts and Service Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993) (citing *Loveless v. Graddick*, 295 Ala. 142, 148 (1975)). Whether the language is reasonably capable of a defamatory meaning is a threshold question of law for the Court. *Id.* at 1289–90. The question before this Court, therefore, is whether an ordinary reader, reading The Times's article as a whole, could reasonably ascribe to it a meaning that "exposes [Spears] to public ridicule or contempt." *Id.*; *Butler*, 871 So. 2d at 16. As explained below, this Court concludes that the article is reasonably capable of a defamatory meaning and, therefore, Spears has sufficiently pleaded a claim for defamation.

The Times argues that the article depicts Spears as a potential victim of the shooting and, therefore, it is not defamatory. Indeed, the article does not expressly accuse Spears of any crime. Instead, it identifies Spears as one of "two players [who] were in a car struck by bullets in the crossfire." (Doc. 12-1 at 3.)  The article claims that the shooting "could have been even more deadly" in that "[t]wo bullets struck the windshield of Miller's car" but "[n]either struck Miller or Spears." (*Id.* at 3–4.) Read alone, these statements do not appear reasonably capable of conveying a defamatory meaning. However, they must be read in the context of "the article as a whole." *Drill Parts and Service*, 619 So. 2d at 1289.

As Spears argues, an ordinary reader, reading the article as a whole, could reasonably ascribe to it the implied suggestion that Spears was somehow complicit in the shooting. *See id.* The article refers to multiple members of the basketball team—including Spears—as being "involved" in the "fatal January shooting." (Doc. 12-1 at 3.) It further claims that the University "kept quiet" those players' involvement in the shooting. (*Id.* at 5.) The article also places Spears "at the scene of the shooting" and in the car that transported the gun used in the shooting:

> [A police detective] said that Miles had texted Miller, telling him to pick him up and that "I need my joint," referring to Miles's gun, which he had left in the back seat of Miller's car.
>
> The detective also made note of an unidentified passenger in Miller's car. A person familiar with the case identified that person as Spears.

(*Id.* at 3, 5.) Taken together, these statements could reasonably be read as implying that Spears was reprehensibly "involved" in the shooting. *See McGraw v. Thomason*, 265 Ala. 635, 639 (1957) ("[P]rinted words are to be taken … according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them."). As such, the language could "expose[] [Spears] to public ridicule or contempt, though it does not embody an accusation of crime." *Butler*, 871 So. 2d at 16; *cf. Loveless*, 295 Ala. at 148 (concluding that an article implying the plaintiff faced criminal fraud charges was reasonably capable of a defamatory meaning).

The Times cites several opinions to support its argument that falsely placing Spears at the scene of the shooting is not defamatory. The Court is unpersuaded for three reasons. First, this Court must determine only whether the article is reasonably capable of a defamatory meaning; a jury must decide whether it is defamatory. *Finebaum v. Coulter*, 854 So. 2d 1120, 1128 (Ala. 2003). Second, many of the cited opinions apply the stricter standard for slander *per se* and, therefore, are inapposite here. *See, e.g.*, *Anderton v. Gentry*, 577 So. 2d 1261 (Ala. 1991). And third, none held that statements falsely placing a plaintiff at the scene of a crime—let alone statements that the plaintiff was "involved" in a crime—could not be defamatory. *See, e.g.*, *Kelly v. Arrington*, 624 So. 2d 546, 550–51 (Ala. 1993) (concluding without explanation that statements placing the plaintiff at a meeting where others allegedly colluded "could not reasonably be understood by the average layperson as having a defamatory meaning").

Spears having plausibly alleged that The Times published false statements which are reasonably capable of exposing him to public ridicule or contempt, The Times's motion to dismiss his defamation claim is due to be **DENIED**. *Nelson*, 534 So. 2d at 1091.

## B. False Light Invasion of Privacy

Spears also claims that the challenged article publicly placed him in a false light. A defendant may be held liable for publishing information that places the plaintiff in a false light if (1) the false light would be "highly offensive" to a reasonable person, and (2) the defendant had "knowledge of or acted in reckless disregard" as to the falsity of the publicized matter. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler*, 871 So. 2d at 12). The "knowledge of or acted in reckless disregard" standard is the same "actual malice" standard that a public figure plaintiff must prove to prevail on a defamation claim. *New York Times Co. v. Sullivan*, 376 U.S. 254, 271–72 (1964). As both parties have advanced their arguments under the "actual malice" standard, the Court will analyze the second element of Spears's false light claim accordingly.

### 1. *Highly Offensive*

A statement is highly offensive "when there is such a major misrepresentation of [one's] character, history, activities or beliefs that serious offense may be reasonably expected to be taken by a reasonable man in his position." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.[1] A statement need not be defamatory to be highly offensive. *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003).

---

[1]    Alabama adopted RESTATEMENT (SECOND) OF TORTS § 652E in *Schifano v. Greene Cty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993).

The Times argues that "it is not highly offensive to say that [Spears] was in a car—in which he had ridden earlier that night—at the moment it was hit by crossfire." (Doc. 12 at 23–24.) As explained previously, however, the article does more than place Spears in a car hit by crossfire. It places Spears in the car that transported the gun used in the shooting; it states that Spears was "involved" in the shooting; and it claims that the University kept quiet his involvement. Taken together, these statements could suggest that Spears was "involved" in criminal activity, which could constitute a "major misrepresentation" of his character or conduct. *See* RESTATEMENT (SECOND) OF TORTS § 652E cmt. c. Thus, Spears has plausibly alleged that The Times placed him in a "highly offensive" false light. *Regions Bank*, 897 So. 2d at 244.

### 2. *Actual Malice*

Although the article might be highly offensive, Spears has failed to plausibly allege that The Times published it with actual malice. *See Iqbal*, 556 U.S. at 686–87 (subjecting "actual malice" pleadings to the plausibility standard).[2]  A defendant

---

[2]      This Court "disregard[s] the portions of the complaint where [Spears] alleged in a purely conclusory manner that the defendant[] acted 'with actual malice' in publishing the [challenged article] as these amount to threadbare recitals of the elements of a cause of action, which are insufficient to state a claim." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021), *cert. denied sub nom. Coral Ridge Ministries Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022) (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–04 (11th Cir. 2016)).

acts with "actual malice" if, at the time of publication, the defendant "entertained serious doubts as to the truth of his publication" or acted "with a high degree of awareness of [its] probable falsity." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citations and quotation marks omitted). The test is subjective; the plaintiff must show that the defendant actually "entertained serious doubts as to the truth of his publication." *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020) (quoting *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1498 (11th Cir. 1988)).

Malice can be shown through circumstantial evidence by alleging, for example, (1) that the story was "fabricated," (2) the story was "so inherently improbable that only a reckless man would have put [it] in circulation," or (3) that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732. Spears alleges none of the above.[3] Instead, he offers three reasons why this Court should not dismiss his false light claim for failure to adequately allege actual malice. None have merit.

First, Spears argues that, because showing actual malice calls a defendant's state of mind into question, it "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979). This Court agrees with Spears

---

[3]     In his response brief, Spears argues that The Times "has offered nothing to establish the veracity or reliability of [its informant] who clearly turned out to be wrong." (Doc. 20 at 32.) This argument misunderstands Spears's burden to allege facts affirmatively showing "obvious reasons to doubt the veracity of the informant," which he has not done. *St. Amant*, 390 U.S. at 732.

that the presence of actual malice is generally a question for the jury. *St. Amant*, 390 U.S. at 732. But that rule applies to *proving* actual malice, not pleading it. *See Hutchinson*, 443 U.S. at 120 n.9. Because Spears fails to adequately plead actual malice, his false light claim is properly dismissed at this juncture. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Second, Spears asserts that The Times "failed to properly investigate whether or not Plaintiff Kai Spears was present at the murder scene...." (Doc. 1 ¶ 78.) This assertion is conclusory; Spears does not allege how the investigation was improper or what The Times could have or should have done but failed to do. Such conclusory allegations "are insufficient to support a cause of action." *Michel*, 816 F.3d at 704 (citing *Iqbal*, 556 U.S. at 678). Moreover, relevant non-conclusory allegations in the complaint show that The Times did investigate before publishing the article. For example, a reporter approached Spears and asked, "The night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?" (Doc. 1 ¶ 40.) Rather than correct the reporter, Spears declined to comment. (*Id.* ¶¶ 41, 42.) Regardless, "a failure to investigate, standing on its own, does not indicate the presence of actual malice"; "there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the

truth." *Michel*, 816 F.3d at 703. Spears alleges no facts plausibly showing such an intent. *Iqbal*, 556 U.S. at 678.

Third and finally, Spears highlights the facts that (1) The Times failed to retract the article and instead republished it after Spears and his representatives denied his presence at the shooting, and (2) the republished article noted the denials but reasserted the same false claims about Spears. (Doc. 1 ¶¶ 50–52.) He argues that these facts are evidence of actual malice and tantamount to an accusation that he was lying and that the University was covering up for him. The Court disagrees.

Contrary to Spears's assertion, the fact that The Times rejected his and the University's denials does not show actual malice. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989). "[T]he press need not accept denials, however vehement; such denials are so commonplace … that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Id.* (citation and quotation marks omitted). Furthermore, that The Times noted the denials of Spears's presence at the shooting when it reasserted those false claims refutes, rather than supports, a finding of actual malice:

> [W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice. … The reasoning behind the rule is simple. Where a publisher gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher

itself has. Moreover, discouraging the inclusion of such contrary sources for fear of fueling a defamation lawsuit would run counter to the constitutional goal of promoting the free and robust discussion of public events. Thus, reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice.

*Michel*, 816 F.3d at 703.

In support of his argument—which contradicts binding precedent—that republishing the article alongside denials shows actual malice, Spears cites opinions from the United States Supreme Court, Alabama courts, and more. After careful consideration, this Court is unconvinced.

In *Herbert v. Lando*, the Supreme Court indicated in a footnote that "prior or subsequent defamations" may evidence actual malice. 441 U.S. 153, 164 n.12 (1979) (quoting 50 Am. Jur. 2d, Libel and Slander § 455 (1970)). Citing *Herbert*, the Supreme Court of Pennsylvania later reaffirmed its own prior holding that "a subsequent act of republication after a defendant is put on notice by a lawsuit that alleges defamation is relevant to a determination of actual malice in the initial publication." *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 471 (2007). Read in context, however, the holding in *Weaver* applies to the republication or refusal to retract statements that have "been demonstrated to [the defendant] to be both false and defamatory." *Id.* at 470. The statements at issue here are unlike those in *Weaver*, which were clearly demonstrated to be defamatory. *See id.* at 463 (addressing false

accusations that the plaintiff sexually abused women and children). While the statements challenged here might be defamatory, they are not unequivocally so.[4] Moreover, The Times did not republish the article after this lawsuit was filed; it retracted. (Doc. 20 at 12 n.2.)

Next, in *Tanner v. Ebbole*, the Court of Civil Appeals of Alabama was asked to consider whether there was sufficient evidence of actual malice to sustain a jury verdict for the plaintiff on a libel claim. 88 So. 3d 856, 867–69 (Ala. Civ. App. 2011). The court found "some support" for the trial court's view that malice could be inferred from the defendant's failure to retract defamatory statements after receiving a demand letter from the plaintiff's lawyer. *Id.* at 868. However, citing *Sullivan*, 376 U.S. at 286–87, the appellate court expressed a lack of confidence in that view. *See Tanner*, 88 So. 3d at 869. Ultimately, the court declined to "consider [the issue] further" in part because the defendant presented "no reason or authority upon which to reverse the trial court's ruling." *Id.* Such meager analysis does not persuade this Court to adopt Spears's position in the face of contrary, reasoned authority.

---

[4]      Other opinions cited by Spears are distinguishable on this basis. *See, e.g.*, *Gray v. WALA-TV*, 384 So. 2d 1062, 1065 (Ala. 1980) (false accusations of political corruption "[c]ertainly … subject[ed] the plaintiffs to public ridicule and … injure[d] their reputation, both individually and in their business"); *Peisner v. Detroit Free Press, Inc.*, 104 Mich. App. 59, 62–63 (1981), *aff'd as modified*, 421 Mich. 125 (1984) (addressing false accusations of incompetence and ethical misconduct directed at a criminal defense attorney).

In the final opinion Spears cites on this point, the Fifth Circuit found that a failure to retract false allegations of fraud supported a finding of actual malice. *See Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983). Significantly, however, the plaintiff in that case had contacted the defendant and "offer[ed] to prove that it was innocent of any wrongdoing," but the defendant refused. *Id.* This appears to be a perfect example of "some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth," contemplated by the Eleventh Circuit in *Michel*. 816 F.3d at 703. Here, by contrast, there is no showing that The Times purposefully avoided further investigation with the intent to avoid the truth, and it retracted the challenged statements after Spears offered proof of their falsity. (Doc. 20 at 31.)

Accordingly, because Spears has failed to allege any facts that would allow this Court to plausibly infer that The Times acted with actual malice when it published the challenged article, The Times's motion to dismiss Spears's false light claim is due to be **GRANTED**. *Iqbal*, 556 U.S. at 686–87.

## V.   CONCLUSION

For the reasons stated above, The Times's Motion to Dismiss (doc. 12) is due to be **GRANTED IN PART** and **DENIED IN PART**. The motion is due to be

**GRANTED** as to Spears's false light claim and **DENIED** as to his defamation claim.

The Court will enter an order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON DECEMBER 6, 2023.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

215647