FILED

2023 Dec-27  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **KAI SPEARS,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | **Civil Action No.:** |
| **VS.** | ) | **7:23-cv-00692-LSC** |
| | ) | |
| **THE NEW YORK TIMES COMPANY,** | ) | **JURY DEMAND** |
| | ) | |
| **DEFENDANT** | ) | |

## FIRST AMENDED COMPLAINT

## I. The Parties to this Complaint

A. Plaintiff

1.    Plaintiff Kai Spears (hereinafter "Plaintiff Spears") is domiciled in the state of West Virginia and is currently a freshman at The University of Alabama (hereinafter "UA") in Tuscaloosa, Alabama.

2.    Plaintiff Spears is a guard on the UA basketball team.

B. Defendant

3.    Defendant The New York Times Company (hereinafter "Defendant New York Times") is headquartered in New York, New York.

4.      Defendant New York Times address for service of process is: C/O Corporation Service Company, 80 State Street, Albany, New York, 12207 – 2543.

5.      Defendant New York Times publishes a daily newspaper provided in both print and digital formats.

6.      Additionally, a limited number of individual articles are available over the internet for free. Once that limit has been reached, the articles are only available for a fee.

7.      Defendant New York Times, by and through it agents, servants, employees, and/or independent contractors provides the public with regular articles on various subjects, including sports.

## II.  Basis for Jurisdiction

8.      Plaintiff Spears is a citizen of the State of West Virginia, who has lived as a student athlete at the University of Alabama in Tuscaloosa, Alabama since August 2022.

9.      Defendant New York Times is incorporated under the laws of the State of New York and has its principal place of business in the State of New York.

10.   The amount in controversy is in excess of $75,000.00, not counting interest and court costs. Plaintiff Spears is a freshman at the University of Alabama and at the beginning of his post-high school educational life and sports life. Defendant New York Times' false statements and invasion of his privacy impact his education and his ability to advance in his chosen sport of basketball as the statements wrongfully place him at the scene of a murder when he was not present. These false statements will be associated with him for the rest of his life and will forever label him as a person associated with a murder.

11.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

12.   Venue is proper because the above-named Defendant published false and damaging information regarding an individual who is a student at UA and a member of the basketball team.

13.   The publications took place around the time of the NCAA men's basketball championship tournament, part of which took place in Alabama, and appear as though they were designed to cause angst and create additional controversy on the eve of one of the most engaging sporting events in the United States, Alabama's first game in the NCAA

Tournament was located in Birmingham, Alabama, which is where Defendant's agent/reporter "interviewed" the Plaintiff, and upon information and belief, where the defamatory article was written.

14.    The location of the shooting and death, which give rise to the false statements and publication thereof, occurred within the Northern District of Alabama.

15.    Defendant New York Times intended to and did reach the citizens of Alabama with the publication of the false statements, as well as the placement of its reporter at the NCAA Tournament first round game in Birmingham, Alabama.

## III.  Factual Allegations

16.    This action arises out of the tragic death of Jamea Harris from a shooting that occurred on January 15, 2023 in Tuscaloosa, Alabama.

17.    Darius Miles, a former UA basketball player, was charged with a capital murder offense in the shooting and has pleaded not guilty. Michael Davis was also charged with a capital murder offense for the shooting.

18. Two UA basketball players, Brandon Miller and Jaden Bradley, were present at the time of the shooting.

19. Plaintiff Spears was not present at the time of the shooting.

20. Defendant New York Times published an article on or about March 15, 2023 stating that Plaintiff Spears was also present at the January 15, 2023 shooting

21. Following the January 14 University of Alabama versus Louisiana State University (hereinafter "LSU") basketball game, Plaintiff Spears met up with his high school friends, Dylan Serafini (hereinafter "Mr. Serafini"), and Esai Morse (hereinafter "Mr. Morse"). (See, Affidavit of Dylan Serafini, attached hereto as **Exhibit A**).

22. Plaintiff Spears, Serafini and Morse had been friends for approximately 5 to 6 years. Mr. Serafini is a mechanical engineering sophomore at Clemson University. Mr. Morse is a student at Clemson University as well. Mr. Serafini and Mr. Morse were visiting Plaintiff Spears the weekend of January 13, 14, and 15, 2023. Exhibit A, paragraph 5.

23.    Plaintiff Spears lives in the athletes' dorm at the UA, which is known as Bryant Hall, named after Alabama Hall of Fame college coach, Paul "Bear" Bryant.

24.    Plaintiff Spears lives in a four -person suite with individual rooms for each student athlete and a shared common area. Mr. Serafini and Mr. Morse planned to sleep on the couch in the common area.

25.     Following the UA-LSU basketball game on the afternoon of January 14, 2023, Serafini and Morse picked up Plaintiff Spears and they went to Waffle House to eat. Exhibit A, paragraph 6.

26.    Following that meal, Plaintiff Spears, Serafini and Morse went back to Bryant Hall to get ready to go out for the evening. Exhibit A, paragraph 7.

27.    Later that evening, Plaintiff Spears, Serafini, and Morse went to the Strip, a retail and nightlife district located immediately west of UA's campus.

28.    At approximately 11 PM to 11:30 PM Plaintiff Spears, Serafini, and Morse bumped into Adam Cottrell, Max Scharnowski, and Delaney Heard who were going into the Houndstooth Bar.

29.    At approximately 12:30 AM Plaintiff Spears, Serafini, and Morse met up with one of Plaintiff Spears' fellow basketball players, Brandon Miller (hereinafter "Mr. Miller"), outside of the Houndstooth Bar, where they left to eat at a place called Moe's Original BBQ. Exhibit A, paragraph 10.

30.    During the time that Plaintiff Spears, Serafini and Morse were at Moe's Original BBQ, Plaintiff Spears facetimed another UA basketball player Jaden Bradley (hereinafter "Mr. Bradley"). During this call, Mr. Bradley and Mr. Miller asked Plaintiff Spears, Serafini and Morse if they wanted to go out with them. Exhibit A, paragraph 13.

31.    Due to the lateness of the hour and Mr. Serafini and Mr. Morse's planned trip back to Clemson University, Plaintiff Spears, Serafini and Morse declined the invitation with intentions to return immediately to Bryant Hall with no stops at any location.

32.    At approximately 1:40 AM Mr. Miller and Cooper Lee got into Mr. Miller's car. Plaintiff Spears, Serafini, and Morse got into Mr. Serafini's car to return to Bryant Hall.

33.    As soon as Plaintiff Spears, Serafini, and Morse arrived back in the parking lot of Bryant Hall in Mr. Serafini's vehicle, Plaintiff Spears

placed a FaceTime call at approximately 1:48 AM to Mr. Miller and Mr. Bradley to see where they ended up going out, Plaintiff Spears was informed that shots were fired at the windshield of Mr. Miller's vehicle. See, also, Exhibit A, paragraph 15.

34.   Mr. Miller and Mr. Bradley were frantic and unsure what else may have transpired.

35.   Plaintiff Spears, Serafini, and Morse walked into Bryant Hall and remained in the dorm for the night.

36.   After arriving at the suite, Plaintiff Spears communicated with various people by text and through FaceTime to try to determine what happened.

37.   At approximately 2 AM Cooper Lee, UA basketball manager, called Plaintiff Spears so he could come to Bryant Hall and gather his thoughts. Cooper Lee arrived at Plaintiff's room at approximately between 2:30 and 2:35 AM at Bryant Hall. Exhibit A, paragraph 17.

38.    On January 15, 2023, at approximately 4 pm, Plaintiff Spears went to the police station as the Tuscaloosa police wanted to interview all the basketball players who were out that night.

39.   The police investigation conclusively established that Plaintiff Spears was not present at the time of the shooting.

40.   On the afternoon of March 15, 2023 at approximately 3 PM, at UA's shoot around in Birmingham, Alabama, Defendant New York Times' reporter Mr. Witz approached Plaintiff Spears and asked him, "The night of the shooting, when you were in Brandon Miller's car, were you scared when the shots were fired?"

41.   The Plaintiff was taken aback and simply responded, "No comment."

42.   The Defendant's employee/agent Mr. Witz pressed the matter with the Plaintiff and asked him if he wanted to comment on his presence the night of the shooting. Plaintiff again responded with "No comment" as per the UA Department of Athletics guidance.

43.   At approximately 8 PM, March 15, 2023, Defendant New York Times published and disseminated an article that made statements that Plaintiff Spears was present at the time of the subject shooting.

44.   Defendant New York Times published the following regarding Plaintiff Spears:

> The shootout, which sent people nearby scrambling for cover, killed Jamea Harris, 23, who was a passenger in a

car. In another car that was struck were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported.

45.    Defendant New York Times additionally published the following regarding Plaintiff Spears:

Including Spears, at least four Alabama players have now been placed at the scene of the shooting that took place in the early morning hours of Jan. 15, as bars emptied out along The Strip, a popular gathering spot for students near campus along University Boulevard in Tuscaloosa.

46.    Defendant New York Times additionally published the following regarding Plaintiff Spears:

Jaden Bradley, a freshman guard, was also at the scene. A review of surveillance video showed his car was in a narrow lane that intersects University Boulevard, parked ahead of Miller and Spears. Behind Miller and Spears was a Jeep with Harris in the front passenger seat.

47.    These statements by Defendant New York Times regarding the presence of Plaintiff Spears are untrue and are demonstrably false.

48.    Plaintiff Spears was not present at the shooting that occurred on January 15, 2023 that resulted in the death of Jamea Harris.

49.    The untrue statement was republished by a number of media outlets including, but not limited to, Fox News; AL.com;

clickondetroit.com; Spectrum News NY1; New York Post; ESPN Pittsburgh; PennLive.com; and, NationBlue.com.

50.   The news media commonly republish statements made by other news media sources such as Defendant New York Times.

51.   At the time Defendant New York Times published the March 15, 2023 article falsely stating that Spears was the passenger in Miller's vehicle at the time of the shooting, it entertained serious doubts as to the reliability of the anonymous source who provided that information or the accuracy of that information.

52.   Defendant New York Times, because of its serious doubts as to the accuracy of the anonymous source's information that Spears was the passenger in question, had tried to get Kai Spears to either confirm or deny the information notwithstanding that it was aware that players had been instructed not to respond to media questions related to the incident.

53.   Reporter Billy Witz later spoke on the phone with Christian Spears just hours *before* the story ran, and Christian Spears unequivocally informed him that his information about Kai Spears being in the vehicle with Miller at the time of the shooting was incorrect.

54.    Reporter Billy Witz informed Christian Spears that Defendant New York Times was going to run the story anyway unless Christian and his son agreed to break with UA's direction not to speak to the media and grant Witz an interview on the record.

55.    When Christian Spears, on behalf of himself and his son, refused to give Witz the interview he wanted, Defendant New York Times ran the story despite its serious doubts as to the accuracy of the allegations concerning Spears.

56.    On information and belief, the Tuscaloosa Police Department would have informed Defendant New York Times that the passenger in question was not Kai Spears if Defendant New York Times had made that inquiry to TPD, but it made no such inquiry.

57.    By the late evening of March 15, 2023, the evening before UA's first round NCAA Tournament game, the Plaintiff was being bombarded with texts, calls, and mentions on social media.

58.    Defendant New York Times was advised by representatives of UA, Plaintiff Spears, Plaintiff Spears' father, and Plaintiffs' Spears counsel that the statements were untrue.

59.     Shortly after Defendant New York Times published the March 15 article falsely identifying Spears as the passenger in Miller's vehicle at the time of the shooting, University of Alabama athletic department spokeswoman Jessica L. Paré informed reporter Witz,

> "***Your story is inaccurate***. Based on the information we have, there were ***no current student-athletes present at the scene other than Brandon Miller and Jaden Bradley***, who are both fully cooperating witnesses. From the outset, UA Athletics has fully cooperated with law enforcement and supported their investigation."

(Emphasis added).

60.     UA Athletic Director Greg Byrne also publicly stated, "Last night, an inaccurate report was published about Kai Spears, one of our student-athletes, being present at the time of the incident. This is ***untrue***." (Emphasis added).

61.     Kai Spears was also given permission by UA to publicly respond, and Spears published the following on this Twitter account:

> "I have one thing to say — the report in the New York Times was 100% inaccurate and the writer had complete disregard for the truth. I am trying to process and cope with these false statements that somehow have been published and then seen by so many."

62.    Kai Spears' father, the athletic director for Marshall University, published the following statement on March 16, 2023: "I am just incredibly disappointed in the irresponsible and demonstrably false reporting by the NY Times."

63.    Defendant New York Times believed the denials, particularly the denials issued by University of Alabama officials, or at the very least entertained serious doubts about the accuracy of its report that Spears was the unidentified passenger after the denials.

64.    Defendant New York Times had earlier repeatedly reported that University of Alabama officials had actual knowledge of which student athletes were and were not present at the time of the shooting since it had conducted its own investigation shortly after the shooting.

65.    For instance, On March 10, 1023, Defendant New York Times published an article titled "Alabama's Championship Push Arrives With Murder Indictment" which stated,

> "*Alabama officials*, who kicked Miles out of school after his arrest, *knew quickly* after the Jan. 14 shooting outside a Tuscaloosa bar that *Miller* and another freshman, *Bradley*, had been *at the scene*. But the *players' presence was not publicly known* until more than a month later, on Feb. 21, when Tuscaloosa Police Detective Branden Culpepper testified at a pretrial hearing that Miles

> had asked Miller to bring him a gun that allegedly belonged to Miles but had been in Miller's car."

(Emphasis added).

66.    Similarly, in the same March 15 article which falsely stated that Spears was the passenger in Miller's vehicle at the time of the shooting, the Defendant New York Times asserted,

> "In its aftermath, the school has sought to distance itself from the shooting. Miles was dismissed from the team and kicked out of school within hours of his arrest, and the involvement of **other players** — of which **the school was aware** — was kept quiet as the Crimson Tide established themselves as the toast of the Southeastern Conference and one of the best teams in the country."

(Emphasis added).

67.    Defendant New York Times believed that UA officials knew the identity of the person in Miller's vehicle at the time of the shooting and believed the assertions of UA officials that the person was not Kai Spears.

68.    Defendant New York Times admitted in an update to the March 15 article that its doubts about the accuracy of its report that Spears was the passenger in question were sufficient to cause it to "review[] its reporting" with regard to Spears.

69.    Notwithstanding the fact that Defendant New York Times knew as of March 16, if not at the time of the initial publication the previous day, that its report that the passenger in question was Spears was false, or that it at the very least entertained serious doubts as to the accuracy of that information, it chose not to take any action to correct the misinformation which remained online in the web-based version of the March 15 article.

70.    On March 16, 2023, reporter Billy Witz again reached out to the Spears family and communicated to them through others that Defendant New York Times would remove the false allegations about Kai Spears from their website and issue a retraction only if Kai and his father, Christian Spears, would agree to provide them with a full interview.

71.    When Christian Spears, on behalf of himself and his son, refused the exploitive quid-pro-quo demanded by Witz, the New York Times then made *new misrepresentations* that Spears was the passenger in question.

72.    As reported by Al.com on March 17, 2023 in an article entitled "New York Times stands by Kai Spears report despite Alabama, Greg

Byrne refuting story," the New York Times issued the following statement earlier that day: "We're confident in our reporting and stand by it."

73. A reporter for Sports Media Company "Outkick" approached NYT reporter Billy Witz in the Legacy Arena media work room, and Witz likewise told that reporter that they were standing by their story despite the fact that UA officials and the Spears family had informed them as to the falsity of its report about Kai Spears.

74. Other news outlets reported on the Defendant New York Times' new March 17 allegations concerning Spears as "NYT Doubles Down on Report that Alabama's Kai Spears Was Present at Shooting Scene Despite Denials."

75. On March 20, 2023, Plaintiff Spears, through counsel, made a written demand upon Defendant New York Times for a public retraction as required pursuant to Ala. Code § 6-5-186, via email correspondence to Diane Brayton, Chief Legal Counsel at The New York Times. This email was then forwarded to David McCraw, Senior Vice President and Deputy General Counsel.

76.    Despite the fact that Defendant New York Times believed its reporting regarding Spears was incorrect, it failed to retract the published statements by March 25th, 2023 as requested, and Mr. McCraw reinforced the Defendants' incorrect position on the matter as Mr. Witz, the reporter, had done previously.

77.    Defendant New York Times hoped that by refusing to issue a retraction and refusing to remove the false allegations regarding Spears from its web-based version of the March 15 article., it could pressure either the University of Alabama or Spears to provide them with the true identify of Miller's passenger at the time of the shooting or other information regarding the shooting.

78.    The Defendant New York Times wanted UA or Spears to provide them with the name of the person who was actually the passenger in Miller's vehicle at the time of the shooting, and any other information the UA or Spears might have with regard to the shooting, in order to have the scoop on that information.

79.    On June 2, 2023, Spears succumbed to the pressure of Defendant New York Times to provide them with the name of the passenger in question, UA student basketball manager Cooper Lee, when

Spears included that name in this lawsuit and served a copy of the Complaint on Defendant New York Times.

80.    That same day, Cooper Lee sent an email to Defendant New York Times stating, "I can confirm that I was the passenger in Brandon Miller's car at the time of the shooting."

81.    Defendant New York Times published a story that same day with their much sought after scoop that Cooper Lee was the unidentified passenger in Miller's car. The article mentioned that the New York Times had previously misidentified Spears as that passenger and noted that subsequently "the article would be corrected."

82.    After Defendant New York Times *first* published its scoop with the name it pressured Spears to provide to it, it *subsequently* updated the article in which it had originally defamed him to state, "The original version of this article, published March 15, misidentified the person who was in the car with Brandon Miller when the shooting occurred."

83.    Since the publication of the false statements about Plaintiff Spears by Defendant New York Times, Plaintiff Spears has been wrongfully thrust into nationwide news without any intention on his part

of obtaining publicity regarding the January 15, 2023 death of Jamea Harris.

84.    Since the publication by Defendant New York Times, Plaintiff Spears has experienced severe emotional distress as his life has been disrupted by the untrue statements linking him to a criminal event.

85.    Since the publication by Defendant New York Times, Plaintiff Spears has experienced difficulties managing and processing comments made about him via social media causing anxiety and stress while he continues his educational endeavors.

86.    Since the publication by Defendant New York Times, Plaintiff Spears has experienced difficulties concentrating and focusing on his academic and sports endeavors, while enduring outrageous comments such as "go kill yourself."

87.    Since the publication by Defendant New York Times, Plaintiff Spears has been contacted by strangers regarding his alleged involvement in the incident and those interactions have been mean-spirited, threatening and have caused mental anguish and harm, up to and including threats against his life.

## IV.  Causes of Action

## COUNT I – DEFAMATION/LIBEL

88.    Plaintiff Spears hereby incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

89.    Defendant New York Times failed to use reasonable care in publishing and disseminating the untrue statements regarding Plaintiff Spears' presence at a crime scene.

90.    The statements published and disseminated by Defendant New York Times exposed Plaintiff Spears to public ridicule or contempt.

91.    The denial by Plaintiff Spears and representatives from UA are considered by some to be untrue:

'...despite denials from Spears and the university...'

This is the NYT reporting honestly for once. Just because the school and the player say it isn't true, and really really really wish it wasn't true, doesn't mean it's not true. I mean, it's not like he was claiming he is actually a female, which...[1]

This is probably the only time in years the NYT actually printed a true story.[2]

---

[1] Comment by user Chile10001488, https://www.foxnews.com/sports/nyt-stands-by-report-alabamas-kai-spears-was-present-fatal-january-shooting-despite-denials (accessed April 6, 2023).
[2] Comment by user taverntalent, *Id*.

92.  A <u>New York Post</u> headline reads "Another Alabama basketball player, Kai Spears, linked to deadly shooting scene."[3]

93.  CBS NCAABB's headline reads " Fourth Alabama basketball player identified at scene of deadly shooting in January, per report" in bolded black letters and, underneath reports that "The Crimson Tide deny that Kai Spears, a walk-on, was at the scene as reported Wednesday" in grey font half the size.[4]

94.  <u>Fox Sports</u> reported that:

> A fourth Alabama men's basketball player is now reported to have been at the scene of a fatal on-campus shooting that resulted in capital murder charges against a former teammate.
>
> Freshman walk-on guard Kai Spears was reported to have been in a separate car with SEC Player of the Year Brandon Miller during the January 15th death of 23-year-old Jamea Harris according to *The New York Times*. [5]

95.  Defendant New York Times was at least negligent in publishing false and defamatory statements to its reading public concerning the Plaintiff Spears, which is actionable without having to

---

[3] https://www.newsbreak.com/tuscaloosa-al/2959661770339-another-alabama-basketball-player-kai-spears-linked-to-deadly-shooting-scene. (Accessed April 6, 2023).
[4] https://www.cbssports.com/college-basketball/news/fourth-alabama-basketball-player-identified-at-scene-of-deadly-shooting-in-january-per-report/  (accessed April 6, 2023)
[5] https://foxsports980.iheart.com/content/2023-03-16-fourth-alabama-basketball-player-was-at-scene-of-fatal-shooting-report/ (accessed April 6, 2023).

prove special harm and/or actionable as Plaintiff Spears suffered special harm.

96.   As a direct and proximate result of Defendant New York Times' wrongful conduct Plaintiff Spears suffered the following damages: severe emotional distress, there is no measurable dollar amount.

97.   As alleged above, at the time the Defendant New York Times issued the original publication making the false claims with regard to Spears, it entertained serious doubts as to the reliability of its anonymous source or the reliability of that information but chose to publish the story anyway.

98.   As alleged above, Christian Spears spoke with reporter Witz before he published the false allegations and expressly informed him that his son, Kai, was not the passenger in the vehicle with Miller at the time of the shooting.

99.   After the story ran, officials from UA, Plaintiff Spears, and Spears' attorney all additionally informed Defendant New York Times that the report regarding Spears was false.

100. As alleged above, Defendant New York Times had earlier reported that UA officials knew which student athletes were and were

not present at the time of the shooting, and Defendant New York Times believed UA officials and others who informed them Spears was not the passenger in Miller's vehicle at the time of the shooting.

101.  As alleged above, notwithstanding the fact that Defendant New York Times knew its report with regard to Spears was false, or at the very least entertained serious doubts as to its accuracy, after the denials by UA officials and others, if not at the time of the initial publication, Defendant New York Times a second time brazenly made new allegations that Spears was, in fact, the passenger in question.

102.  The new allegations exposed Kai Spears to a whole new round of public ridicule and contempt as it caused the public to believe that not only was Spears the passenger in Miller's vehicle at the time of the shooting, but that he had further publicly lied about that fact and got his father and UA officials to lie on his behalf.

103.  **COUNT II – FALSE LIGHT INVASION OF PRIVACY**

104.  Plaintiff Spears hereby incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

105. Defendant New York Times publicized statements that Plaintiff Spears was present at a murder crime scene, when, in fact, Plaintiff Spears was not present. Moreover, Defendant's article implies that the Plaintiff may have had some role in the death of Jamea Harris.

106. These statements implied that Plaintiff Spears may have been involved in criminal activity and may have withheld information of his presence at the murder scene from investigating officials.

107. These false statements are highly offensive to any reasonable person.

108. As discussed above, at the time Defendant New York Times published the March 15, 2023 article falsely stating that Spears was the passenger in Miller's vehicle at the time of the shooting, it entertained serious doubts as to the reliability of the anonymous source who provided that information or the accuracy of that information, as they had been expressed informed by Kai's father in a telephone conversation that the information was false.

109. Defendant New York Times decided to publish the information anyway when neither Kai Spears nor his father would agree

to their exploitive efforts to garner an interview with Kai in violation of UA's policy that student athletes not discuss the shooting with the media.

110.  As discussed above, Defendant New York Times also believed UA officials and others who subsequently informed them that they had misidentified the passenger in Miller's vehicle at the time of the shooting. Nonetheless, reporter Billy Witz again communicated to the Spears family that it would only remove the false allegations from the online version of the article and issue a retraction if Christan Spears and Kai Spears would agree to an interview in violation of UA's directive.

111. When Christan Spears, on behalf of his son, again refused Defendant New York Times' exploitive demands for a quid pro quo in exchange for removing the false allegations from its online publication and issuing a retraction, Defendant New York Times failed to take any steps to correct the false allegations despite its knowledge that the report was incorrect.

112. When Christan Spears, on behalf of his son, again refused Defendant New York Times' exploitive demands for a quid pro quo, Defendant New York Times made ***new*** false allegations that Spears was the passenger in Miller's vehicle at the time of the shooting despite the

fact that it knew the allegations were false or, at the very least, entertained serious doubts as to the accuracy of the allegations.

113. The new false allegations which followed the denials by Spears, his father, and UA officials, subjected Spears to even more public ridicule and contempt since it caused the public to believe that not only was Spears the passenger in Miller's vehicle at the time of the shooting, but that Spears had then publicly lied about this fact and had enlisted his father and UA officials to help him try to cover up this fact.

114. Defendant New York Times' conduct is especially egregious as the false statements regarding a young man who is just starting out on his collegiate education and sports participation.

115. The statements made by Defendant New York Times would cause mental suffering, shame, or humiliation to a person of ordinary sensibilities and did cause mental suffering, shame, and humiliation to Plaintiff Spears.

116. As a direct and proximate result of Defendant New York Times wrongful invasion of privacy, Plaintiff Spears suffered the following damages: severe emotional distress, mental anguish, and loss of enjoyment of life..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kai Spears respectfully requests that the Court:

1. Award him compensatory damages;

2. Award him punitive damages;

3. Award attorney's fees and costs incurred during the course of this litigation;

4. Grant any and all relief to which plaintiffs;

5. Grant any further relief this Honorable Court deems just and proper.

Respectfully submitted,

*/s/  R. Matt Glover*
R. Matt Glover (ASB-7828-a43g)
Prince Glover Hayes
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email:  mglover@princelaw.net

*/s/ Stephen P. New*
Stephen P. New (Pro Hac Vice - *WVSB #7756*)
Stephen New & Associates
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on December 27, 2023

Matthew J. Winne, Esquire
John G. Thompson, Esquire
Chad Russell Bowman, Esquire
Emmy Parsons, Esquire

<u>/s/ R. Matt Glover</u>
Of Counsel