FILED

2024 Mar-12  PM 12:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

|  |  |  |
|---|---|---|
| KAI SPEARS | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | **7:23-CV-00692-LSC** |
| **THE NEW YORK TIMES COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT THE NEW YORK TIMES COMPANY'S COMBINED OPPOSITION TO PLAINTIFF'S MOTIONS (1) FOR LEAVE TO FILE OUTSIDE OF TIME, (2) TO STRIKE DEFENDANT'S THIRD AFFIRMATIVE DEFENSE, AND (3) FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT THEREOF

John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice*)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice*)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant
The New York Times Company**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 1

RELEVANT BACKGROUND TO MOTIONS ........................................ 2

A.   The Shooting ................................................................................. 2

B.   The Times Report .......................................................................... 4

C.   The June 2, 2023 Editor's Note .................................................... 6

D.   Plaintiff's Complaint and Arguments in This Action .................. 7

E.   This Court's Ruling on The Times's Motion to Dismiss .............. 9

F.   The Times has, for more than seven months, argued that the
     Report is substantially true ......................................................... 10

G.   The Three Pending Motions ........................................................ 13

ARGUMENT ........................................................................................... 13

I.    PLAINTIFF'S MOTION FOR LEAVE SHOULD BE DENIED ............... 13

II.   PLAINTIFF'S MOTION TO STRIKE SHOULD BE DENIED ................. 16

      A.   Motions to Strike are a Drastic and Disfavored Remedy ........... 16

      B.   Plaintiff Must Prove Substantial Falsity as an Element of
           His Claims ................................................................................. 17

      C.   Evidence Showing the Substantial Truth of Challenged
           Speech Can be Presented to Rebut Evidence of Falsity .............. 20

      D.   The Times Has Not Conceded The Falsity of the Allegedly
           Defamatory Implication At Issue in This Case .......................... 21

III.  PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
      SHOULD BE DENIED ......................................................................... 23

      A.   Plaintiff Fails to Establish Cause for a Protective Order ........... 25

B.    Alleged "Prejudice" Does Not Warrant a Protective Order
      Where Plaintiff Has Placed Substantial Truth and
      Reputation at Issue ......................................................................26

C.    Arguments to "Streamline" the Case Are Premature ..........................28

CONCLUSION .......................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Advanced Estimating Sys. v. Riney*,
    130 F.3d 996 (11th Cir. 1977) ....................................................15, 16

*Ashmore v. Sec'y, DOT*,
    503 F. App'x 683 (11th Cir. 2013) ...................................................14

*Augustus v. Bd. of Pub. Instruction*,
    306 F.2d 862 (5th Cir. 1962) ......................................................16, 17

*Butler v. Town of Argo*,
    871 So. 2d 1 (Ala. 2003)...................................................................27

*Cantley v. Lorillard Tobacco*,
    681 So. 2d 1057 (Ala. 1996)..............................................................19

*Carlson Corp./Se. v. Sch. Bd. of Seminole Cnty.*,
    778 F. Supp. 518 (M.D. Fla. 1991)...............................................17, 21

*Carruth v. Smyth*,
    2018 U.S. Dist. LEXIS 21531 (N.D. Ala. Feb. 9, 2018) ....................15

*Clarage v. Kuzma*,
    795 N.E.2d 348 (Ill. App. Ct. 2003) ..................................................26

*Ekokotu v. Fed. Express Corp.*,
    408 F. App'x 331 (11th Cir. 2011) ....................................................24

*Farnsworth v. Procter & Gamble*,
    758 F.2d 1545 (11th Cir. 1985) ...................................................24, 25

*Finch v. S. Tool*,
    2010 U.S. Dist. LEXIS 157251 (N.D. Ala. Nov. 17, 2010) ........16, 17

*Forrester v. WVTM TV*,
    709 So. 2d 23 (Ala. Civ. App. 1997) .................................................19

*Greater Birmingham Ministries v. Merrill*,
    321 F.R.D. 406 (N.D. Ala. 2017) ......................................................24

*Guttenberg v. Emery*,
    26 F. Supp. 3d 88 (D.D.C. 2014) ..................................................................27, 28

*Levan v. Cap. Cities/ABC*,
    190 F.3d 1230 (11th Cir. 1999) ...........................................................................19

*Little v. Consol. Publ'g*,
    83 So. 3d 517 (Ala. Civ. App. 2011) ...................................................................19

*Masson v. New Yorker*,
    501 U.S. 496 (1991).......................................................................................18, 19

*McCaig v. Talladega Publ'g*,
    544 So. 2d 875 (Ala. 1989) ..................................................................................20

*In re O'Keefe*,
    184 F. Supp. 3d 1362 (S.D. Fla. 2016) ...............................................................27

*Perez v. Gallego*,
    354 So. 3d 614 (Fla. 3d DCA 2023) ....................................................................27

*Phila. Newspapers v. Hepps*,
    475 U.S. 767 (1986)..........................................................................17, 18, 19

*Prizevoits v. Ind. Bell Tel.*,
    76 F.3d 132 (7th Cir. 1996) ...........................................................................15, 16

*In re Rawson Food Serv.*,
    846 F.2d 1343 (11th Cir. 1988) .....................................................................20, 21

*Ex parte Rudder*,
    507 So. 2d 411 (Ala. 1987).................................................................................19

*Ryan v. Fox TV Stations*,
    979 N.E.2d 954 (Ill. App. Ct. 2012) ..............................................................25, 26

*Skypoint Advisors v. 3 Amigos Prods.*,
    2021 U.S. Dist. LEXIS 190167 (M.D. Fla. June 17, 2021) ...............................24

*Straw v. Chase Revel, Inc.*,
    813 F.2d 356 (11th Cir. 1987) .......................................................................17, 18

**Statutes**

Ala. Code § 6-5-186 .................................................................................5

**Other Authorities**

Fed. R. Civ. P. 6 ..........................................................................13, 14, 15

Fed. R. Civ. P. 12 ..............................................................................13, 16

Fed. R. Civ. P. 16 ..............................................................................10, 15

Fed. R. Civ. P. 26 ...................................................................................*passim*

U.S. Const. amend. V .........................................................................11, 27

## INTRODUCTION

This Court has ruled that it was not defamatory for The Times to report that Plaintiff Kai Spears was a passenger in a friend's car hit by bullets when, in fact, he had left the friend a few minutes earlier.  Victims and bystanders are not wrongdoers.  But, the Court said, there remains the issue of whether The Times's story, read as a whole, implied that Plaintiff was somehow involved in the shooting and whether it was false to suggest so, as Plaintiff claims.  Having put at issue whether it was true or false that he had some involvement in the events of that night—including his actions leading up to the shooting and his actions after he learned of it—Plaintiff now asks the Court to foreclose discovery into that very subject.  Through the guise of a motion to strike and motion for protective order, Plaintiff seeks to have the Court rule on that factual issue before discovery is taken.  The law, however, is settled on a few key points that make clear the motions must be denied.

*First*, on matters of public concern, as here, *all* defamation plaintiffs bear the burden of proving that a challenged statement is substantially false.  *Second*, a defamation plaintiff who puts his reputation at issue cannot refuse to participate in discovery into his reputation and whether his reputation was impacted by a *false* statement of fact.   Much of the discovery that The Times seeks goes to those two issues.  And as further reason to deny the motion, Plaintiff failed to provide any

basis for the Court to excuse the delay in filing a motion to strike substantial truth from the case.

No litigants relish responding to discovery requests, but when a plaintiff brings a claim, he must participate in discovery to the full extent permitted by the Federal Rules of Civil Procedure, and a defendant is entitled to discover facts bearing on a plaintiff's claim—including, in a defamation case, on substantial truth and reputation. Accordingly, for the reasons discussed herein, The Times respectfully requests that the Court deny all three of Plaintiff's pending motions.

## RELEVANT BACKGROUND TO MOTIONS

### A.      The Shooting

In the early morning hours of January 15, 2023, Jamea Harris was shot and killed on The Strip in Tuscaloosa. Two men are currently facing capital murder charges for their alleged role in her death, including a then-current member of the University of Alabama men's basketball team, Darius Miles. Many of the details about the murder are still being litigated as of this filing, but information produced by Plaintiff in this action, including the Dylan Serafini affidavit and the transcript from a preliminary hearing in the criminal proceedings, reveal the following timeline regarding Plaintiff's actions and relation to the events of that night:

- **Between 11:00-11:30 p.m. on January 14**, Spears was on The Strip outside of Houndstooth Bar. Am. Compl. ¶ 28.

- **Between 12:30-12:35 a.m. on January 15**, Spears met up with Brandon Miller[1] outside Houndstooth Bar, got into Miller's car and drove with him to Moe's Barbeque, where they stayed for more than an hour.  Am. Compl. 29; Compl. Ex. A ¶¶ 10, 13[2].

- **At 1:02 a.m.**, while Miller was at Moe's with Spears, Miles texted Miller asking Miller when he would pick up Miles.  Dkt. 34-2 at 65:11-16.

- **At 1:10 a.m.**, Miles texted Miller a second time, asking how much longer Miller would be.  *Id*. 65:17-21.

- **As of 1:20 a.m.**, Spears was still with Miller and Cooper Lee[3] at Moe's Barbeque.  Compl. Ex. A ¶ 12.

- **Around 1:38 a.m.**, Miles texted Miller asking him to "bring me my joint."  Dkt. 34-2 at 62:23-63:12.  Prosecutors alleged this was a reference to a handgun.

- **At 1:40 a.m.**, as Spears, Miller and Lee were leaving Moe's Barbeque, Spears placed a FaceTime call to Jaden Bradley to ask where he was, and Miller took Spears' phone to talk to Bradley. Am. Compl. ¶ 32; Compl. Ex. A ¶ 13.

- **At 1:40 a.m.** Miller and Lee got into Miller's car.  Spears got into a separate car and returned to Bryant Hall.  Am. Compl. ¶ 32; Compl. Ex. A ¶ 14.

---

[1] Brandon Miller, a then-star player on the University of Alabama basketball team, has not been charged in the murder of Ms. Harris, but he has been accused by the police as driving the gun to the scene that was used in the murder.  *See* Dkt. 34-2 at 15:18-16:5.

[2] The Amended Complaint cites to the Affidavit of Dylan Serafini, which was attached as Exhibit A to the Complaint (Dkt. 1-1).  *See* Am. Compl. ¶ 21.

[3] Cooper Lee, a student-manager for the University of Alabama basketball team, was identified in the Complaint as the passenger in Miller's car at the time of the shooting.  *See* Am. Compl. ¶ 80.

- **At 1:43 a.m.** Miller pulled up behind Bradley's car on Grace Street, and Miles got out of Bradley's car.  Dkt. 34-2 at 97:4-14.

- **At 1:45 a.m.**, Miles retrieved the gun from the backseat of Miller's car.  Dkt. 34-2 at 16:1-5; *The death of Jamea Harris, the Alabama players involved, and the families torn apart*, ESPN.com (Mar. 9, 2023), https://www.espn.com/mens-college-basketball/story/_/id/35777040/how-former-alabama-basketball-player-friend-ended-charged-death-jamea-harris ("ESPN Report").

- **At 1:45 a.m.**, the shooting began.  ESPN Report.

- **At 1:48 a.m.**, Spears FaceTimed Bradley, and Bradley showed Miller's windshield with bullet holes in it.  Am. Compl. ¶ 33; Compl. Ex. A ¶ 15. Spears then texted and FaceTimed several other people about what had happened.  Am. Compl. ¶ 36.

- **At 2:00 a.m.**, Lee called Spears and asked to come to Spears' dorm room  "and gather his thoughts."  Am. Compl. ¶ 37; Compl. Ex. A ¶ 17.

- **Between 2:30-2:35 a.m.**, Lee arrived at Spears' dorm room and had a conversation with Spears.  *Id.*

- Later in the day on January 15, Spears was contacted by the Tuscaloosa Police Department to provide a statement.  Compl. Ex. A *Id.* ¶ 18.

- **Around 4:00 p.m.**, Spears went in to the police station to provide a statement.  Am. Compl. ¶ 38.

The chief investigator also testified at the hearing that Miller had a dash cam video in his car that recorded the events of the night.  Dkt. 34-2 at 30:1-11.

### B.  The Times Report

As the Court is aware, The Times published the Report at issue in this matter on March 15, 2023, which included the statement: "In another car that was struck

were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported." Am Compl. ¶ 44; Dkt. 12-1 at 3.  The Times noted in the Report that surveillance video showed that two people "were in a car struck by bullets in the crossfire" and that a "detective also made note of an unidentified passenger in Miller's car."  Dkt. 12-1 at 3, 5.  The Times also reported that a confidential source who was "familiar with the case" told The Times that Plaintiff was in Miller's car when it was hit with the gunfire.  *Id.* at 5 ("A person familiar with the case identified that person as Spears.  That person spoke on condition of anonymity to discuss sensitive matters in the case.").  The Times further quoted Plaintiff as saying: "I'm sorry, I'm not going to be able to speak about that," and noted that Miller declined comment and that "Alabama athletic officials did not immediately respond to messages seeking comment on Wednesday."  *Id*. at 4-5.

Following publication, the University of Alabama and people affiliated with Plaintiff told The Times that he was not present during the shooting, including on March 20, 2023, when legal counsel for Plaintiff requested a public retraction of the statement pursuant to Ala. Code § 6-5-186.  Am. Compl. ¶¶ 58-62, 75.  Absent proffered evidence or specific details contradicting its source's information, The Times declined to retract the Report.  The Times did, however, begin investigating the truth of these denials and quickly revised the Report to include three

statements, including from a spokeswoman for the Alabama athletic department saying that "based on the information we have, there were no current student-athletes present at the scene other than Brandon Miller and Jaden Bradley," from Plaintiff's father, Christian Spears, who failed to return messages left by The Times but published a statement on Marshall University's athletic website saying he was "disappointed in the irresponsible and demonstrably false reporting by the NY Times," and from Alabama's athletic director saying that "it was not true that Spears was 'present at the time of the incident.'"  Dkt. 12-1 at 5.

Although it possessed the information, the University of Alabama did not disclose that Lee, the student manager for the basketball team, was in the car with Miller at the time of the shooting or that Plaintiff had been with Miller and Lee until five minutes before the shooting.

### C.     The June 2, 2023 Editor's Note

On June 2, 2023, The Times published an Editor's Note stating that the Report had "misidentified the person who was in the car with Brandon Miller when the shooting occurred."[4]  The Editor's Note read, in full:

---

[4] *See* Billy Witz, *A Shooting That Ensnared Alabama Players Could Have Been Deadlier*, NYTimes.com (Updated June 2, 2023), https://www.nytimes.com/2023/03/15/sports/ncaabasketball/alabama-shooting.html#:~:text=%E2%80%94%20A%20fatal%20January%20shooting%20that,car%20struck%20by%20bullets%20in.

*The original version of this article, published March 15, misidentified the person who was in the car with Brandon Miller when the shooting occurred.*

*Based on information from a person familiar with the case, the article erroneously identified that person as Kai Spears, a freshman basketball player. After the article was initially published, Alabama's athletic director and Spears's father denied that Spears was present. The Times included those responses and reviewed its reporting, but did not conclude that any other change to the article was warranted at that time.*

*On Wednesday, Spears filed a defamation suit against The Times that included new details about the incident. Based on that information, editors assigned further reporting, which determined that the other person at the scene was not Spears but Cooper Lee, a student manager for the team. The Times regrets the error in the initial report.*

*This article has been revised to remove the erroneous information; the latest updates can be seen* <u>here</u>.[5]

### D.    Plaintiff's Complaint and Arguments in This Action

Plaintiff filed this action on May 30, 2023, pleading claims for Defamation/Libel and False Light Invasion of Privacy, and an amended complaint pleading the same causes of action on December 27, 2023.  Am. Compl. ¶¶ 88-116. Plaintiff alleged that The Times published three statements that defamed him:

- "In another car that was struck were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported.";

---

[5] *Id.*

7

- "Including Spears, at least four Alabama players have now been placed at the scene of the shooting . . ."; and

- "Behind Miller and Spears was a Jeep with Harris in the front passenger seat."

Am. Compl. ¶¶ 44-46.

Plaintiff maintained that he "was not present at the shooting," and that "[t]hese statements implied that Plaintiff Spears may have been involved in criminal activity and may have withheld information about his presence at the murder scene from investigating officials."  Am. Compl. ¶¶ 49, 106.  Further, in his opposition to The Times's Motion to Dismiss Spears' initial complaint, Plaintiff repeatedly emphasized that The Times defamed him by "falsely report[ing] [his] 'involvement' in a deadly shooting him, and nam[ing] him as the previously 'unidentified passenger' in a car it reported as having delivered the gun used in the killing."  Dkt. 20 at 1.  He emphasized that he "was not 'the unidentified passenger in Miller's car' referenced by police detectives, he was not at the scene, and he most certainly was not 'involved' in the shooting."  *Id*.

Plaintiff argued that no "ordinary reader" of the Report would understand the article "as depicting either Spears or Miller as mere bystanders at a crime scene or as victims," proclaiming: "Who would an 'ordinary reader' think the NYT was referring to as 'other players' whose '***involvement*** …. Was kept quiet' if not the three players named in the article: Brandon Miller, Jaden Bradley, and Kai

Spears?" Dkt. 20 at 15-6.  The Report, Plaintiff argued, implied that he was

"'involved' in the shooting by being in the vehicle which had just transported the

murder weapon to the scene and which was blocking the deceased's vehicle in the

narrow alley as she was shot to death." *Id*. at 22.

### E.    This Court's Ruling on The Times's Motion to Dismiss

On December 6, 2023, this Court granted in part, and denied in part, The

Times's Motion to Dismiss Plaintiff's Complaint.  *See* Dkt. 22.  In denying The

Times's Motion as to Plaintiff's defamation claim, the Court noted that "the article

does not expressly accuse Spears of any crime," and that identifying Plaintiff as

one of "two players [who] were in a car struck by bullets in the crossfire," among

others, when "[r]ead alone, . . . do not appear reasonably capable of conveying

defamatory meaning." Dkt. 22 at 10.  The Court continued, however, to explain

that when read in context, "the article as a whole, could reasonably ascribe to it the

implied suggestion that Spears was somehow complicit in the shooting." *Id*. at 11.

Specifically, the Court expressed concern regarding statements describing

members of the basketball team "including Spears—as being 'involved' in the

'fatal January shooting,'" the "claim[] that the University 'kept quiet' those

players' involvement in the shooting," and "plac[ing] Spears 'at the scene of the

shooting and in the car that transported the gun used in the shooting[.]'" *Id*.  As the

Court explained, "[t]aken together, these statements could reasonably be read as implying that Spears was reprehensibly 'involved' in the shooting." *Id.*

### F.   The Times has, for more than seven months, argued that the Report is substantially true

From its very first filing in this action on July 28, 2023, The Times has consistently maintained that any "defamatory meaning arising from the suggestion that [Plaintiff] was *associated* with others who were present at the shooting" was substantially true, and that "[s]ubstantial truth is not an 'affirmative defense,'" but rather "part of the *plaintiff's burden* in a case, like this, involving matters of public concern." Dkt. 12 at 19-20, 21; Dkt. 21 at 7.

On December 21, 2023, the Parties conducted their Rule 26(f) planning meeting pursuant and, as stated in the Parties' joint report, they "agree[d] discovery will be needed on . . . [t]he substantial truth of the Subject Article." Dkt. 29 at 1-2. In that same report, Defendants further stated their position that the case would not be ready within twelve months from date of service of the Complaint, in part because of "the importance of the collateral criminal and civil actions, which involve many of the same underlying facts and circumstances that will be litigated in this action related to the truth or falsity of the challenged statements[.]" *Id.* at 4.

On January 10, 2024, at the Parties' Fed. R. Civ. P. 16 conference before this Court, counsel represented to the Court that significant discovery will be required regarding the events surrounding the shooting on January 15, including

into persons who may plead their Fifth Amendment right against self-incrimination.

That same day, The Times filed its Answer to the Amended Complaint. *See* Dkt. 30. Among its defenses, The Times disclosed that "[b]y alleging the separate and additional defenses set forth below, Defendant is not in any way agreeing or conceding that it has the burden of proof or the burden of persuasion on any of these issues." *Id.* at 17. The Times went on to describe its "Third Defense" as follows: "Some or all allegedly defamatory statements or implications about Plaintiff are true or substantially true, and Plaintiff cannot carry his burden of proving that any such statement or implication is materially false." *Id.*

On February 9, 2024, The Times served its Rule 26(a)(1) Initial Disclosures identifying numerous individuals who were identified as being near the shooting and/or are affiliated with the University of Alabama men's basketball team who may be able to testify regarding the "[s]ubstantial truth of the article."

On January 26, 2024, The Times served written discovery requests on Plaintiff seeking, in part, materials and information related to the truth or falsity of the events surrounding Harris' murder. Specifically, The Times requested that Plaintiff provide the following information:

- <u>Interrogatory No. 12</u>: Describe in detail all facts and/or information concerning Your knowledge, or lack thereof, regarding the events leading up to the Shooting, including but not limited to why Brandon Miller drove to Grace Street in the minutes before the Shooting and

11

any information requested from You by law enforcement or shared by You with law enforcement.  Your answer should include when You learned these facts and information.

- Interrogatory No. 13: Describe in detail all facts and/or information concerning Your knowledge, or lack thereof, of the presence of a gun in Brandon Miller's car on the night of January 14, 2023, including but not limited to, when it was placed in the car, who placed it in the car, where it was in the car, who knew it was in the car, why it was in the car, and when it was removed from the car.  Your answer should include when You learned these facts and information.

- Request for Production 5: All data from the cell phone(s) or social media/messaging account(s) You used on January 14-16, 2023, to include all text messages, FaceTime (voice or video), phone calls, social media direct messages, social media posts, emails, or other messages sent or received, as well as all photographs or videos taken between January 14, 2023 and January 16, 2023.

- Request for Production 7-13: All communications between You and Brandon Miller, Darius Miles, Jaden Bradley, Cooper Lee, Michael Davis, Dylan Serafini, and Esai Morse between January 1, 2023 and present.

- Request for Production 17: All documents that in any manner relate to, concern, or evidence every communication that You have had with anyone in the Tuscaloosa County District Attorney office, the Tuscaloosa Police Department, or any other law enforcement agency office concerning the Subject Article, the Shooting, Your activities and whereabouts on January 14, 2023 and January 15, 2023, or any other matter described in the Complaint.

Plaintiff responded to these requests on Monday, February 26, 2024 and objected

to each of these requests on "on the basis that it is not reasonably calculated to lead

to the discovery of admissible evidence.  Defendant has already admitted that it

was wrong when reporting (1) Kai Spears was in Brandon Miller's vehicle and

(2) involved in the fatal shooting."

### G.    The Three Pending Motions

One business day before Plaintiff's discovery responses were due, his counsel filed three motions that are presently before the Court for its consideration: (1) Motion for Leave to File Plaintiff's Motion to Strike Defendant's Third Affirmative Defense Outside of Time ("Motion for "Leave") (Dkt. 31); (2) Motion to Strike Defendant's Third Affirmative Defense of 'Substantial Truth' ("Motion to Strike") (Dkt. 32); and (3) Motion for Protective Order (Dkt. 33).  Plaintiff filed a single brief in support of these motions (Dkt. 34).

For the reasons stated herein, all three of Plaintiff's motions should be denied.

### ARGUMENT

## I.    PLAINTIFF'S MOTION FOR LEAVE SHOULD BE DENIED

Pursuant to Fed. R. Civ. P. 12(f)(2), parties are afforded 21 days from service of a pleading to file a motion to strike.  The Times filed its Answer on January 10, 2024 (Dkt. 30); accordingly, any motion to strike Plaintiff wished to file was due by January 31, 2024.  Plaintiff, however, did not file the Motion to Strike until *45 days later* on February 23, 2024.  *See* Dkt. 32.  Plaintiff asks the Court to find that his "failure to act was the result of 'excusable neglect," under Fed. R. Civ. P. 6(b)(1)(B), claiming that he "did not fully appreciate the extent of Defendant's affirmative defenses until Defendant recently filed their initial disclosures pursuant to Rule 26(a)(1)" and "propounded an extensive set of written

discovery upon Plaintiff, causing Plaintiff to revisit the affirmative defenses set forth in Defendant's Answer."  Dkt. 31 at 3-4.

Plaintiff fails to carry his burden to show that relief is warranted.  Relief from deadlines is only warranted where there is "good cause" for the delay.  *See* Fed. R. Civ. P. 6(b)(1)(A).  As the Eleventh Circuit Court of Appeals articulated: "[t]o establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence."  *Ashmore v. Sec'y, DOT*, 503 F. App'x 683, 685-86 (11th Cir. 2013).  If good cause exists, courts may extend a deadline

> as long as the party failed to act because of excusable neglect. To determine if there was excusable neglect, the court considers the following factors: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Id*.

In his motion, Plaintiff fails to present any basis by which to conclude that good cause exists or that the delay was the result of "excusable neglect."  The Times first argued that the Report was substantially true on July 28, 2023—*211 days* before Plaintiff filed his Motion to Strike—and, as described above, *see supra* at 10-12, The Times took that position in its dispositive briefing, in its Answer,

during case conferences, in its Rule 16 report, its Rule 26 disclosures, and in discovery requests.

As to the first two factors, prejudice and delay, Plaintiff sought a shorter litigation schedule than that which The Times favored, which the Court adopted. Now Plaintiff's objections to discovery central to his claims, and the resulting pending motions, have already delayed discovery and are continuing to do so. Plaintiff has refused to respond to discovery requests regarding his knowledge of the events of January 15, and he presumably will continue to refuse to respond to those requests unless and until this Court denies his pending motions. As this Court previously held when denying a motion filed pursuant to Fed. R. Civ. P. 6(b), "prejudice to the progress of litigation in this case" is an appropriate factor for courts to consider when denying a motion to file a motion out of time. *Carruth v. Smyth*, 2018 U.S. Dist. LEXIS 21531, at *14 (N.D. Ala. Feb. 9, 2018) (Coogler, J.). The Times respectfully submits that such prejudice in this case warrants denial of Plaintiff's Motion for Leave.

The third and fourth factors, movant's control and good faith effort, also weigh against granting the motion. At most, Plaintiff urges that counsel failed to read, and to hear, the arguments that The Times has consistently presented in this case for more than seven months. As the Eleventh Circuit said in an analogous context, "[t]he excusable neglect standard can never be met by a showing of

inability or refusal to read and comprehend the plain language of the federal rules."

*Advanced Estimating Sys. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1977) (quoting

*Prizevoits v. Ind. Bell Tel.*, 76 F.3d 132, 133 (7th Cir. 1996)).  The Times

repeatedly disclosed, in plain language, that it intended to defend against Plaintiff's

claims on the basis that the Report is substantially true.

For all of these reasons, Plaintiff's Motion for Leave should be denied.

## II.      PLAINTIFF'S MOTION TO STRIKE SHOULD BE DENIED

If the Court grants Plaintiff's Motion for Leave, it must still consider the

substance of the untimely Motion to Strike, which asks this Court to strike The

Times's "affirmative defense" of substantial truth on the basis that it has "zero

potential applicability in this case."  *See* Dkt. 32 at 4.  In so arguing, however,

Plaintiff misapplies the burden—indeed it is *his* burden to prove substantial falsity

of his "involvement"—and he fails to cite a *single* case in which a court granted a

motion to strike the question of truth or falsity from a defamation claim, *see* Dkt.

34 at 11.  Accordingly, for the reasons discussed herein, Plaintiff's Motion to

Strike should be denied.

### A.      Motions to Strike are a Drastic and Disfavored Remedy

Fed. R. Civ. P. 12(f) permits courts to strike "an insufficient defense or any

redundant, immaterial, impertinent or scandalous matter" in certain circumstances.

As courts in this jurisdiction have articulated, however, a motion to strike "should

be granted only when the pleading to be stricken has no possible relation to the controversy." *Finch v. S. Tool*, 2010 U.S. Dist. LEXIS 157251, *at 3-4 (N.D. Ala. Nov. 17, 2010) (quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)).  And, "[p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts," and "resorted to only when required for the purposes of justice." *Id*. at *3 (quoting *Augustus*, 306 F.2d at 868). As another federal court bluntly stated: motions to strike are often "considered 'time wasters,' and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Carlson Corp./Se. v. Sch. Bd. of Seminole Cnty.*, 778 F. Supp. 518, 519 (M.D. Fla. 1991).

## B. Plaintiff Must Prove Substantial Falsity as an Element of His Claims

One absurdity of the Motion to Strike is that it seeks to strike an affirmative defense that is a mirror of Plaintiff's own burden to prove his case.  In 1986, the U.S. Supreme Court held that "where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false." *Phila. Newspapers v. Hepps*, 475 U.S. 767, 768-69 (1986); *accord Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 n.6 (11th Cir. 1987) (recognizing that in *Hepps*, "the Supreme Court held that the burden of showing falsity in a defamation action against a media defendant must always lie

with the plaintiff.").  The Supreme Court acknowledged this conflicted with "the

common law's rule on falsity—that the defendant must bear the burden of proving

truth," but explained that "the Constitution requires us to tip [the scales] in favor of

protecting true speech" on matters of public concern by placing the burden of

proving falsity on all plaintiffs—including private figure plaintiffs—in matters

involving speech of public concern.  *Hepps*, 475 U.S. at 776-77.  "To do otherwise

could only result in a deterrence of speech which the Constitution makes free."  *Id.*

at 777 (cleaned up).

As the Supreme Court further articulated in 1991, the law of truth versus

falsity "overlooks minor inaccuracies and concentrates upon substantial truth,"

which places the burden upon the plaintiff "to prove falsity."  *Masson v. New

Yorker*, 501 U.S. 496, 517 (1991).  The Court explained that "[t]he essence of that

inquiry, however, remains the same whether the burden rests upon plaintiff or

defendant.  Minor inaccuracies do not amount to falsity so long as the substance,

the gist, the sting, of the libelous charge be justified."  *Id.* (cleaned up).  The

question then is whether the statement, if entirely accurate, would result "in a

material change in the meaning conveyed by the statement."  *Id.*

Plaintiff cherry picks case law suggesting that a defamation defendant bears

the burden of proving substantial truth but, in so doing, he ignores the wealth of

case law making clear that Plaintiff bears the burden in this action.  *See* Dkt. 32 at

4-5; Dkt. 34 at 10.  In general, "when federal and state laws conflict, the federal law triumphs and preempts the conflicting state law."  *Cantley v. Lorillard Tobacco*, 681 So. 2d 1057, 1059 (Ala. 1996).  It is therefore unsurprising that, since *Hepps* and *Masson*, courts applying Alabama law have routinely made clear that plaintiffs bear the burden of proving falsity when their claims are based on speech of public concern.  As the Alabama Supreme Court stated: "the courts of this State are bound by the constitutional principles enunciated" in *Hepps*, and when speech is on an issue of public concern, a defamation plaintiff bears the "heavy … burden of proving that the publication[] w[as] false."  *Ex parte Rudder*, 507 So. 2d 411, 416-17 (Ala. 1987); *see also Little v. Consol. Publ'g*, 83 So. 3d 517, 525 (Ala. Civ. App. 2011) (declining to follow a pre-*Hepps* Alabama Supreme Court decision because it "conflicts with the constitutional protections the First Amendment affords . . . [and] this court is bound to follow the opinion of the United States Supreme Court."); *Forrester v. WVTM TV*, 709 So. 2d 23, 26 (Ala. Civ. App. 1997) ("Because this case involves a matter of public concern, the burden is on [plaintiff] to show that the broadcast was false."); *see also Levan v. Cap. Cities/ABC*, 190 F.3d 1230, 1238-39 (11th Cir. 1999) ("Because this case involves a public figure plaintiff, and the broadcast was a matter of public concern, [plaintiffs] are required to prove not only that the statements were defamatory and false" but also actual malice).

Accordingly, Plaintiff cannot succeed in his claims for defamation or false light *unless* he proves that the potentially defamatory gist or sting of the Report—*i.e.*, as the Court concluded, an implication that "Spears was reprehensibly 'involved' in the shooting," Dkt. 22 at 11—would have been different had The Times not erred in stating that Plaintiff was in the car at the time of the shooting.

### C.   Evidence Showing the Substantial Truth of Challenged Speech Can be Presented to Rebut Evidence of Falsity

While defamation plaintiffs bear the burden of proving falsity, "truth is always an absolute defense to any action for libel or slander." *McCaig v. Talladega Publ'g*, 544 So. 2d 875, 879 (Ala. 1989).  In other words, while defamation defendants have no affirmative obligation to *prove* that the challenged speech is true, defamation defendants may always present evidence establishing the substantial truth of a statement as true statements are "not capable of having a defamatory meaning."  *Id*.  And nothing about The Times's articulation of its defenses in this action changes that.  In an analogous Eleventh Circuit case, a defendant listed as an affirmative defense that plaintiff's complaint "should be dismissed for failure to state a claim upon which relief can be granted" because plaintiff failed to allege facts supporting an element of its claim.  *See In re Rawson Food Serv.*, 846 F.2d 1343, 1345 (11th Cir. 1988).  After the plaintiff lost at trial, it argued on appeal that it bore no obligation to provide evidence supporting that element of its claim because the defendant had included the defense in their list of

affirmative defenses.  *Id*. at 1348-49.  The Eleventh Circuit rejected the argument.

Because the fact at issue was "a necessary part of the [plaintiff's] prima facie case

… [a] defense which points out a defect in the plaintiff's prima facie case is not an

affirmative defense."  *Id*.

In other words, the Motion to Strike is a "time-waster."  *Carlson Corp./Se.*,

778 F. Supp. at 519.  Even if it is granted, the substantial truth or falsity of the

report will remain a core issue in this litigation.

### D.   The Times Has Not Conceded The Falsity of the Allegedly Defamatory Implication At Issue in This Case

This Court in its Order denying The Times's Motion to Dismiss clearly

identified the question on defamatory meaning: Whether, when read in context, the

statements could be understood by an ordinary reader as suggesting that Plaintiff

was "involved" in the shooting.  *See* Dkt. 22 at 10-11.  In his Motion to Strike,

however, Plaintiff seeks to thread an indefensible line.  He acknowledges that "the

'gist' or 'sting' of the article . . . is that Kai Spears was somehow 'involved in the

shooting,'" yet he suggests that his supposed "involvement" was limited to "being

Miller's passenger at the time of the shooting" and "[t]he *only purpose* for Spears

being named in the Subject Article was to identify him as the passenger in Miller's

car[.]"  Dkt. 32 at 5; Dkt. 34 at 1, 2.  But if that were true, under the Court's

analysis the case would be over, because statements placing Plaintiff in Miller's

car at the time of the shooting "[r]ead alone, . . . do not appear reasonably capable of conveying defamatory meaning."  Dkt. 22 at 10.

Rather, the Court recognized, it is the "context" that could make the statements capable of defamatory meaning, and the context in this case is: (1) whether Plaintiff was "involved" in the shooting; (2) whether the University "kept quiet" that members of the basketball team were involved in the shooting; and (3) whether Plaintiff was in the car that transported the gun to the scene.  *Id*. at 11.  Yet now Plaintiff, attempting a neat trick, seeks to foreclose all discovery into that very context.  As described in greater detail above, *supra* at 2-4, the timeline revealed by Plaintiff's own filings establish facts that The Times must be permitted to explore through discovery:

- Spears rode in Miller's car the night that Miles' gun was on the back seat of the car.  *See* Compl. Ex. A ¶ 10 and Dkt. 34-2 at 16:1-5;

- Spears was with Miller when he received three text messages from Miles, including one just seven minutes before the shooting in which Miles asked Miller to bring his gun to the scene.  *See* Dkt. 34-2 at 62:23-63:12, 65:11-21; Am Compl. ¶¶ 29-32; Compl. Ex. A ¶¶ 10-13;

- Spears and Miller both left Moe's Barbeque within two minutes of receiving Miles' text asking Miller to bring his gun to the scene.  *See* Compl. ¶¶ 13-14; Dkt. 34-2 at 62:23-63:12;

- Spears FaceTimed Bradley as they were leaving Moe's, and again eight minutes later—which was three minutes after the shooting.  *See* Am. Compl. ¶ 33; Compl. Ex. A ¶¶ 13, 15; ESPN Report;

- Lee called Spears 15 minutes after the shooting asking to come to Spears' dorm room "and gather his thoughts."  Am. Compl. ¶ 37; Compl. Ex. A ¶ 17;

- Spears provided a statement to the Tuscaloosa Police Department that same day about the shooting.  Am. Compl. ¶ 38;

- The University spokesperson's statement regarding "current student-athletes" failed to acknowledge that, at the time of the shooting, Miles *had been* a current student athlete, and further failed to disclose that Lee, the student-manager of the team, was also at the scene at the time of the shooting.  *See* Am. Compl. ¶ 59.

While Plaintiff may testify that he knew nothing of the brewing confrontation or the handgun, *his lawsuit* has put his involvement in the events of that night—and his own reputation—at issue.  The Times is entitled to obtain full discovery on these facts.   Simply, the context of whether Plaintiff was "involved" in the shooting extends beyond his mere presence, or lack thereof, in Miller's car at the precise moment that shots were fired, and The Times is entitled to discovery into that possible involvement.

## III.   PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED

Plaintiff's third motion, his Motion for Protective Order, asks the Court to prevent The Times "from engaging in irrelevant, burdensome, and intrusive discovery related to the 'substantial truth' doctrine" on the basis that it has "no applicability to the case," and Plaintiff must be protected "from annoyance, embarrassment, oppression, or undue burden and expense."  Dkt. 33 at 3.  As outlined above, what Plaintiff seeks is a pass on proving an element of his claim:

the substantial falsity of the defamatory meaning of the Report.  Plaintiff's Motion for a Protective Order should be denied.

When considering a motion for protective order, courts start from the proposition that parties are allowed to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  As such, "[t]he party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 408 (N.D. Ala. 2017) (Coogler, J.); *see also Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) ("The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." (cleaned up)).  When seeking a protective order, a party "should make specific objections matched to specific requests." *Skypoint Advisors v. 3 Amigos Prods.*, 2021 U.S. Dist. LEXIS 190167, at *9 (M.D. Fla. June 17, 2021) (cleaned up).  When a motion seeks to prohibit discovery all together, the "burden of showing good cause . . . is a heavy one."  *See Merrill*, 321 F.R.D. at 408 ("protective orders prohibiting depositions are rarely granted"); *see also Farnsworth v. Procter & Gamble*, 758 F.2d 1545, 1547 (11th Cir. 1985)

(when the interest in discovery relates to a party's defense, "great care must be taken to avoid [its] unnecessary infringement.").

The Motion for Protective Order fails in each respect.

### A.   Plaintiff Fails to Establish Cause for a Protective Order

Any party that moves for a protective order must state the grounds for their motion with particularity and must identify the discovery request(s) from which they seek protection.  Plaintiff, however, fails to identity with *any* specificity what he seeks protection from, stating only that he believes the Court should restrict discovery into the truth or falsity of the Report.  *See* Dkt. 33 at 4.  By failing to identify which discovery request(s) he believes are improper, and precisely why, Plaintiff has failed properly to support his assertion that a protective order is proper in this case.

Further, Plaintiff fails to cite a single case that supports granting a sweeping protective order against discovery into substantial truth.  Rather, he relies exclusively on two inapt Illinois state court cases.  In *Ryan v. Fox TV Stations*, 979 N.E.2d 954 (Ill. App. Ct. 2012), the trial court denied the defendant TV station's motion to dismiss a defamation complaint pursuant to the state's Anti-SLAPP statute because the defendant failed to present "undisputed evidence" regarding the truth of the challenged statements.  *Id*. at 965.  As the court made clear, the defendant *could have conducted discovery* into the truth of the challenged speech

25

pursuant to the statute, but chose not to.  *Id.*  In other words, not only did the court *not* say that discovery was *inappropriate*, but it actually said discovery *could have* been utilized by the defense but was not.  Nor does *Clarage v. Kuzma*, 795 N.E.2d 348 (Ill. App. Ct. 2003), support Plaintiff's arguments.  It merely stands for the proposition that when a retraction acknowledges that the statement at issue is "not true," and that statement forms the "gist" of the defamatory sting, then a plaintiff can state a claim for defamation.  *Id*. at 581.

When stripped of those cases, Plaintiff's Motion for Protective Order is left largely with a repeat of his arguments in support of his Motion to Strike, *see* Dkt. 34 at 17-18, which as addressed above, rely on an impermissibly narrow understanding of what is at issue in this case.  *See supra* at 16-23.  On this basis, the Court should deny Plaintiff's Motion for Protective Order.

## B.   Alleged "Prejudice" Does Not Warrant a Protective Order Where Plaintiff Has Placed Substantial Truth and Reputation at Issue

In both his Motion to Strike and his Motion for Protective Order, Plaintiff argues that he "will be prejudiced" if the Court permits discovery into his possible involvement in the events of January 15 "because it disregards any mitigation of damage to Plaintiff's reputation."  Dkt. 32 at 5; Dkt. 34 at 20-21.  To state the matter directly: Plaintiff specifically placed his involvement in the events on the night of the shooting, and his reputation more broadly, at issue by filing this action against The Times.  Indeed, Plaintiff stated in his initial disclosures that he "seeks

compensation for mental suffering, shame, humiliation, *damage to reputation* and enjoyment of life," and in his Motion to Strike, Plaintiff again alleged that the Report "resulted in tremendous damage to him."  Dkt. 32 at 2 (emphasis added).

As the Alabama Supreme Court has articulated, "[t]he foundation of an action for libel or slander is a malicious injury to reputation[.]"  *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003).  By pleading that The Times damaged his reputation by falsely implying he was *involved* in a crime, Plaintiff placed his reputation at issue, and "[a] defamation plaintiff may not place a matter in issue and then successfully thwart discovery because it is unduly intrusive, sensitive or privileged from disclosure."  *In re O'Keefe*, 184 F. Supp. 3d 1362, 1371 (S.D. Fla. 2016).[6]  The Times is entitled to discovery into Plaintiff's reputation and into what impact, if any, the Report had on his reputation.

Courts have recognized that "plaintiffs in defamation cases . . . often end up publicizing defamatory statements much more than if they had not filed a lawsuit."

---

[6] Given that two men are currently being prosecuted for their alleged roles in the January 15 shooting, it bears emphasizing that Plaintiff is also not entitled to a protective order from discovery simply in order to avoid self-incrimination.  *See Perez v. Gallego*, 354 So. 3d 614, 618 (Fla. 3d DCA 2023) (denying plaintiff's motion to stay her defamation lawsuit based on invocation of her Fifth Amendment protection against self-incrimination and making clear that if the plaintiff asserted her Fifth Amendment privilege in response to discovery, "the court would have the right to make the appropriate inference, or strike the pleadings to the extent such an assertion goes to the heart of the relief sought.")

*Guttenberg v. Emery*, 26 F. Supp. 3d 88, 95 (D.D.C. 2014).[7]  But that choice

belonged to Plaintiff.  He cannot fairly assert claims against The Times and then

complain that discovery into matters central to the defense of those claims and his

own alleged damages is uncomfortable.

### C.  Arguments to "Streamline" the Case Are Premature

Plaintiff's final argument is a half-hearted attempt to suggest a protective

order is necessary in order to "streamline" the case and to avoid any "delay,"

apparently arguing that The Times disclosed *too many* possible sources of

discoverable information in its initial disclosures.  *See* Dkt. 34 at 9-10; Dkt. 33 at

5; Dkt. 32 at 5, 6.

*First*, The Times served its initial disclosures in accordance with Fed. R.

Civ. P. 26(a)(1)(i), which requires each party disclose "each individual likely to

have discoverable information—along with the subjects of that information—that

the disclosing party may use to support its claims or defenses."  The reality that

there are many *possible* sources of discoverable information into the truth or falsity

of the Report does not provide any support for Plaintiff's claim that a protective

order limiting the subjects of discovery for The Times is appropriate.

---

[7] Some have referred more broadly to this phenomenon of boomerang attempts to suppress or punish speech as the "Streisand Effect."  Wikipedia, *Streisand effect*, https://en.wikipedia.org/w/index.php?title=Streisand_effect&oldid=1211871586 (last visited Mar. 8, 2024).

*Second*, The Times will of course comply with Federal Rules and this Court's orders, or at an appropriate time if good cause warrants a request for an expansion of discovery, make that request to the Court.  But Plaintiff offers no basis now—more than six months before the close of discovery and before a single deposition has been taken—for a request that the Court preemptively, and arbitrarily, impose a protective order to ensure that The Times does not violate limits it has not come close to violating.  On this basis as well, Plaintiff's Motion for Protective Order should be denied.

## CONCLUSION

For the reasons discussed herein, The Times respectfully requests that this Court deny Plaintiff's Motion for Leave, Motion to Strike, and Motion for Protective Order.

Dated: March 12, 2024          Respectfully submitted,

/s/ John G. Thompson
John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice*)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice*)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant
The New York Times Company**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

/s/ John G. Thompson
OF COUNSEL
