FILED
2025 Oct-07  PM 12:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| KAI SPEARS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 7:23-cv-00692-ACA-HNJ |
| | ) | |
| THE NEW YORK TIMES COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION AND ORDER

This action proceeds before the court on the motion by non-party The Board of Trustees of the University of Alabama ("the Board")[1]  to quash a subpoena Defendant The New York Times Company ("NYT") issued to University of Alabama employee Shane Lyons ("Lyons") to testify at deposition, or alternatively, for a protective order. (Doc. 112).   United States District Judge Annemarie Carney Axon referred the motion to the undersigned.   (Doc. 114 and August 13, 2025, docket entry).   NYT opposes the motion. (Doc. 128).   For the reasons set out herein, the court will **DENY** the motion to the extent it seeks to quash the subpoena but **GRANT** the motion to the extent it seeks a protective order limiting the duration of the deposition.

---

[1] The Board filed the motion "for and on behalf of its member institution, the University of Alabama ("UA") and, specifically, its employee Shane Lyons ("Lyons").   (Doc. 112, at 1).

## BACKGROUND

Plaintiff Kai Spears, a former basketball player for the University of Alabama, asserts state law claims against NYT for defamation/libel and false light invasion of privacy. (Doc. 28).[2] The claims concern NYT's reporting of a fatal shooting on January 15, 2023, in Tuscaloosa, Alabama. NYT published an article on March 15, 2023, erroneously stating Spears was present at the time of the shooting, along with two other University of Alabama basketball players. (*Id.* ¶¶ 16-20, 47-48). Specifically, the NYT article contained the following statements:

> A fatal January shooting that involved members of the top-ranked Alabama men's basketball team, which has loomed over the Crimson Tide as they chase a national championship, could have been even more deadly, as surveillance video showed that two players were in a car struck by bullets in the crossfire.

> The shootout, which sent people nearby scrambling for cover, killed Jamea Harris, 23, who was a passenger in a car. In another car that was struck were Brandon Miller, a star player for the Crimson Tide, and Kai Spears, a freshman walk-on whose presence at the scene had not been previously reported.

> . . . .

> Including Spears, at least four Alabama players have now been placed at the scene of the shooting that took place in the early morning hours of Jan. 15, as bars emptied out along The Strip, a popular gathering spot for students near campus along University Boulevard in Tuscaloosa.

> . . . .

---

[2] Federal diversity jurisdiction exists over the state claims, as the parties hail from different states, and the amount in controversy exceeds $75,000. (Doc. 28, ¶¶ 8-11; *see* 28 U.S.C. § 1332(a)(1)).

Jaden Bradley, a freshman guard, was also at the scene. A review of surveillance video showed his car was in a narrow lane that intersects University Boulevard, parked ahead of Miller and Spears.    Behind Miller and Spears was a Jeep with Harris in the front passenger seat.

. . . .

In its aftermath, the school has sought to distance itself from the shooting. . . .    [T]he involvement of other players — of which the school was aware — was kept quiet . . . .

(Doc. 12-1 at 3, 4, 5).

Spears, his father, and his attorney denied Spears's presence at the scene of the shooting, yet Spears declined to provide NYT a full interview pursuant to directives from the University not to respond to media questions about the shooting.    (*Id.* ¶¶ 52-54, 58).    After NYT published the story, it allegedly received information from multiple sources that it inaccurately reported Spears's presence at the scene, yet it did not correct the report.    (*Id.* ¶¶ 59-62, 67-69).    On March 16, 2023, NYT reporter Billy Witz allegedly informed the Spears family the newspaper would issue a retraction only if Spears agreed to a full interview.    When Spears refused, NYT issued a statement on March 17, 2023, standing by its story, and other news outlets picked up the report.    (*Id.* ¶¶ 70-74).

Eventually, on June 2, 2023, Spears agreed to provide NYT an interview.    He identified Cooper Lee, the student basketball manager, as an additional individual in Miller's car the night of the shooting. (Doc. 28, ¶¶ 77-79).    After receiving that

3

information and confirming it with Cooper Lee, NYT publicly acknowledged it previously misidentified Spears as the passenger.    (*Id.* ¶¶ 80-82).

Spears filed this lawsuit on May 30, 2023 (Doc. 1), and he amended his complaint on December 27, 2023.    (Doc. 28).    NYT's Answer to the Amended Complaint asserts affirmative defenses, including that "[s]ome or all allegedly defamatory statements or implications about Plaintiff are true or substantially true, and Plaintiff cannot carry his burden of proving that any such statement or implication is materially false," and "[s]ome or all of the statements at issue are not reasonably capable of the defamatory meaning attributed to them by Plaintiff."    (Doc. 30, at 17).

On July 31, 2025, NYT served a non-party subpoena seeking to depose Lyons, the University of Alabama Executive Deputy Director of Athletics and Chief Operating Officer.    The Board did not attach a copy of the subpoena to its motion, but it states that NYT's attorneys have represented they primarily seek

> Lyons' testimony regarding 1) Lyons' conversations with Christian Spears [Kai Spears's father] following the incident underlying this case, although it is UA's understanding that Christian Spears has been deposed by NYT, and 2) meetings that occurred between UA officials and members of UA's men's basketball team to provide information for its "substantial truth" affirmative defense.

(Doc. 112, at 2).

The Board challenges the subpoena on the grounds that the information NYT seeks from the deposition does not bear relevance to any party's claims or defenses,

4

and the information sought duplicates information NYT already sought from another University official in a prior deposition.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The district court may quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). *See BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-CV-3886-AT, 2017 WL 11627485, at *10 (N.D. Ga. July 3, 2017) (citations omitted) (The subpoena issuer's duty to avoid undue burden or expense on the receiving party "'reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur undue burden and expense.'").

"While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (citing Fed. R. Civ. P. 26(b)(1); Advisory Committee Note to the 1970 Amendments to Rule 45 (noting that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules")).

5

Therefore, the court must assess two primary issues raised by this motion to quash:   relevancy and burden.

## A.   Lyons's Putative Testimony Bears Relevance to the Claims

Pursuant to Rule 26, a party may discover

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).   "[A]subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."   *Jordan,* 947 F.3d at 1329.   Of course, "the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Id.* (citing Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401 (stating that information is relevant if it has a "tendency to make a fact more or less probable" and "the fact is of consequence in determining the action")).

NYT asserts the testimony it seeks from Lyons bears relevance to defend against Plaintiff's claims:

> Plaintiff has alleged that if The Times had engaged more diligently with the University of Alabama, it would not have made the pre-publication error of confusing Kai Spears and Cooper Lee and/or would have quickly learned of Lee's identify post-publication.   Conversely, witnesses for The Times have testified that University staff did not provide relevant information, preventing or delaying accurate reporting.   And third-party

witnesses have testified that they were instructed by University staff not
to respond to press outreach.   Consequently, when the University learned
that Lee – not Spears – had been the passenger at the time of the
shooting[,] and how the University engaged with the press and Spears's
family regarding the shooting[,] is directly relevant to legal issues in this
case.

(Doc. 128, at 1-2; *see also id.* at 4-5 ("Plaintiff has attempted to develop testimony from

a number of witnesses connected to the University of Alabama basketball team that the

reporter for The Times, Billy Witz, could have uncovered the true identity of the

passenger in Miller's car earlier if he had just asked the University and given them time

to figure out the answer.")).

To contest the relevance of Lyons's testimony, the Board argues "Lyons' role in

the relevant meetings with basketball players was administrative in nature and far

removed from the factual circumstances surrounding the shooting and the extent of

Plaintiff's alleged involvement in it" (Doc. 112, at 6), and "what Lyons or the University

knew [about the identity of the passenger in the car at the time of the story's publication]

is clearly irrelevant to the NYT's poor decision to publish the report at issue."   (Doc.

129, at 2).   According to the Board, Witz reached out to the University only four hours

before publishing the article, leaving the University with insufficient time to respond

due to the basketball team's contemporaneous participation in the NCAA basketball

tournament.   (*Id.*).

Of course, the assessment of relevancy depends upon the claims or defenses at

7

issue.   A claim for defamation contains the following elements:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."

*Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1202 (N.D. Ala. 2017) (quoting *Wal–Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 840 (Ala. 2003)).

Regarding the relevance assessment, the University focuses upon the first element – whether the requested deposition bears relevance to assessing liability for issuing an alleged false and defamatory statement in the contested article.   In that guise, the inquiry focuses upon whether NYT's reference to Spears reflected substantial falsity: there exists no "falsity so long as 'the substance, the gist, the sting,'" of the statement bears justification.   *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (citation omitted).   That is, substantial falsity assesses whether the "meaning conveyed by [a published] statement" bears falsity.   *Id.*   "The essence of that inquiry, however, remains the same whether the burden rests upon plaintiff or defendant."   *Id.*

As for this aspect of the inquiry at bar, the foregoing elucidation portrays Lyons's testimony may bear some probative value regarding the substantial falsity inquiry.   The University's actions vis-à-vis confirming information with Witz—and more particularly, Lyons's knowledge as to Spears's activities vis-à-vis the night in question—may shed

light on the "substance" or "gist" of the article's intimation Spears was complicit, or "involved," in the shooting.

More directly, however, and as NYT proposes in its Opposition, the testimony sought by NYT bears relevance as to another element of the defamation claim: the defendant's fault for publicizing the alleged defamatory statement must amount to at least negligence.   In pertinent part, the Alabama Supreme Court expounded upon this requirement:

> [D]efendants who made false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff. In determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account *the thoroughness of the check that a reasonable person would make before publishing the statement* . . . .

*Mead Corp. v. Hicks*, 448 So. 2d 308, 312 (Ala. 1984) (emphasis added).   *See also* 2 Ala. Pattern Jury Instr. Civ. 34.01 (4th ed. Feb. 2025) ("When deciding whether (name of defendant) was negligent, you may consider: 1. The thoroughness of the check that a reasonable person would have made before publishing the statement . . . .").

Though the law requires a reasonably thorough verification, assessing reasonableness "may vary with the circumstances."   RESTATEMENT (SECOND) OF TORTS § 580B CMT. H (1977).   Courts may consider such factors as the urgency of sharing the information with the public, the importance of the information to the public, and the extent of the damage to the plaintiff's reputation if the information

proves false. *Id.*; *see also Marous Bros. Const., LLC v. Alabama State Univ.*, No. 2:07-CV-384-ID, 2008 WL 5000150, at *8 (M.D. Ala. Nov. 24, 2008) (citing *Mead Corp.,* 448 So. at 312) ("In determining whether Berry acted negligently in publishing the allegedly defamatory communications to third parties, a court may take into account (a) the thoroughness of the check that a reasonable person would make before publishing the statement, (b) the nature of the interests that Berry was seeking to promote in publishing the statement, and (3) the extent of damage to which the statement exposed the plaintiff's reputation.").

Based upon the foregoing exposition of the fault element, the undersigned readily discerns the relevancy of Lyons's putative testimony. Deposing Lyons may shed light on whether NYT's ability to effect a reasonably thorough investigation, including verifying information accuracy, was affected by the University's response, i.e., what the University did and how it responded to NYT's inquiry. That is, control of information dissemination may influence assessment of a fact-checking endeavor's reasonable thoroughness. Even more specifically, if NYT's ability to obtain accurate information was affected by the University's efforts to manage public relations, fault for any alleged defamation may not be ascribable to NYT. *See* RESTATEMENT (SECOND) OF TORTS CMT. H § 580B (1977) ("The thoroughness of the check that a reasonable person would make before [publishing a] statement may vary with the play of [certain] factors. . . . One factor is the time element. Was the communication a

10

matter of topical news requiring prompt publication to be useful, or was it one in which time *and opportunity were freely available to investigate*?") (emphasis added).   *C.f.*, *Childers v. Rent-A-Ctr. E., Inc.*, 751 F. Supp. 3d 650, 663–64 (E.D. La. 2024) (regarding contention credit reporting agency was negligent in verifying disputed information in credit report, court acknowledged "a reasonable juror could . . . conclude that Plaintiff's failure to provide proof of identity hindered Experian's ability to conduct a reasonable investigation"); *Simmons v. TransUnion, LLC*, 712 F. Supp. 3d 629, 635 n.2 (D. Md. 2024) (noting "third-party legal or factual dispute . . . that might have hindered [credit union's] ability to investigate" may affect whether credit union "could have uncovered [an alleged credit report inaccuracy] with a reasonable investigation").

Hence, NYT possesses an interest in developing evidence as to the fault element, rendering Lyons's potential testimony relevant to issues in this case.   Jessica Paré, the University of Alabama Athletics Department's Deputy Director of Athletics over External Operations, testified in her deposition she did not know the identity of the passenger in Miller's vehicle before the article's publication. She acknowledged multiple occasions existed for Witz to directly ask the identity of the passenger, including at a press conference in Nashville, in a conversation with the basketball coach, via email, and during a press event in Birmingham, and she testified if the University had received any such inquiries, they would have attempted to answer them.   (Doc. 128-1 at 9-19, 21-23, 26).   But Cooper Lee later testified that Lyons worked very closely with the

basketball team, and Lee identified the presence of Lyons at a meeting of eight to ten University officials on either March 14 or March 15, 2023, in which an official instructed Lee to respond "no comment" to any press inquiries.   The meeting did not involve any other players or managers, and Lee understood everyone in the meeting comprehended his identity as the passenger in Miller's car at the time of the shooting.   (Doc. 128-2, at 9-13).

Moreover, Christian Spears, Kai's father, knew Lyons as a colleague for many years prior to the shooting, and he testified Lyons assured him in multiple conversations after the shooting that he would take care of Kai.   Christian Spears knew University officials instructed Kai to respond "no comment" to press inquiries about the shooting. (Doc. 128-3, at 7-11).

Thus, Lyons may have had more than merely administrative involvement in the meeting(s) held prior to the article's publication, and he may testify regarding any knowledge of Spears's involvement in the shooting, the identity of the passenger in Miller's vehicle prior to the article's publication, and the response to any inquiries posed by NTY about the incident.   That knowledge would inform whether the University could have accurately responded to any requests for information from NYT prior to the article's publication, a matter relevant to the thoroughness of NYT's check of the

12

accuracy of its information.[3]

## B. A Three-Hour Deposition Would Not Pose an Undue Burden

In addition to contesting the relevance of Lyons's testimony, the Board argues a deposition of Lyons would impose an undue burden. In particular, the Board contends NYT already obtained relevant information from Paré's deposition, and there exists no need to subject Lyons, a higher-ranking official with the University's Athletics Department, to the burden of appearing for a deposition.

The Board thus evokes the "Apex Doctrine," which restricts parties "from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Future Metals LLC v. Ruggiero*, No. 21-CIV-60114, 2021 WL 8363334, at *2-3 (S.D. Fla. Dec. 10, 2021) (citing *Brown v. Branch Banking and Trust Co.*, No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014)) (cleaned up); *see also Swann v. E. Alabama Health Care Auth.*, No. 3:24-CV-244-RAH-JTA, 2025 WL 1671382, at *2 n.1 (M.D. Ala. June 12, 2025) (citations omitted) ("Courts within the Eleventh Circuit have routinely applied the apex doctrine.").[4]  In

---

[3] Any impediments to the thoroughness of Witz's fact checking may also bear probative value as to the false light claim's element whether he "had knowledge of or acted in reckless disregard as to the [alleged] falsity of the publicized matter and the [alleged] false light in which [Spears] would be placed." *Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) (citation omitted).

[4] The court assumes Lyons's status as "effectively second in command within the Athletics Department with responsibilities that include overseeing broad institutional operations within the

order to justify deposing such an officer, a party "must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Future Metals*, 2021 WL 8363334, at *2 (cleaned up); *see also id.* at *3 (quoting *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542-BLOOM, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014)) ("'The party seeking to compel the deposition of a high-ranking executive has the burden of showing that the deposition is necessary.'").

In the present case, NYT has established Lyons possesses unique, non-repetitive, firsthand knowledge of facts at issue, and Paré's deposition did not provide NYT with all the information it needs.

The Board asserts that "[d]uring the conferences preceding the subpoenas at issue, the Board informed NYT that Lyons was not involved in any meetings with basketball players that Paré was not involved in and that he has no unique knowledge as to those meetings." (Doc. 112, at 7). However, NYT need not accept at face value the Board's statements about Lyons's involvement in, or knowledge about, player

---

department" (*See* Doc. 112, at 8) places him within the doctrine's reach, as NYT does not appear to contest that point. *See Penrod Bros., Inc. v. City of Miami Beach, Fla.*, No. 1:23-CV-23362, 2025 WL 786493, at *2 (S.D. Fla. Mar. 12, 2025) (applying the doctrine to a city manager when the plaintiff did not contest the position so warranted); *Goines v. Lee Mem'l Health Sys.*, No. 2:17-CV-656-FTM-29-CM, 2018 WL 3831169, at *4 (M.D. Fla. Aug. 13, 2018) (applying the doctrine to a hospital's Chief Legal Officer and General Counsel when the plaintiff did not contest the position so warranted).

meetings. *See Future Metals*, 2021 WL 8363334, at *3 ("Plaintiff is entitled to test O'Neal's representations rather than simply accept his assertion that he has nothing to add beyond Moore's testimony."); *Beeman v. Protective Life Corp.*, No. 2:17-CV-01234-JEO, 2020 WL 13656058, at *6 (N.D. Ala. May 28, 2020) ("[T]he court is not inclined to preclude or even delay a deposition just because a party makes a blanket, unsworn claim that the witness was not involved in events or lacks knowledge."). To the contrary, Lee testified Lyons attended a meeting in which Lee received instruction to provide no comment to press inquiries, indicating that even if Lyons did not attend meetings with *players* without Paré, he may have attended other meetings that Paré did not attend and at which officials discussed relevant topics. *See Beeman*, 2020 WL 13656058, at *4 (quoting Fed. R. Civ. P. 30, Practice Commentary) ("'If the executive was directly involved in the events in question, the deposition should be allowed.'").

Moreover, in her deposition Paré provided incomplete, equivocal answers to questions seeking knowledge of the timeframe University officials discerned Lee's identity as the passenger in the car. Paré testified she did not recall specifics of the conversation that occurred during the March 14/15 meeting. (Doc. 128-1, at 11). She knew Spears did not constitute the passenger, but only because someone whose identity she did not recall told her so at some unidentified point around the time frame of the shooting. (*Id.* at 12). When asked whether the University investigated the passenger's true identity when it knew Spears did not constitute the passenger, Paré responded,

"Again, I don't know how all of the specific – or conversations. I wasn't part of everything." (*Id.* at 13). When asked what the group who met on March 14/15 decided to do about ascertaining the passenger's identity, Paré responded, "I don't recall – again, we were not doing any sort of investigation. It was more . . . of talking to the group . . . ." (*Id.*). Due to Paré's equivocations and memory lapses, NYT may reasonably believe Lyons possesses more information than Paré about when and how the University ascertained the passenger's identity.

The Board asserts Lyons maintains a "tremendously busy schedule," particularly during the beginning of the fall semester. However, mere assertions of busyness do not warrant limiting discovery, which should maintain a broad scope. *See Future Metals*, 2021 WL 8363334, at *3 (citing *Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416-CRB-JSC, 2012 WL 3939320, at *1 (N.D. Cal. Aug. 24, 2012); *Luangisa v. Interface Operations*, No. 2:11-CV-00951-RCJ, 2011 WL 6029880, at *14 (D. Nev. Dec. 5, 2011); *Balfour Beatty Rail, Inc. v. Vaccarello*, No. 3:06-CV-551-J-20MCR, 2007 WL 842765, at *4 (M.D. Fla. Mar. 20, 2007)) ("A proposed deponent's status as a busy, high-ranking executive is not itself sufficient to justify a protective order.") (cleaned up); *Beeman*, 2020 WL 13656058, at *4 (quoting Fed. R. Civ. P. 30, Practice Commentary) (""The fact that the executive has a busy schedule with important obligations to attend to may be grounds for regulating the scheduling of the deposition, but it is not grounds for precluding it altogether.""); *Swann*, 2025 WL 1671382, at *1 (citing *Republic of Ecuador v. Hinchee*, 741

16

F.3d 1185, 1189 (11ᵗʰ Cir. 2013)) ("Generally, the Federal Rules of Civil Procedure 'strongly favor full discovery whenever possible.'").

Pursuant to the foregoing analysis, the court will not quash the subpoena for Lyons's deposition. However, the Board alternatively requests a protective order limiting the scope of the deposition. Federal Rule of Civil Procedure 26 permits the district court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).[5] The order may, among other possible measures, forbid the discovery, specify terms for the discovery, forbid inquiry into certain matters, or limit the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (B), (D). In issuing a protective order, the district court should "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11ᵗʰ Cir. 2001) (citing *Farnsworth v. Procter & Gamble, Co.,* 758 F.2d 1545, 1547 (11ᵗʰ Cir. 1985)); *see also id.* ("Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement.").

---

[5] Rule 26 requires the party seeking a protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). The Board satisfied that obligation by stating its attorneys engaged in "multiple meetings" with NYT's attorneys "to confer regarding the deposition in an attempt to resolve the matter without Court intervention." (Doc. 112 at 2).

NYT agrees to "limit the deposition of Mr. Lyons to no more than three hours to accommodate the scheduling of the deposition and alleviate any Board concerns about efficiency and undue burden."  (Doc. 128, at 3 n.1).  The undersigned does not countenance a limitation on the subject matter of the deposition because the foregoing time limitation should curtail the scope of the examination and promote efficiency.   In addition, given the pending summary judgment motions, it would be prudential to await scheduling the deposition until after the rulings on such motions.

## CONCLUSION AND ORDER

In accordance with the foregoing, the court **DENIES** the Board's motion to quash the subpoena for Shane Lyons's deposition, yet it **GRANTS** the Board's alternative request for a protective order limiting the duration of Lyons's deposition. The court **ORDERS** that the deposition shall not exceed three hours in length.

**DONE** and **ORDERED** this 7th day of October, 2025.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE