FILED

2026 May-28  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **KAI SPEARS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 7:23-cv-692-ACA** |
| | ] | |
| **THE NEW YORK TIMES** | ] | |
| **COMPANY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kai Spears was a walk-on basketball player for The University of Alabama men's basketball team and developed close friendships with other teammates, including Brandon Miller. In the early hours of the morning on January 15, 2023, Mr. Spears and Mr. Miller visited Moe's Original BBQ in Tuscaloosa, Alabama. Unbeknownst to Mr. Spears, another teammate—Darius Miles—asked Mr. Miller to bring Mr. Miles a gun that he had left in Mr. Miller's car. So Mr. Miller headed to Mr. Miles, and Mr. Spears started back to his dorm. A few minutes later, gunfire erupted on the Strip, and Michael Davis, Mr. Miles's childhood friend, shot and killed Jamea Harris using the gun that Mr. Miller had brought to Mr. Miles.

Two months later, Defendant The New York Times Company published an article written by Billy Witz, entitled "A Fourth Alabama Player Was at a Deadly Shooting, in a Car Hit by Bullets." The article stated that Mr. Spears was in the car

with Mr. Miller and at the scene at the time of the shooting. It added context that Mr. Miles had asked Mr. Miller to bring the weapon to the scene. The statements about Mr. Spears were false, and this lawsuit followed.

Mr. Spears asserts two claims under Alabama law—one for defamation ("Count One") and one for false light ("Count Two"). The Times moves for summary judgment on both counts. (Doc. 117; doc. 123). Mr. Spears moves for partial summary judgment on one of the Times's affirmative defenses. (Doc. 119; doc. 122). For the reasons below, the court **WILL DENY** both motions.

## I.    BACKGROUND

At the summary judgment stage, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").[1]

---

[1] Because the court resolves Mr. Spears's motion on a purely legal issue, only the Times's motion presents a factual issue. Accordingly, the court recites the facts in the light most favorable to Mr. Spears as the non-moving party.

In January 2023, Mr. Spears was a walk-on freshman on The University of Alabama's men's basketball team. (Doc. 118-1 at 12–13). He was close friends with other team members, including Jaden Bradley and Brandon Miller. (*Id.* at 12–14; doc. 118-7 at 9). He spent time with student-manager Cooper Lee and knew Darius Miles and Miles's friend, Michael Davis. (Doc. 118-1 at 14–16). Members of the basketball team would regularly visit bars and restaurants on "the Strip," including the bar Twelve25.[2] (*Id.* at 15–16; doc. 118-7 at 11).

On January 14, 2023, the basketball team defeated Louisiana State University. (Doc. 118-1 at 22; doc. 120-7 at 24). After the game, Mr. Spears went to Waffle House on the Strip to meet two visiting high school friends, Dylan Serafini and Esai Morse. (Doc. 118-1 at 20, 22; doc. 118-2 at 2 ¶¶ 5–6). After eating, the trio returned to Mr. Spears's dorm and then went to a friend's apartment. (Doc. 118-1 at 22; doc. 118-2 at 2 ¶¶ 7–8). Mr. Spears stayed at the apartment until a little after midnight, when he and Mr. Morse walked to the Strip. (Doc. 118-1 at 23–24, 27).

From around 12:30 a.m. until 1:40 a.m., Mr. Spears was with Mr. Miller. (*Id.* at 29, 40; doc. 118-4 at 45–46; doc. 118-16 at 22 ¶¶ 10, 13–14). After meeting Mr. Miller on the Strip, Mr. Spears rode with him to Moe's Original BBQ. (Doc. 118-1 at 29; doc. 118-2 at 2 ¶ 10). Unbeknownst to Mr. Spears, Mr. Miles had left

---

[2] The Strip is the section of University Boulevard between Wallace Wade Avenue and Reed Street.

his gun in the back seat of Mr. Miller's car. (Doc. 118-1 at 32; doc. 120-7 at 28). Mr. Spears rode in the front seat, and he neither saw Mr. Miles's gun nor knew it was there. (Doc. 118-1 at 32; doc. 118-13 at 16). Mr. Spears and Mr. Miller met Mr. Lee at Moe's. (Doc. 118-4 at 20). While Mr. Miller was at Moe's, Mr. Miles asked Mr. Miller to bring Mr. Miles the gun. (Doc. 120-7 at 41). Mr. Miles had been at Twelve25. (Doc. 118-7 at 14–16). Before Mr. Miles left, he took Mr. Spears's phone and spoke to Mr. Bradley, who had been at Twelve25 with Mr. Miles. (Doc. 118-2 at 2 ¶ 13; doc. 118-7 at 14–15).

Mr. Miller left Moe's at 1:40 a.m. (Doc. 118-2 at 3 ¶ 14). Mr. Spears did not know that Mr. Miles had asked Mr. Miller to bring Mr. Miles his gun or why Mr. Miller left Moe's. (Doc. 118-1 at 35, 37; doc. 120-1 at 35, 37). Although Mr. Spears originally planned to ride with Mr. Miller, he did not get in Mr. Miller's car. (Doc. 118-1 at 40–41; doc. 118-2 at 3 ¶ 14; doc. 118-4 at 47; doc. 120-7 at 41). Instead, Mr. Lee went with Mr. Miller. (Doc. 118-1 at 40; doc. 118-2 at 3 ¶ 14; doc. 118-4 at 47; doc. 120-7 at 41). As Mr. Miller sped off, Mr. Spears, Mr. Serafini, and Mr. Morse could not see where Mr. Miller went and decided to go back to Mr. Spears's dorm. (Doc. 118-1 at 40–41; doc. 118-2 at 3 ¶ 14). Although they did not know at the time, Mr. Miller had driven to Grace Street and Mr. Miles retrieved his gun. (Doc. 118-1 at 41; doc. 118-4 at 23–24, 67; doc. 120-7 at 43). The trio drove past Grace Street on their way back to Mr. Spears's dorm. (Doc. 118-1 at 41; *see also*

doc. 118-2 at 33). Gunfire erupted around 1:45 a.m., at which point the trio were two or three blocks away. (Doc. 118-1 at 41–42; doc. 120-1 at 42). It was later revealed that Mr. Davis used Mr. Miles's gun that Mr. Miller had brought to Mr. Miles. (Doc. 118-4 at 66–67).

Both Mr. Bradley and Mr. Lee called Mr. Spears to tell him about the shooting after it happened. (Doc. 118-1 at 46; doc. 118-2 at 3 ¶¶ 15, 17).  Mr. Lee went to Mr. Spears's dorm because he was "shaken up" and needed to talk to someone. (Doc. 118-1 at 47; doc. 118-2 at 3 ¶ 17; doc. 118-4 at 21). The next morning, Mr. Spears discovered that Ms. Harris had been killed. (Doc. 118-1 at 48; doc. 118-13 at 21).

Two months later, the Times published an article, titled "A Fourth Alabama Player Was at a Deadly Shooting, in a Car Hit by Bullets." (Doc. 118-1 at 82). The opening line said that the "fatal January shooting that involved players from the University of Alabama basketball team could have been even more deadly, as surveillance video showed that two players were in a car struck by bullets in the crossfire." (*Id.* at 83). It added that Mr. Spears was in the car with Mr. Miller at the time of the shooting and that Mr. Miles had asked Mr. Miller to bring Mr. Miles's gun to the scene. (*Id.* at 84). The story said that the University had tried to "distance itself from the shooting" and keep "quiet" other players' involvement. (*Id.*). The article then discussed widespread criticism that Mr. Miller and the University received when Mr. Miller continued to play after the shooting. (Doc. 118-2 at 84).

## II.    DISCUSSION

Both parties seek summary judgment. (Doc. 117; doc. 119). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, "[t]he nonmoving party must offer more than a mere scintilla of evidence for [his] position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on [his] behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024).

In its motion, the Times seeks summary judgment on Counts One and Two. (Doc. 117; doc. 123). With respect to Count One, the Times argues it is Mr. Spears's burden to prove that the Times's article was not substantially true, *i.e.*, the statements were "substantially false." (Doc. 123 at 27–31). And he has not produced sufficient evidence to allow a reasonable jury to conclude the statements in the Times's article were "substantially false." (*Id.* at 31–35). The Times also argues that Mr. Spears failed to produce any evidence that would allow a reasonable jury to conclude its statements about Mr. Spears would be "highly offensive" to a reasonable person because the statements are true and do not accuse him of committing a crime. (*Id.* at 35–37).

6

In his motion, Mr. Spears argues that the Times has the burden of proving the statements were substantially true because "substantial truth" is an affirmative defense under Alabama law. (Doc. 122 at 23–29). And according to Mr. Spears, when applying the correct standard, no reasonable jury could conclude that the Times's statements were substantially true. (*Id.* at 30–35).

The court considers each argument in turn.

1. Count One

Count One alleges that the Times defamed Mr. Spears by publishing the article with statements that Mr. Spears was in Mr. Miller's car and at the scene at the time of the shooting. (Doc. 28 ¶¶ 88–102). The parties' summary judgment briefs as to this legal issue echo one another. (*Compare* doc. 123 at 27–31; doc. 132 at 29–32, *with* doc. 122 at 23–29; doc. 134 at 24–27). Because both motions advance the same arguments, the court addresses the legal issue in a single analysis.

Under Alabama law, all plaintiffs—regardless of the type of defamation action—must prove that the alleged defamatory statements were false. *See Flickinger v. King*, 385 So. 3d 504, 512 (Ala. 2023). Although the parties agree that Mr. Spears bears the burden of proving the allegedly defamatory statements were false, they disagree on the scope of that burden. (*Compare* doc. 122 at 23–29, *with* doc. 134 at 24–27). In short, the parties dispute whether Mr. Spears must show whether the statements in the Times's article were false or materially false.

>    *a. Mr. Spears bears the burden of showing that the alleged defamatory statements were materially false.*

Defamation, especially in cases involving a matter of public concern, is a mixture of common law principles and constitutional restrictions. *See, e.g.*, *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986). At common law, the law presumed an allegedly defamatory statement was untrue, so the defendant had the burden of establishing—as an affirmative defense—that the relevant statements were true. *See id.* at 770; *Ripps v. Herrington*, 1 So. 2d 899, 902 (Ala. 1941) (noting that under Alabama law, a "defendant may allege the truth" as a "complete defense"). Alabama's truth defense allowed the defendant to avoid liability if the statement was "substantially true," meaning the statement was "true without qualification, in all respects material." *Ala. Ride Co. v. Vance*, 178 So. 438, 440 (Ala. 1938).

The parties use "material falsity," "substantial falsity," and "substantial truth" interchangeably. (*See, e.g.*, doc. 123 at 29 (referring to "substantial truth" and "substantial falsity"); doc. 132 at 31 (noting "material falsity" is a plaintiff's burden); doc. 134 at 27 (arguing Mr. Spears has the burden of proving "material, or substantial falsity")). And courts often use "material falsity" and "substantial truth" interchangeably. *See, e.g.*, *Bustos v. A & E Television Networks*, 646 F.3d 762, 767, 769 (10th Cir. 2011) (Gorsuch, J.) (concluding that a statement was not "materially false" because it was "substantially true"); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1107, 1110 (10th Cir. 2017) (defining both "material

falsity" and "substantial truth" as determining whether the "substance, the gist, the sting" is true); *Cheng v. Neumann*, 51 F.4th 438, 444 (1st Cir. 2022) (using "substantially true" to analyze whether statements' falsity was "material"). This is because "[t]he essence of that inquiry . . . remains the same whether the burden rests upon plaintiff or defendant." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

For the sake of clarity, unless referring to the parties' arguments, the court refers to "substantial truth" as a defendant's burden at common law. *See Ala. Ride Co.*, 178 So. at 440. And as outlined below, "materially false" refers to the plaintiff's post-*Hepps* burden under Alabama law when the case is against a media defendant and the speech is on an issue of public concern. Based on the court's review, no court consistently uses the term "substantially false," so the court does not use this term. With these distinctions in mind, the court turns to the merits of the parties' arguments.

In *Hepps*, the United States Supreme Court held that when a private plaintiff sues a media company for defamation and the speech at issue is a matter of public concern, "the common law's rule on falsity—that the defendant must bear the burden of proving truth—must . . . fall . . . to a constitutional requirement that the plaintiff

bear the burden of showing falsity."[3] 475 U.S. at 776. Accordingly, in a case where a private plaintiff sues a media defendant regarding speech on an issue of public concern, Alabama's common law burden—that the defendant show the statements were true in all material respects—shifts: the plaintiff must show that the allegedly defamatory statements were false in all material respects. *See id.* at 775–76; *Ala. Ride Co.*, 178 So. at 440; *see also Masson*, 501 U.S. at 516–17 (applying *Hepps*'s burden-shifting command to California's substantial truth defense); *Bustos*, 646 at 764 (Gorsuch, J.) (employing the same analysis under Colorado law). Thus, Mr. Spears must show that the allegedly defamatory statements were false in all material respects. *Ala. Ride Co.*, 178 So. at 440; *see Moore v. Lowe*, 591 F. Supp. 3d 1087, 1108 (N.D. Ala. 2022) (applying Alabama law and using the same falsity standard in a case involving a public figure).[4]

Mr. Spears argues that Alabama law requires all plaintiffs to prove falsity, complying with any constitutional restrictions and leaving substantial truth as an affirmative defense. (Doc. 122 at 24–25; doc. 132 at 31–32). Essentially, Mr. Spears argues that *Hepps* requires a plaintiff to prove only that the statements are literally

---

[3] The parties do not dispute that Mr. Spears is a private citizen and that the article was on a matter of public concern. (*See* doc. 122 at 24; doc. 123 at 29; doc. 132 at 30; doc. 134 at 24).

[4] Both parties argue that whether the statement is materially false depends on the "gist" or "sting" of the statements. This terminology is seemingly borrowed from *Masson* and cases applying Florida law, on which both parties heavily rely. (*See, e.g.*, doc. 122 at 23; doc. 123 at 29–30). Because Alabama law controls this action, the court uses the terminology adopted by the Alabama Supreme Court.

10

false, so *any* technically false statement would be actionable. (*See* doc. 122 at 24–25; doc. 132 at 31–32). But courts have rejected this rigid interpretation of defamation law. *See Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993) (finding no "false meaning" in articles that the trial court labeled "substantially correct"); *see also Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 n. 6 (D.C. Cir. 1984) (Scalia, J.) (noting that a statement that an individual had been "convicted of 35 burglaries, when the correct number is 34" is not actionable), *overruled on other grounds*, 477 U.S. 242 (1986).

Moreover, under Mr. Spears's argument, a media defendant in a case involving a matter of public concern would bear the same burden as before *Hepps*: it must show that the alleged defamatory statements were substantially true. *See Ala. Ride Co.*, 178 So. at 440. The United States Supreme Court rejected this approach in *Masson*. *See* 501 U.S. at 516–17.[5] In that case, a public-figure plaintiff alleged defamation under California law. *Id.* at 509–10. When considering the plaintiff's burden to prove falsity, the court noted that substantial truth was an affirmative defense under state law. *Id.* at 516–17. However, the court reasoned that *Hepps* shifted the burden to the public-figure plaintiff, so in California a plaintiff could not

---

[5] For its part, the Times's application of *Masson* also misses the mark. It argues that *Masson* announced a constitutional holding that the First Amendment requires a plaintiff to show the statements are materially false. (Doc. 123 at 28–39; doc. 134 at 26–27). Instead, as outlined above, *Masson* applied *Hepps* to California law. *See* 501 U.S. at 516–17.

show falsity based on "minor inaccuracies . . . so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Id.* at 517 (quoting *Heuer v. Kee*, 59 P.2d 1063, 1064 (Cal. Ct. App. 1936)). Thus, what was originally an affirmative defense became the plaintiff's burden.

Mr. Spears relies on *Brokers' Choice*, but it does not support his position. (Doc. 122 at 25–26; doc. 132 at 31). In that case, the Tenth Circuit recognized that substantial truth is ordinarily an affirmative defense. *Id.* at 1109–10. Yet "the First Amendment . . . requires the plaintiff to prove material falsity, which is now accordingly an essential element of a defamation claim." *Id.* at 1110; *see also id.* at 1106. And the Court analyzed each statement to determine whether it was materially false. *Id.* at 1111.

Mr. Spears also cites *Global Relief Foundation, Inc. v. New York Times Co.*, 390 F.3d 973 (7th Cir. 2004), but the court does not find it persuasive. There, the Seventh Circuit reconciled seemingly inconsistent Illinois case law, concluding that Illinois treated substantial truth as an affirmative defense. *Id.* at 982. The parties did not argue, and court did not analyze, whether that was the appropriate constitutional burden. *Id.*

Accordingly, applying Alabama law and the First Amendment's restrictions, Mr. Spears bears the burden of proving the relevant statements are materially false. *See Hepps*, 475 U.S. at 775–76; *Ala. Ride Co.*, 178 So. at 440. And because

Mr. Spears bears the burden, his motion for summary judgment—based solely on the view that the Times held the burden—necessarily fails. (*See* doc. 122 at 23–29). The court therefore **DENIES** Mr. Spears's motion. (Doc. 119).

> b. *There is a genuine issue of fact as to whether the Times's statements were materially false.*

Because Mr. Spears must show that the Times's statements were materially false, the Times argues he cannot satisfy that burden. (Doc. 123 at 31–35). According to the Times, the article was "substantially true" as a matter of law because no reasonable jury could conclude that Mr. Spears was not "involved" in the shooting. (*Id.*). The court disagrees.

Before considering the merits of the Times's motion, the court addresses the Times's position that the only relevant inquiry is whether the article's first sentence—that "members" of the Alabama basketball team were "involved" in the shooting—was "substantially true." (Doc. 123 at 28). In doing so, the Times states that "[t]he Court has already held that it was not defamatory merely to describe Spears as being in the car or at the scene when someone else committed a crime." (*Id.*). The Times mischaracterizes the court's previous holding and its scope.

At the motion to dismiss stage, the Times argued the article's statements were not defamatory because the article portrayed Mr. Spears as a potential victim. (Doc. 12 at 23–28). In addressing the Times's argument about the statements that Mr. Spears was "in a car struck by bullets" and that the shooting "could have been

even more deadly," Judge Coogler noted that "[r]ead alone, these statements do not appear reasonably capable of conveying a defamatory meaning." (Doc. 22 at 10).

But Judge Coogler added that—when considering whether a news article had a defamatory meaning—Alabama law requires the article to be read as a whole. (*Id.*). Judge Coogler explained that the entire article could allow an ordinary reader to conclude "[Mr.] Spears was somehow complicit in the shooting." (*Id.* at 11). Judge Coogler did not hold that the only relevant or potentially false and defamatory statement was whether Mr. Spears was "involved" in the shooting. Instead, he viewed the entire context of the article and concluded the article was "reasonably capable of a defamatory meaning." (*Id.* at 12). So Judge Coogler never held that the scope of whether the article contains "false" statements is limited to whether Mr. Spears was "involved" in the shooting.

Indeed, whether the statements about Mr. Spears were false and whether the false statements have a defamatory meaning are two different inquiries. *See Flickinger*, 385 So. 3d at 512–13 (concluding a social media post was false and then analyzing whether the false statements had a defamatory meaning). Nevertheless, Mr. Spears does not contest the Times's framing. (*See generally* doc. 132). And the court will not undertake an analysis Mr. Spears declined to do. So, for the purposes of the Times's motion for summary judgment, the court will limit its analysis to the issues the parties have raised: whether Mr. Spears met his burden at summary

judgment to produce evidence that establishes the Times's statement that he was "involved" in the shooting is materially false (*i.e.*, not "substantially true"). *See Clark v. Sweeney*, 607 U.S. 7, 10 (2025) (explaining that the parties must "frame the issues for decision" and the court does not "get a turn at bat").

As explained above, Mr. Spears must produce evidence that establishes the statement is false in all material respects. *See Ala. Ride Co.*, 178 So. at 440. A statement is not false "unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *See Masson*, 501 U.S. at 517 (quotation marks omitted); Ala. Pattern Jury Instruction 34.07 (3d ed. 2019) (citing *Masson*, 501 U.S. at 517); *see also Moore*, 591 F. Supp. 3d at 1108 (applying *Masson* under Alabama law to determine falsity).

Mr. Spears has produced sufficient evidence to meet his burden because a reasonable jury could conclude that Mr. Spears was not "involved" in the shooting. Although Mr. Spears was with Mr. Miller for the hours leading up to the shooting, Mr. Spears had no knowledge that Mr. Miller was communicating with Mr. Miles or that Mr. Miles had asked Mr. Miller to bring him his gun. (Doc. 118-1 at 32, 35, 37; doc. 120-1 at 35, 37). On top of this, Mr. Spears did not know where Mr. Miller planned to go or what he planned to do when he left Moe's. (Doc. 118-1 at 40–41; *see* doc. 118-2 at 3 ¶ 14). Nor did he know that Mr. Miles's gun was in Mr. Miller's car. (Doc. 118-1 at 32; doc. 118-13 at 16). And of course, Mr. Spears did not get in

15

Mr. Miller's car and was not at the scene of the shooting when it occurred. (Doc. 118-1 at 40–41; doc. 118-2 at 3 ¶ 14; doc. 118-4 at 47; doc. 120-7 at 41). At the time of the shooting, Mr. Spears and his friends were on their way back to his dorm. (Doc. 118-1 at 40–41; doc. 118-2 at 3 ¶ 14). Mr. Spears knew about the shooting only after it happened. (Doc. 118-1 at 46; doc. 118-2 at 3 ¶¶ 15, 17).

Accordingly, a reasonable jury could conclude that Mr. Spears was not "involved" in the shooting. *See McCraig*, 544 So. 2d at 878 ("With respect to the element of falsity . . . the issue is a factual one for the jury's determination"); *Washington*, 25 F.4th at 895 (explaining the court must draw "all reasonable inferences in favor of the non-moving party"). And because a reasonable jury could conclude that Mr. Spears was not "involved," the court **DENIES** the Times's motion with respect to Count One.[6] (Doc. 117).

### 2. Count Two

The Times also seeks summary judgment on Count Two. (Doc. 123 at 35–37). Count Two alleges that the Times's article publicly placed him in a false light. (Doc. 28 ¶¶ 103–116). Under Alabama law, the Times may be liable for publishing information that places Mr. Spears in a false light if (1) the false light would be "highly offensive" to a reasonable person, and (2) the Times had "knowledge of or

---

[6] Because the court does not rely on the evidence that Ms. Spears moves to strike from the Times' motion for summary judgment, the court **FINDS AS MOOT** Mr. Spears's motion. (Doc. 137).

acted in reckless disregard" as to the falsity of the publicized matter. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quotation marks omitted). The Times argues only that no reasonable jury could conclude that the article portrayed Mr. Spears in a way that would be "highly offensive to a reasonable person." (Doc. 123 at 35–37). A statement is highly offensive "when there is such a major misrepresentation of [one's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Restatement (Second) of Torts § 652E cmt. c.; *see Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993) (adopting the Second Restatement with respect to false light). The Times's argument fails.

First, the Times conflates the standards for defamation and false light. (*See* doc. 123 at 37 ("[F]or the same reason that it is not defamatory as a matter of law to report, . . . it is not highly offensive to a reasonable person to support a claim for false light.")). But a plaintiff may bring a false light claim even if the false statement is "not necessarily defamatory." *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (quotation marks omitted); *see also Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003).

The Times also repeats its argument that it is true that Mr. Spears was "involved" in the shooting. (Doc. 123 at 37). This argument fails for the same reasons listed in Section II.1.b because reasonable jurors could conclude that Mr. Spears—who was not in the car that brought the gun to the scene, did not follow

17

Mr. Miller to the scene, did not know about the shooting until after it happened, and did not know that Mr. Miller had communicated with Mr. Miles—was not "involved" in the shooting. *See Washington*, 25 F.4th at 895. So genuine issues of fact remain.

Second, the Times's argument that the statements do not cast Mr. Spears in a false light ignores the article's context. (*See* doc. 123 at 35–37). The article stated that Mr. Spears was in the car with Mr. Miller and "at the scene" at the time of the shooting that killed Ms. Harris and led to two bullets striking Mr. Miller's car. (Doc. 118-2 at 83). The article explained that a police detective testified that Mr. Miles's gun had been in Mr. Miller's car and connected the testimony to Mr. Spears, identifying him as the "unidentified passenger." (*Id.* at 84). The article added that Mr. Spears was in front of the "Jeep with [Ms.] Harris in the front passenger seat." (*Id.* at 83). The article said that the University had sought to "distance itself from the shooting" and kept players' "involvement" quiet. (*Id.* at 84). The article then discussed widespread criticism that Mr. Miller and the University received when Mr. Miller continued to play after the shooting. (*Id.*).

A reasonable jury could conclude that the Times's statements—placing Mr. Spears in a vehicle with Mr. Miller who transported to the scene the weapon used in the shooting—was "highly offensive" to a reasonable person. *See*

18

*Washington*, 25 F.4th at 895. Accordingly, the court **DENIES** the Times's motion with respect to Count Two.

## III.    CONCLUSION

For the reasons above, the court **DENIES** the Times's and Mr. Spears's motions for summary judgment. (Doc. 117; doc. 119). The court **FINDS AS MOOT** Mr. Spears's motion to strike. (Doc. 137).

**DONE** and **ORDERED** this May 28, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE