FILED
2026 Jul-27 PM 05:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION**

| | | |
|---|---|---|
| KAI SPEARS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | 7:23-CV-00692-ACA |
| THE NEW YORK TIMES COMPANY | ) | |
| | ) | **JOINT FILING** |
| Defendant. | ) | |

**JOINT PROPOSED CHARGES TO THE JURY**

Plaintiff Kai Spears and Defendant The New York Times Company ("The Times") submit these proposed jury charges for the Court's consideration. The Parties only join in the submission of the proposed jury charges that are denoted as "AGREED." Additionally, the Parties are submitting competing proposed verdict forms, as no agreement could be reached with respect to the verdict forms. Plaintiff's proposed verdict form is attached as Exhibit A, and The Times's proposed verdict form is attached as Exhibit B. The Parties reserve the right to amend, supplement, or withdraw these proposed charges and proposed verdict forms before or during trial, depending on the evidence admitted, the Court's rulings, and the claims (if any) that are ultimately submitted to the jury.

By joining in the submission of these proposed charges and verdict form, The Times does not concede that Plaintiff Kai Spears ("Mr. Spears") can satisfy his burden of proof sufficient to submit his claims to the jury under any theory.

| No. | Topic | Authority | Given | Refused |
|---|---|---|---|---|
| P-1 | General Preliminary Instruction | 1.1 General Preliminary Instruction, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 (modified) | | |
| D-1 | General Preliminary Instruction | 1.1 General Preliminary Instruction, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 (modified) | | |
| P-2 | Burden of Proof – Clear and Convincing Evidence | 1.2 Burden of Proof – Clear and Convincing Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025. | | |
| D-2 | Jury Questions | 1.4 Jury Questions, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| D-3 | Interim Statements—Preview | 1.5 Interim Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-1 | Stipulations | 2.1 Stipulations, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-2 | Introduction—Use of Depositions | 2.2 Use of Depositions, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |

| | | | | |
|---|---|---|---|---|
| A-3 | Introduction—Use of Recorded Conversations and Transcripts | 2.3 Use of Recorded Conversations and Transcripts, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| D-4 | Interim Statements—Prior to Interim Statements | 2.4 Interim Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-4 | Judicial Notice | 2.5 Judicial Notice, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-5 | Use of Interrogatories | 2.6 Use of Interrogatories, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-6 | In-Trial Instructions on News Coverage | 2.7 In-Trial Instructions on News Coverage, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-7 | Duty to Follow Instructions—Corporate Party Involved | 3.2.2 The Duty to Follow Instructions—Corporate Party Involved, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-8 | Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court | 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |

| | | | | |
|---|---|---|---|---|
| A-9 | Credibility of Witnesses | 3.4 Credibility of Witnesses, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| A-10 | Impeachment of Witnesses Because of Inconsistent Statements | 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| D-5 | Expert Witness | 3.6.1 Expert Witness; 3.6.2 When Expert Fees Represent a Significant Portion of the Witness's Income, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| P-3 | Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence | 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025. | | |
| P-4 | Responsibility for Proof – Affirmative Defense Preponderance of the Evidence | 3.7.2 Responsibility for Proof – Affirmative Defense Preponderance of the Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025. | | |
| D-6 | Introduction—Balancing of Values | Modern Federal Jury Instructions, Instruction 91-1; *Rosenbloom v. Metromedia*, 403 U.S. 29 (1971); *Horsley v. Rivera,* 292 F.3d 695, 701 (11th Cir. 2002) | | |
| D-7 | Introduction—Publication to be Read as a Whole | APJI 34.01 (modified); *Spears v. The New York Times Co.,* No. 7:23-cv-692-ACA, Summary Judgment Order (N.D. Ala. May 28, 2026); *Drill Parts & Service* | | |

| | | | | |
|---|---|---|---|---|
| | | *Co. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1289 (Ala. 1993) | | |
| D-8 | Defamation by Implication—Nature of Claim | Plaintiff's Amended Complaint (Doc. 28); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *31 (11th Cir. Apr. 24, 2026); *Finebaum v. Coulter,* 854 So. 2d 1120, 1124-25 (Ala. 2003); *Spears v. The New York Times Co.,* No. 7:23-cv-692-ACA (N.D. Ala. Dec. 6, 2023); 50 Am. Jur. 2d Libel and Slander § 161 (defining defamation by implication) | | |
| A-11 | Distinction Between Claims | *Butler v. Town of Argo,* 871 So. 2d 1, 12 (Ala. 2003); *Gary v. Crouch,* 867 So. 2d 310, 318 (Ala. 2003); *Regions Bank v. Plott,* 897 So. 2d 239, 244 (Ala. 2004); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *31 (11th Cir. Apr. 24, 2026); *Finebaum v. Coulter,* 854 So. 2d 1120, 1124-25 (Ala. 2003). | | |
| P-5 | Defamation—Pretrial Introduction | APJI 34.00. | | |
| D-9 | Defamation—Overview | APJI 34.00; APJI 34.01; Drill Parts & Service Co. v. Joy Mfg. Co., 619 So.2d 1280, 1289 (Ala. 1993). | | |
| P-6 | Defamation—Elements | APJI 34.01. Plaintiff Spears refers the Court to *Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir. 1987) in support of using this jury instruction. Specifically, we direct the court to footnote 4. | | |

| | | | | |
|---|---|---|---|---|
| D-10 | Defamation—Elements | APJI 34.01 (modified); *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (May 28, 2026 Order), p. 7 ("Under Alabama law, all plaintiffs—regardless of the type of defamation action—must prove that the alleged defamatory statements were false.") (citing *Flickinger v. King,* 385 So. 3d 504, 512 (Ala. 2023); *id.,* pp. 9-10 ("Thus, Mr. Spears must prove that the allegedly defamatory statements were false in all material respects."); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347-50 (1974) ("We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual…[Private-figure plaintiffs] may recover…actual compensatory damages upon a shorting of fault" but "may not recover…presumed or punitive damages" absent "actual malice."); *Harris v. School annual Publ'g Co.,* 466 So. 2d 963, 964 (Ala. 1985) ("Whether a statement is reasonably capable of a defamatory meaning is a question of law for the court to decide in the first instance; if the court concludes the statement is reasonably capable of a defamatory meaning, the jury | | |

| | | | | |
|---|---|---|---|---|
| | | determines whether the statement was in fact understood as defamatory by its audience.”); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *31 (11th Cir. Apr. 24, 2026) (holding that in defamation-by-implication cases, “the challenged statement could have multiple meanings—some defamatory and some not”; *Finebaum v. Coulter,* 854 So. 2d 1120 (Ala. 2003) (recognizing defamation may be proved through “defamatory implication”). | | |
| D-11 | Defamation—Defamatory Statement | *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (Dec 6, 20023 Order), p. 7 (“libel is actionable per se ‘if the language used exposes the plaintiff to public ridicule or contempt’”) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003)); *Hearn v. U.S. Bank, N.A.*, 2017 U.S. Dist. LEXIS 224778, *9-10 (N.D. Ala. July 12, 2017) (“Conduct is actionable per se when it exposes the plaintiff to public ridicule or contempt. Further, if the words employed in the allegedly libelous publication impute dishonesty or corruption to an individual...or directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood, they are libel per se.")(citations omitted); *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978) | | |

| | | | | |
|---|---|---|---|---|
| | | ("The foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published and concerning the other, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod."); *Harris v. School Annual Pub. Co.,* 466 So. 2d 963, 964 (Ala. 1985) (holding that whether a statement is "reasonably capable of a defamatory meaning is a question of law for the court" and if so "the jury determines whether the statement was in fact understood as defamatory by its audience"); *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975) (establishing the "ordinary reader" test for defamatory meaning); *Finebaum v. Coulter*, 854 So. 2d 1120, 1128 (Ala. 2003) (holding that "whether a statement is reasonable capable of a defamatory meaning" is a threshold legal question, but "the jury must decide whether it is defamatory"); *Drill Parts & Service Co. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1289 (Ala. 1993) ("The test for determining whether an article is defamatory is 'whether an ordinary reader or a | | |

| | | | | |
|---|---|---|---|---|
| | | reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language.'") | | |
| P-7 | Truth—Affirmative Defense | APJI 34.07; Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991). | | |
| D-12 | Defamation—A Statement that Is False in All Material Respects | *Merriam-Webster.com Dictionary,* Merriam-Webster, https://www.merriam-webster.com/dictionary/material; *Air Wis. Airlines Corp. v. Hoeper,* 571 U.S. 237, 239 (2014); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 517 (1991); *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775-76 (1986); *Harris v. School Annual Pub. Co.,* 466 So. 2d 963, 965 (Ala. 1985); *Mooneyham v. State Bd. of Chiropractic Exam'rs,* 802 So. 2d 200, 203 (Ala. 2001); *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (May 28, 2026 Order), p. 7 (citing *Flickinger v. King,* 385 So. 3d 504, 512 (Ala. 2023); *id.,* pp. 9-10 (citing *Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1290 (Ala. 1993) and *Liberty Lobby, Inc. v. Anderson,* 746 F.2d 1563, 1568 n. 6 (D.C. Cir. 1984) (Scalia, J.), *overruled on other grounds,* 477 U.S. 242 (1986)). | | |
| D-13 | Defamation—Distinction of Elements | *Bell v. Smith,* 281 So. 3d 1247, 1254 (Ala. 2019) ("To be actionable, a statement must be both false *and* defamatory.") | | |

| | | | | |
|---|---|---|---|---|
| | | (emphasis added); *Jones v. Buzzfeed, Inc.*, 591 F.Supp. 3d 1127 (N.D. Ala. 2022) ("Put differently, for a claim to be actionable, a contested statement must be false and defamatory, and these requirements are separate sub-elements. A plaintiff must prove both."); *Johnson v. Phillips,* 526 S.W.3d 529, 535 (Tex. App. 1st Cir. 2017) ("A statement may be false, abusive, unpleasant, or objectionable without injuring a person's reputation such that it is defamatory."); *Wainman v. Bowler,* 576 P.2d 268, 271 (Mont. 1978) ("It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banters, so as to affect his feelings."); *Dudley v. Bass Anglers Sportsman Soc'y,* 777 So. 2d 135 (Ala. 2000) ("the foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod); *Finebaum v. Coulter,* 854 So. 2d 1120, 1129 (Ala. 2003) (radio sportscaster's | | |

| | | | | |
|---|---|---|---|---|
| | | statement that plaintiff and another individual "really slobbered all over each other" and that he believed "they were going to start performing oral sex on one another," not actionable as defamatory); *Harris v. School Annual Pub. Co.*, 466 So. 2d 963 (Ala. 1985) (where used as a substitution for African-American plaintiff's photograph in a school yearbook, image of monkey with the words "out munching" was not defamatory; defamatory comment is on that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"); *McCafferty v. Newsweek Media Grp., Ltd.*, 2019 U.S. Dist. LEXIS 36543, *6 (E.D. Pa. Mar. 7, 2019) ("To qualify as defamatory, the statement must do more than embarrass or annoy the plaintiff; rather, it must 'grievously fracture[] his standing in the community of respectable society.'"); *Drill Parts and Service, Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993) (test for determining whether an article is defamatory is "whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language"). | | |
| D-14 | Defamation—Fault | APJI 34.01; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) | | |

| | | | | |
|---|---|---|---|---|
| | | (holding that states "may define for themselves the appropriate standard of liability" for private-figure defamation claims, so long as they "do not impose liability without fault"); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832 (11th Cir. Apr. 24, 2026) (distinguishing a "negligent error" from a finding of actual malice and holding that "the publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth is…given assurance that those errors that nonetheless occur will not lay him open to an indeterminable financial liability") (quoting *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971); *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (actual malice measured "at the time of the publication"); Restatement (Second) of Torts § 580B (a private-figure plaintiff suing a publisher on a matter of public concern must prove fault; defining the negligence standard applicable to such claims). | | |
| P-8 | Compensatory Damages—Actual Harm (Libel/Slander Per Se) | PJI 34.10. | | |
| P-9 | Compensatory Damages | APJI 4.01. | | |
| P-10 | Personal Injury—Physical Pain and Mental Anguish | APJI 4.10. | | |

| | | | | |
|---|---|---|---|---|
| P-11 | Aggravation of Pre-Existing Condition | APJI 4.13. | | |
| P-12 | Presumed Compensatory Damages—Libel Per Se or Slander Per Se | APJI 34.11. | | |
| D-15 | Defamation—Compensatory damages | APJI 34.10; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) ("[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher…[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."); *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971) ("[T]he publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth…is given assurance that those errors that nonetheless occur will not lay him open to an indeterminable financial liability."); Restatement (Second) of Torts § 580B (a private-figure plaintiff may recover "proved, actual harm" upon showing fault); APJI 34.11 (modified). | | |
| D-16 | Actual Malice | APJI 34.03 (modified); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, (11th Cir. Apr. 24, 2026); *NYP* | | |

| | | | | |
|---|---|---|---|---|
| | | *Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,* 6 F.4th 1247, 1252 (11th Cir. 2021) *Fults v. GDCP Warden,* 764 F.3d 1311, 1314 (11th Cir. 2014); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 510 (1991); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1198 n. 17 (11th Cir. 1999) | | |
| D-17 | Actual Malice Distinguished from Ill Will | Modern Federal Jury Instructions, Instruction 91-4. | | |
| D-18 | Reckless Disregard | Modern Federal Jury Instructions, Instruction 91-5. | | |
| D-19 | State of Mind at Time of Publication | Modern Federal Jury Instructions, Instruction 91-7 | | |
| D-20 | Denial Limiting Instruction | *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (Dec 6, 20023 Order), p. 17 ("libel is actionable per se "if the language used exposes the plaintiff to public ridicule or contempt") (citing *Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989)); *id.* at 17-18 (quoting *Michel v. NYP Holdings Inc*., 816 F.3d 686, 703 (11th Cir. 2016). | | |
| D-21 | Defamation—Mitigation by Retraction | APJI 34.13 (modified); Ala. Code § 6-5-184 | | |
| P-13 | Punitive Damages—Libel—Private Person/ Public Concern or Public Figure, Etc. | APJI 34.18; *Herbert v. Lando*, 441 U.S. 153 (1979); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983)(quoting *Vandenburg v. Newsweek, Inc.*, | | |

| | | | | |
|---|---|---|---|---|
| | | 441 F.2d 378, 380 (5th Cir. 1971)). | | |
| D-22 | Defamation—Punitive damages | APJI 34.18 (modified); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832 (11th Cir. Apr. 24, 2026); *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,* 6 F.4th 1247, 1252 (11th Cir. 2021); *Fults v. GDCP Warden,* 764 F.3d 1311, 1314 (11th Cir. 2014); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 510 (1991); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1198 n. 17 (11th Cir. 1999) | | |
| D-23 | Punitive Damages—Damages Limited to Defendant's Conduct Warranting Punitive Damages | Ala. Code § 6-11-21(e). | | |
| D-24 | Punitive Damages—Damages Not to be Based on Out-of-State Conduct | *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 585 (1996); *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914); *White v. Ford Motor Co.*, 312 F.3d 998, 1020 (9th Cir. 2002). | | |
| D-25 | Punitive Damages—Not to Be Based on Wealth, Profits, or Revenues | *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Cooper Industries v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 442 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–85 (1996); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994); *TXO* | | |

| | | | | |
|---|---|---|---|---|
| | | *Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 464 (1993); *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991). | | |
| P-14 | False Light Invasion of Privacy | APJI 49.03. | | |
| D-26 | False Light Invasion of Privacy—Elements | APJI 49.03 (modified); *Regions Bank v. Plott,* 897 So. 2d 239, 244 (Ala. 2004); *Flickinger v. King,* 385 So. 3d 504, 517 (Ala. 2023); *Schifano v. Greene County Greyhound Park, Inc*., 624 So. 2d 178, 180 (Ala. 1993); *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003); *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832 (11th Cir. Apr. 24, 2026) | | |
| D-27 | False Light Invasion of Privacy—Nominal damages | APJI 49.04. | | |
| P-15 | Compensatory Damages—Invasion of Privacy | APJI 49.05. | | |
| D-28 | False Light Invasion of Privacy—Compensatory Damages | APJI 49.05; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349-50 (1974) | | |
| D-29 | No double recovery | *Ex parte Goldsen,* 783 So. 2d 53 (Ala. 2000); *Shepherd v. Maritime Overseas Corp.,* 614 So. 2d 1048, 1051 (Ala. 1993) | | |

| | | | | |
|---|---|---|---|---|
| A-12 | Duty to Deliberate | 3.8.1 Duty to Deliberate, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |
| D-30 | Quotient Verdict | APJI 24.01; *United States v. 4925 Acres of Land,* 143 F.2d 127, 128 (5th Cir. 1944); *Bonner v. City of Prichard,* 661 F.2d 1206 (5th Cir. 1981) | | |
| A-13 | Election of Foreperson; Explanation of Verdict Form | 3.9 Election of Foreperson; Explanation of Verdict Form, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 | | |

**Plaintiff's Proposed Charge No. 1 – *DISPUTED PORTION IN BOLD***
General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer

the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Description of the case:**

**This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Kai Spears, claims the Defendant, The New York Times, published articles about Kai Spears that defamed him and placed him in a false light. Defendant, The New York Times, denies those claims and contends that [describe counterclaims or affirmative defenses].**

**Burden of proof:**

**Plaintiff Kai Spears has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Plaintiff Kai Spears must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Plaintiff Kai Spears_and the evidence favoring Defendant New York Times on opposite sides of balancing scales, Plaintiff Kai Spears needs to make the scales tip to his side. If Plaintiff Kai Spears fails to meet this burden, you must find in favor of Defendant New York Times.**

**To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence,**

**if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.**

**[Optional: On certain issues, called "affirmative defenses," [name of defendant] has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts [name of defendant] must prove for any affirmative defense. After considering all the evidence, if you decide that [name of defendant] has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.]**

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, encrypted-communication applications, the Internet — including social-networking websites and apps, or any other similar technology, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me

and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiff Kai Spears will present his witnesses and ask them questions. After Plaintiff Kai Spears questions the witness, Defendant The New York Times may ask the witness questions – this is called "cross-examining" the witness. Then Defendant The New York Times will present its witnesses, and Plaintiff Kai Spears

may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

Source: 1.1 General Preliminary Instruction, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025.

**The Times's Proposed Charge No. 1 – *DISPUTED PORTION IN BOLD***
General Preliminary Instruction

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It is your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply—and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence"—simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did—unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence—this is also called "striking" evidence—and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Description of the case:**

**Mr. Spears brings two claims against The Times. Count One is for defamation. Count Two is for false light invasion of privacy. I will explain each claim in more detail in a moment, but each of these claims is based on the publication of The Times's article that has been presented to you as evidence. The Times denies both of Mr. Spears's claims.**

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything—all the evidence, the lawyers' closing arguments, and my instructions on the law—before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone

about the case by any other means. This includes e-mails, text messages, phone calls, encrypted-communication applications, the Internet—including social-networking websites and apps, or any other similar technology, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair—no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witness. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Kai Spears will present his witnesses and ask them questions. After Mr. Spears questions the witness, The Times may ask the witness questions—this is called "cross-examining" the witness. Then The Times will present its witnesses and Mr. Spears may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

Source: 1.1 General Preliminary Instruction, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025 (modified, burden of proof section omitted)

GIVEN ______________ REFUSED _______________

**<u>Plaintiff's Proposed Charge No. 2 – *DISPUTED*</u>**
<u>Burden of Proof – Clear and Convincing Evidence</u>

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

Source: 1.2 Burden of Proof – Clear and Convincing Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025.

**The Times's Proposed Charge No. 2 – *DISPUTED***
Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

• First, you must submit all questions in writing. Please don't ask any questions aloud.

• Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

• Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

Source: 1.4 Jury Questions, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 3 – *DISPUTED***
Interim Statements—Preview

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

Source: 1.5 Interim Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 1**
Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case: [INSERT THE PARTIES' STIPULATED FACTS FROM PRETRIAL ORDER].

Source: 2.1 Stipulations, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 2**
Introduction—Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of ________, taken on ______, [is about to be/has been] presented to you by a video. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Source: 2.2 Use of Depositions, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**AGREED Proposed Charge No. 3**

Introduction—Use of Recorded Conversations and Transcripts

Now you're going to hear [a] recorded conversation[s]. This is proper evidence for you to consider. Please listen to it very carefully. I'm going to allow you to have a transcript of the recording [prepared by name of preparer] to help you identify speakers and guide you through the recording. But remember that it is the recording that is evidence – not the transcript. If you believe at any point that the transcript says something different from what you hear on the recording, disregard that portion of the transcript and rely instead on what you hear.

[In this case, there are two transcripts because there is a difference of opinion about what is said on the recording. You may disregard any portion of one or both transcripts if you believe they reflect something different from what you hear on the recording. It's what you hear on the recording that is evidence – not the transcripts.]

Source: 2.3 Use of Recorded Conversations and Transcripts, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 4 – *DISPUTED***
Interim Statements—Prior to Interim Statements

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [X] is going to make a short statement. Please remember that the statement you are about to hear—like all statements by the lawyers—is [X's] view of the evidence or of what [he/she] anticipates the evidence will be, but isn't itself evidence.

Source: 2.4 Interim Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**AGREED Proposed Charge No. 4**
Judicial Notice

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [facts the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

Source: 2.5 Judicial Notice, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 5**

Use of Interrogatories

You'll now hear answers that ___ gave in response to written questions the other side submitted. The questions are called "interrogatories." Before trial, ___ gave the answers in writing while under oath.

You must consider ______'s answers to these questions as though _____ gave the answers on the witness stand.

Source: 2.6 Use of Interrogatories, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**AGREED Proposed Charge No. 6**
In-Trial Instructions on News Coverage

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

Source: 2.7 In-Trial Instructions on News Coverage, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 7**

Duty to Follow Instructions—Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Source: 3.2.2 The Duty to Follow Instructions—Corporate Party Involved, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 8**

Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have an opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

Source: 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

## **AGREED Proposed Charge No. 9**
Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?
2. Did the witness have any particular reason not to tell the truth?
3. Did the witness have a personal interest in the outcome of the case?
4. Did the witness seem to have a good memory?
5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
6. Did the witness appear to understand the questions clearly and answer them directly?
7. Did the witness's testimony differ from other testimony or other evidence?

Source: 3.4 Credibility of Witnesses, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**AGREED Proposed Charge No. 10**

Impeachment of Witnesses Because of Inconsistent Statements

You should ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Source: 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**The Times's Proposed Charge No. 5 – *DISPUTED PORTION IN BOLD***
Expert Witness

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion. **When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.**

Source: 3.6.1 Expert Witness; **3.6.2 When Expert Fees Represent a Significant Portion of the Witness's Income**, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN ______________ REFUSED _______________

**Plaintiff's Proposed Charge No. 3 – *DISPUTED***
Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the Plaintiff Kai Spears to prove every essential part of his claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff Kai Spears' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Plaintiff Kai Spears.

[When more than one claim is involved, you should consider each claim separately.]

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Plaintiff Kai Spears' claim[s] by a preponderance of the evidence, you should find for Defendant The New York Times as to that claim.

Source: 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims,

Counterclaims – Preponderance of the Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025.

**Plaintiff's Proposed Charge No. 4 – *DISPUTED***

Responsibility for Proof – Affirmative Defense Preponderance of the Evidence

In this case, the Defendant The New York Times asserts the affirmative defense[s] of __________. Even if the Plaintiff Kai Spears proves his claim[s] by a preponderance of the evidence, the Defendant The New York Times can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

[When more than one affirmative defense is involved, you should consider each one separately.]

I caution you that the Defendant The New York Times does not have to disprove Plaintiff Kai Spears' claim[s], but if the Defendant The New York Times raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

Source: 3.7.2 Responsibility for Proof – Affirmative Defense Preponderance of the Evidence, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025.

**The Times's Proposed Charge No. 6 – *DISPUTED***

Introduction—Balancing of Values

You will better understand the rules of law about which I am now informing you if you keep in mind that this case involves a balancing of values, both of which are important in our society. Under certain conditions the law grants plaintiffs the right to recover damages for false, defamatory statements which injure their reputations. I will explain these terms in detail in a few moments.

On the other hand, the United States Constitution guarantees freedom of speech to individuals and the press. This constitutional guarantee entitles the press to publish critical statements about people, and protects the press from liability for such statements, except if, under the standards I am about to describe, the statements are of such a nature and are made under such circumstances as to deprive the persons who make them of protection.

In this case, the statements on which Plaintiff Kai Spears has filed this lawsuit relate to Mr. Spears, who is a private figure. However, the statement itself relates to an event that is a matter of public concern. In these cases, the law affords The Times broad protection for robust debate on public issues. Please bear these principles in mind as I now explain to you the things that Mr. Spears must prove in order to recover damages from The New York Times.

Source: Modern Federal Jury Instructions, Instruction 91-1; *Rosenbloom v. Metromedia,* 403 U.S. 29, 44 (1971) (emphasizing the "constitutional protection under the First Amendment of robust debate on public

issues," and extending protection to all discussions involving matters of public or general concern, regardless of whether the individuals involved are famous or anonymous); *Horsley v. Rivera,* 292 F.3d 695, 701 (11th Cir. 2002) ("The First Amendment protections that apply in defamation claims are rooted in the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.") (citing *New York Times v. Sullivan,* 376 U.S. 254, 270 (1964))

GIVEN ______________ REFUSED _______________

**<u>The Times's Proposed Charge No. 7 – *DISPUTED*</u>**
<u>Introduction—Publication Read as a Whole</u>

Mr. Spears brings two claims against The Times. Count One is for defamation. Count Two is for false light invasion of privacy. I will explain each claim in more detail in a moment, but each of these claims is based on the publication of The Times's article that has been presented to you as evidence. For each claim you should consider the publication as a whole, including any headlines, photographs, captions, and the context in which the statements appeared. You should consider the fair and natural meaning that reasonable readers of ordinary intelligence would give the entire publication.

You must not isolate individual words or phrases from the rest of the publication to create a meaning that the publication as a whole does not convey. The question is what meaning the publication, taken as a whole and in context, would convey to a reasonable reader.

Source: APJI 34.01 (modified); *Spears v. The New York Times Co.,* No. 7:23-cv-692-ACA, Summary Judgment Order (N.D. Ala. May 28, 2026); *Drill Parts & Service Co. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1289 (Ala. 1993) ("The test for determining whether an article is defamatory is 'whether an ordinary reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language.'") (citing *Loveless v. Graddick,* 325 So. 2d 137 (1975)).

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 8 – *DISPUTED***
Defamation by Implication—Nature of the Claim

This is a case involving a claim of defamation by implication. Mr. Spears does not claim that The Times expressly stated that he committed a crime. Rather, Mr. Spears claims that the Article, through the way it presented certain facts, conveyed an implied meaning about him that was false and defamatory—specifically, that Mr. Spears was reprehensibly involved in the shooting.

Defamation by implication occurs when a publication arranges or presents a series of facts in a way that implies a defamatory meaning. The defamatory meaning, if any, stems not from what is literally stated but from what is implied.

In considering Mr. Spears's claim, you must first determine whether the Article, taken as a whole, actually conveyed the defamatory implication that Mr. Spears claims—that is, whether a reasonable reader would understand the Article to imply that Mr. Spears was reprehensibly involved in the shooting. If you determine that the Article does not convey that implication to a reasonable reader, then you must find for The Times.

Source: Plaintiff's Amended Complaint (Doc. 28), at ¶ 105-106 ("Defendant New York Times publicized statements that Plaintiff Spears was present at a murder crime scene, when, in fact, Plaintiff Spears was not present. Moreover, Defendant's article implies that the Plaintiff may have had some role in the death of Jamea Harris. These statements implied that Plaintiff Spears may have been involved in criminal activity."). *Moore v. Cecil*, 2026 U.S. App. LEXIS 11832, at *31 (11th

Cir. Apr. 24, 2026) ("Defamation by implication' occurs when a defendant juxtaposes a series of facts to imply a defamatory connection between them….[A] defamation by implication stems not from what is literally stated but from what is implied."); *Finebaum v. Coulter*, 854 So. 2d 1120, 1124-25 (Ala. 2003) (recognizing that "Alabama law recognizes a single tort of defamation that can be proved through various means, such as an express defamatory meaning, 'defamatory implication,' and 'defamatory innuendo.'"); *Spears v. The New York Times Co.*, No. 7:23-cv-692-ACA (N.D. Ala. Dec. 6, 2023) (concluding article was "reasonably capable of a defamatory meaning" but leaving to the jury whether it is defamatory"); 50 Am. Jur. 2d Libel and Slander § 161 (defining defamation by implication).

GIVEN ______________ REFUSED ______________

**AGREED Proposed Charge No. 11**
Distinction Between Claims

You should consider Mr. Spears's defamation claim and his false light invasion of privacy claim separately, as they are independent claims with different elements and different standards of proof. I will now instruct you on the law for Mr. Spears's defamation claim, followed by the law for Mr. Spear's false light invasion of privacy claim.

Source: *Butler v. Town of Argo,* 871 So. 2d 1, 12 (Ala. 2003) (distinguishing defamation and false light as independent torts under Alabama law).

GIVEN _______________ REFUSED ________________

**Plaintiff's Proposed Charge No. 5 – *DISPUTED***
Defamation—Pretrial Introduction

Plaintiff Kai Spears sues Defendant New York Times for defamation.

Defamation takes two forms—libel or slander. Libel is the publication of something false by written or printed words or by pictures, signs or in some other physical form. Slander is the publication of something false by spoken words or brief gestures. Defamation harms a person's reputation, or lowers his esteem in the community, or makes others not want to associate with him.

Plaintiff Kai Spears says Defendant New York Times published newspaper articles, both on-line and in print, and then republished, on multiple occasions, articles about Plaintiff Kai Spears. Kai Spears says the New York Times statement that he was a passenger in Brandon Miller's vehicle at the time Miller delivered a gun to Grace Street which was then used in a deadly shooting was false and it defamed him because it would cause readers to believe he was reprehensibly involved in the shooting.

Defendant New York Times denies it defamed Plaintiff Kai Spears because:

Source: APJI 34.00.

**The Times's Proposed Charge No. 9 – *DISPUTED***
Defamation—Pretrial Introduction

Defamation harms a person's reputation, or lowers his esteem in the community, or makes others not want to associate with him.

Mr. Spears says The Times published a newspaper article about Mr. Spears. He says the Article falsely implied that he was reprehensibly involved in the events of the shooting, and that this implication defamed him.

The Times denies that it defamed Mr. Spears because (1) the Article does not convey a meaning that would be reasonably understood to be defamatory; (2) any defamatory implication of the Article related to Mr. Spears is not false in all material respects; and (3) The Times exercised reasonable care in publishing the Article, and any inaccuracy was not the result of negligence.

Source: APJI 34.00; APJI 34.01; *Drill Parts & Service Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289 (Ala. 1993).

GIVEN _______________ REFUSED ________________

**<u>Plaintiff's Proposed Charge No. 6 – *DISPUTED*</u>**
<u>Defamation—Elements</u>

Plaintiff Kai Spears sues Defendant New York Times for defamation. Plaintiff Kai Spears says the New York Times statement that he was a passenger in Brandon Miller's vehicle at the time Miller delivered a gun to Grace Street which was then used in a deadly shooting was false and it defamed him because it would cause readers to believe he was reprehensibly involved in the shooting.

Defendant New York Times denies it defamed Plaintiff Kai Spears because:

To recover, Plaintiff Kai Spears must prove to your reasonable satisfaction from the evidence, all of the following:

1. That Defendant New York Times made a false statement about Plaintiff Kai Spears;

2. The statement was defamatory;

3. That Defendant New York Times published the statement to another person; and,

4. That Defendant New York Times published the statement negligently.

If Plaintiff Kai Spears proved all these things, you must find for him and then you must determine what amount of money to award Plaintiff Kai Spears.

If Plaintiff Kai Spears did not prove all these things, you must find for Defendant The New York Times.

<u>False Statement About the Plaintiff.</u>

The statement must be a false statement, and it must be about or refer to Plaintiff Kai Spears. The statement can identify him by name or in a way that a reasonable person would identify Plaintiff Kai Spears as the person the statement is about.

Defamatory Statement.

A statement is defamatory if it tends to harm the reputation of Plaintiff Kai Spears and lower the community's judgment of Plaintiff Kai Spears' worth or character or discourages others from associating with him. A defamatory statement includes whatever tends to impute fraud, dishonesty, or reflect shame on Plaintiff Kai Spears.

You must determine whether, in fact, the article was defamatory. You will do this according to two rules.

1. You must review and interpret the article in its entirety and in relation to the conception and opinion of the public at the time and in the community in which it appeared. You do not focus just on part of it.

2. You will give the article its natural meaning, and according to the sense in which the statement appears to have been used and the idea it was meant to communicate to those who read it. It must be construed and determined by the natural and probable effect on the mind of the average lay reader.

You do not determine its effect when subjected to a critical analysis by a trained legal mind.

Publication and Republication.

Defendant New York Times published the statement if it communicated it to someone other than Plaintiff Kai Spears.

Defendant New York Times is usually not responsible if others republish or repeat Defendant New York Times' defamatory statement. However, Defendant New York Times is responsible if it intended, or could have reasonably foreseen, that others would republish or repeat its defamatory statement.

Negligence.

Defendant New York Times published the statement negligently if Defendant New York Times failed to use reasonable care to determine if it was true or false before it published the statement.

Source: APJI 34.01. Plaintiff Spears refers the Court to *Straw v. Chase Revel, Inc.*, 813 F.2d 356 (11th Cir. 1987) in support of using this jury instruction. Specifically, we direct the court to footnote 4.

**<u>The Times's Proposed Charge No. 10 – *DISPUTED*</u>**
<u>Defamation—Elements</u>

Because Mr. Spears is a private individual and the statements at issue pertained to a topic of public concern, the elements that Mr. Spears must prove to support his claim for defamation are: (1) a defamatory implication conveyed by the Article concerning him that was in fact understood as defamatory by its audience; (2) the implication is false in all material respects; (3) an unprivileged communication of the Article to a third party; (4) fault amounting to at least negligence on the part of The Times; and (5) either proof of actual harm resulting from the Article or from a presumption of harm arising from proof that The Times published the Article with actual malice.

As I have explained, because this is a defamation-by-implication case, what Mr. Spears must prove was false and defamatory is the meaning he claims was implied by the Article as a whole—not any individual sentence or phrase standing alone. Mr. Spears must prove that the Article, taken as a whole, conveyed the defamatory implication he claims, and that the implication was false and was in fact understood as defamatory by its audience.

I will now explain each of these elements to you in more detail.

Source: APJI 34.01 (modified); *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (May 28, 2026 Order), p. 7 ("Under Alabama law, all plaintiffs—regardless of the type of defamation action—must prove that the alleged defamatory statements were false.") (citing *Flickinger v. King,* 385 So. 3d 504, 512 (Ala. 2023); *id.,* pp. 9-10 ("Thus, Mr.

Spears must prove that the allegedly defamatory statements were false in all material respects."); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347-50 (1974) ("We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual…[Private-figure plaintiffs] may recover…actual compensatory damages upon a shorting of fault" but "may not recover…presumed or punitive damages" absent "actual malice."); *Harris v. School annual Publ'g Co.,* 466 So. 2d 963, 964 (Ala. 1985) ("Whether a statement is reasonably capable of a defamatory meaning is a question of law for the court to decide in the first instance; if the court concludes the statement is reasonably capable of a defamatory meaning, the jury determines whether the statement was in fact understood as defamatory by its audience."); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *31 (11th Cir. Apr. 24, 2026) (holding that in defamation-by-implication cases, "the challenged statement could have multiple meanings—some defamatory and some not"; *Finebaum v. Coulter,* 854 So. 2d 1120 (Ala. 2003) (recognizing defamation may be proved through "defamatory implication").

GIVEN _______________ REFUSED ________________

**<u>The Times's Proposed Charge No. 11 – *DISPUTED*</u>**
<u>Defamation—Defamatory Statement</u>

Mr. Spears must prove by a preponderance of the evidence that the Article conveyed a defamatory meaning. The Article conveys a defamatory meaning if the language used exposed Mr. Spears to disgrace, ridicule, odium, or contempt in the estimation of his friends, acquaintances, or the public. It is for you to determine whether the meaning that Mr. Spears claims is implied by The Times's Article was in fact understood as defamatory. In determining whether the claimed implied meaning was understood as defamatory, you must consider the Article in its entirety. The test is the meaning that would be ascribed to the Article by an ordinary reader or a reader of average intelligence, reading the Article as a whole, considering the fair and natural meaning of all its parts together. You must not isolate any individual sentence or phrase and treat it as separately defamatory apart from the Article as a whole.

If you find that the Article, read as a whole by a reasonable reader, does not convey a meaning that would expose Mr. Spears to disgrace, ridicule, odium, or contempt in the estimation of his friends, acquaintances, or the public, then you must find for The Times on the defamation claim.

Source: *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (Dec 6, 20023 Order), p. 7 ("libel is actionable per se 'if the language used exposes the plaintiff to public ridicule or contempt'") (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003)); *Hearn v. U.S. Bank, N.A.*, 2017 U.S. Dist. LEXIS 224778, *9-10 (N.D. Ala. July 12, 2017)

("Conduct is actionable per se when it exposes the plaintiff to public ridicule or contempt. Further, if the words employed in the allegedly libelous publication impute dishonesty or corruption to an individual...or directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood, they are libel per se.")(citations omitted); *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978) ("The foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published and concerning the other, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod."); *Harris v. School Annual Pub. Co.,* 466 So. 2d 963, 964 (Ala. 1985) (holding that whether a statement is "reasonably capable of a defamatory meaning is a question of law for the court" and if so "the jury determines whether the statement was in fact understood as defamatory by its audience"); *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975) (establishing the "ordinary reader" test for defamatory meaning); *Finebaum v. Coulter*, 854 So. 2d 1120, 1128 (Ala. 2003) (holding that "whether a statement is reasonable capable of a defamatory meaning" is a threshold legal question, but "the jury must decide whether it is defamatory"); *Drill Parts & Service Co. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1289 (Ala. 1993) ("The test for determining whether an article is defamatory is 'whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language.'")

GIVEN ______________ REFUSED _______________

**Plaintiff's Proposed Charge No. 7 – *DISPUTED***
Truth—Affirmative Defense

Defendant The New York Times says the statements about Plaintiff Kai Spears are substantially true. If it proves to your reasonable satisfaction from the evidence the statements are substantially true Plaintiff Kai Spears cannot recover.

The term substantially true does not mean somewhat true or partially true. It does not mean the statement is true in every possible and unimportant respect. It means the statement is true without qualification in all material respects. What is material is what would naturally and probably affect Plaintiff Kai Spears' reputation in the mind of the average lay reader.

Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.

Source: APJI 34.07; *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991).

**The Times's Proposed Charge No. 12 – *DISPUTED***
Defamation—A Statement that is False in All Material Respects

In addition to proving by a preponderance of the evidence that the Article conveyed a defamatory meaning, Mr. Spears must also prove by a preponderance of the evidence that the implied meaning you determine was conveyed by the Article was false in all material respects. The word "material" means something that would affect or be taken into consideration by a reasonable person in acting or in making a decision. The "material respects" of an implied statement, then, are those that would cause a reasonable person who heard them to view Mr. Spears differently than they would have if the Article contained no false statements.

The question is whether the gist or substance of any defamatory meaning conveyed by the Article about Mr. Spears is true, not whether every detail is accurate. In this sense, you are tasked with comparing what you determine the Article implied about his involvement in the shooting against what the Article could have truthfully reported about Mr. Spears. If the meaning of what the Article communicated about Mr. Spears is substantially true in terms of what is now known about Mr. Spears, then the Article is not false in all material respects—even if it contains minor inaccuracies. An untrue statement or implication regarding a minor or technical detail does not render an otherwise substantially true article false in all material respects.

Source: *Merriam-Webster.com Dictionary,* Merriam-Webster, https://www.merriam-webster.com/dictionary/material; *Air Wis. Airlines Corp. v. Hoeper,* 571 U.S. 237, 239 (2014) ("In the defamation context, a materially false statement is one that 'would have a different effect on the mind of the reader [or listener] from that which the…truth would have produced'"); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge can be justified.'"); *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775-76 (1986) (holding that a "private-figure plaintiff must bear the burden of showing that the speech at issue is false" in cases involving matters of public concern); *Harris v. School Annual Pub. Co.,* 466 So. 2d 963, 965 (Ala. 1985) ("A communication is considered defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."); *Mooneyham v. State Bd. of Chiropractic Exam'rs,* 802 So. 2d 200, 203 (Ala. 2001) ("Because Mooneyham's defamation claim alleges a truthful communication, he cannot prevail even if we accept his allegations as true. Therefore, the trial court properly dismissed this claim against the defendants."); *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (May 28, 2026 Order), p. 7 ("Under Alabama law, all plaintiffs—regardless of the type of defamation action—must prove that the alleged defamatory statements were false.") (citing *Flickinger v. King,* 385 So. 3d 504, 512 (Ala. 2023); *id.,* pp. 9-10 ("Thus, Mr. Spears must prove that the allegedly defamatory statements were false in all material respects.") (citing *Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1290 (Ala. 1993)(finding no "false meaning" in articles that the trial court labeled "substantially correct") and *Liberty Lobby, Inc. v. Anderson,* 746 F.2d 1563, 1568 n. 6 (D.C. Cir. 1984) (Scalia, J.)(noting that a statement that an individual had been "convicted of 35 burglaries, when the correct number is 34" is not actionable), *overruled on other grounds,* 477 U.S. 242 (1986)); *Loveless v. Graddick,* 325 So. 2d 137, 142 (Ala. 1975) ("It seems to be the general rule that the test to be applied in determining the defamatory nature of an imputation is that meaning which would be ascribed to the language by a reader or listener of ordinary or average intelligence, or by a common mind.") (internal quotations omitted); *Drill Parts & Serv. Co. v. Joy Mfg. Co.,* 619 So. 2d 1280 (1993) (test to determine whether a newspaper article makes a defamatory imputation is "whether an ordinary reader or a reader of

average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language"); *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386 (Ala. Civ. App. 1999).

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 13 – *DISPUTED***
Defamation—Fault

As I mentioned earlier, Mr. Spears is a private person and the subject matter of the Article relates to a matter of public concern. In these circumstances, Mr. Spears must prove that The Times was negligent in publishing the Article. The Times was negligent only if at the time of publication, it failed to exercise the care that a reasonably prudent publisher would have exercised to avoid conveying the implication that Mr. Spears alleges the Article conveyed—that he was involved in the shooting. The mere fact that the Article could be read to carry a defamatory meaning does not, by itself, establish negligence.

The Times negligently published the Article if it did something that a reasonably prudent publisher would not have done in a similar situation, or it failed to do something a reasonably prudent publisher would have done in a similar situation.

If you find that Mr. Spears has not proved that The Times was negligent in publishing the Article, you must find for The Times on the defamation count.

Source: APJI 34.01; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974) (holding that states "may define for themselves the appropriate standard of liability" for private-figure defamation claims, so long as they "do not impose liability without fault"); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832 (11th Cir. Apr. 24, 2026) (distinguishing a "negligent error" from a finding of actual malice and holding that "the publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth is…given assurance that those errors that

nonetheless occur will not lay him open to an indeterminable financial liability") (quoting *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971); *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (actual malice measured "at the time of the publication"); Restatement (Second) of Torts § 580B (a private-figure plaintiff suing a publisher on a matter of public concern must prove fault; defining the negligence standard applicable to such claims).

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 14 – *DISPUTED***
Defamation—Distinction of Elements

As I have already explained to you, Mr. Spears must prove that the meaning implied by the Article was both false and defamatory. An implied meaning may be false but not necessarily defamatory. A publication is not necessarily defamatory if it reports only that a person did things that you would not have done, or things of which you or other people might disapprove. A publication that is merely unpleasant, embarrassing, or uncomplimentary is not necessarily defamatory.

In determining whether there is any defamatory meaning implied by the Article, each part of the Article, including its headlines, sub-headlines, pictures and captions, must be viewed in its entirety and as a whole. Something that may be defamatory when taken out of the context of the entire Article, but which is not defamatory when viewed in the whole, is not defamatory.

Words used are to be given their usual, common, natural and obvious meaning.

Source: *Bell v. Smith,* 281 So. 3d 1247, 1254 (Ala. 2019) ("To be actionable, a statement must be both false *and* defamatory.") (emphasis added); *Jones v. Buzzfeed, Inc.,* 591 F.Supp. 3d 1127 (N.D. Ala. 2022) ("Put differently, for a claim to be actionable, a contested statement must be false and defamatory, and these requirements are separate sub-elements. A plaintiff must prove both."); *Johnson v. Phillips,* 526 S.W.3d 529, 535 (Tex. App. 1st Cir. 2017) ("A statement may be false, abusive, unpleasant, or objectionable without injuring a person's reputation such that it is defamatory."); *Wainman v. Bowler,* 576 P.2d 268, 271 (Mont. 1978) ("It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to

jests or banters, so as to affect his feelings."); *Dudley v. Bass Anglers Sportsman Soc'y,* 777 So. 2d 135 (Ala. 2000) ("the foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod); *Finebaum v. Coulter,* 854 So. 2d 1120, 1129 (Ala. 2003) (radio sportscaster's statement that plaintiff and another individual "really slobbered all over each other" and that he believed "they were going to start performing oral sex on one another," not actionable as defamatory); *Harris v. School Annual Pub. Co.,* 466 So. 2d 963 (Ala. 1985) (where used as a substitution for African-American plaintiff's photograph in a school yearbook, image of monkey with the words "out munching" was not defamatory; defamatory comment is on that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"); *McCafferty v. Newsweek Media Grp., Ltd.,* 2019 U.S. Dist. LEXIS 36543, *6 (E.D. Pa. Mar. 7, 2019) ("To qualify as defamatory, the statement must do more than embarrass or annoy the plaintiff; rather, it must 'grievously fracture[] his standing in the community of respectable society.'"); *Drill Parts and Service, Inc. v. Joy Mfg. Co.,* 619 So. 2d 1280, 1289 (Ala. 1993) (test for determining whether an article is defamatory is "whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language").

GIVEN ______________ REFUSED _______________

**<u>Plaintiff's Proposed Charge No. 8 – *DISPUTED*</u>**

<u>Compensatory Damages—Actual Harm (Libel/Slander Per Se)</u>

Plaintiff Kai Spears asks for compensatory damages for mental anguish and emotional distress including shame and humiliation, damage to reputation, reputational repair costs, and loss of enjoyment.

You should award compensatory damages if Plaintiff Kai Spears reasonably satisfied you from the evidence that the libel caused him actual harm. These damages are an amount of money that fairly and reasonably compensates Plaintiff Kai Spears for that harm.

Damages for actual harm are not limited to out-of-pocket loss. The damages may include an amount for a lessened reputation and loss of standing in the community, personal shame, and mental anguish and suffering.

Source: APJI 34.10.

**Plaintiff's Proposed Charge No. 9 – *DISPUTED***
Compensatory Damages

Compensatory damages are awarded to fairly and reasonably compensate for the harm caused by another's wrongful conduct.

Source: APJI 4.01

**Plaintiff's Proposed Charge No. 10 – *DISPUTED***
Personal Injury—Physical Pain and Mental Anguish

Plaintiff Kai Spears says that he has had mental anguish and emotional distress.

There is no legal rule or yardstick that tells you how much money to award for mental anguish. The amount you decide to award is up to you, but it must be fair and reasonable, based on sound judgment, and proved by the evidence. In deciding the amount of the award, you may consider, among other things, the nature, severity, and length of time Kai Spears had mental anguish.

You should award Kai Spears an amount for future mental anguish if Kai Spears has proved that it is reasonably certain that he will have mental anguish in the future.

Source: APJI 4.10.

**Plaintiff's Proposed Charge No. 11 – *DISPUTED***
Aggravation of Pre-Existing Condition

If you decide that Plaintiff Kai Spears had a pre-existing condition, whether he knew it or not, and that Defendant The New York Times' conduct aggravated the condition, then you will award Plaintiff Kai Spears an amount that reasonably compensates him for the harm caused by The New York Times' conduct.

The fact that Plaintiff Kai Spears had a pre-existing condition that made it more likely that he would be harmed by Defendant The New York Times' conduct does not affect the amount of damages that he is entitled to recover for that harm.

Source: APJI 4.13.

**Plaintiff's Proposed Charge No. 12 – *DISPUTED***

Presumed Compensatory Damages—Libel Per Se or Slander Per Se

If you find for Plaintiff Kai Spears on his claim that Defendant The New York Times defamed him, you may award Plaintiff Kai Spears damages for harm to his reputation and damages for mental anguish. The law presumes damages to reputation and damages for mental anguish and Plaintiff Kai Spears does not have to prove them.

The amount you award is up to you, but you must base the award on sound judgment and the evidence in this case. The award must reasonably compensate Plaintiff Kai Spears for the harm to his reputation and for mental anguish.

Source: APJI 34.11.

**The Times's Proposed Charge No. 15 – *DISPUTED***

Defamation—Compensatory Damages (Actual Harm/Presumed Damages)

Because Mr. Spears is a private person and the speech at issue relates to a matter of public concern, in order for Mr. Spears to recover compensatory damages for his defamation claim, Mr. Spears must also prove either: (a) that he suffered actual harm from the Article by a preponderance of the evidence or (b) that The Times published the Article with actual malice by clear and convincing evidence.

(a) Actual Harm

Compensatory damages for actual harm are intended to fairly and reasonably compensate Spears for the actual harm he suffered as a direct result of The Times's publication. Actual harm is not limited to out-of-pocket financial loss. You may consider emotional distress, mental anguish, and harm to Mr. Spears's reputation, so long as it is supported by the evidence.

You may not award damages for harm caused by true information in the Article or by the mere fact that The Times published an article about Mr. Spears or about the shooting. If portions of the Article are true—or if the Article caused Mr. Spears embarrassment or discomfort for reasons unrelated to the defamatory implication—those are not a proper basis for compensatory damages.

An award of compensatory damages for actual harm must be supported by evidence. These damages must not be based on speculation, guesswork, or

sympathy. You must use your sound judgment to determine what amount, if any, has been proved by a preponderance of the evidence.

(b) Presumed Damages

Alternatively, you may award Mr. Spears compensatory damages for emotional distress, mental anguish, and harm to his reputation, even without proving actual harm, if and only if Mr. Spears proves by clear and convincing evidence that The Times published the Article with actual malice. Under these circumstances, the law presumes damages to reputation and damages for emotional distress and mental anguish and Mr. Spears does not have to prove them. The amount you award is up to you, but you must base the award on sound judgment and the evidence in this case. The award must reasonably compensate Mr. Spears for the harm to his reputation and for mental anguish.

I will now explain the meaning of actual malice.

Source: APJI 34.10; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) ("[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher…[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."); *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971) ("[T]he publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth…is given assurance that those errors that nonetheless occur will not lay him open to an indeterminable financial liability."); Restatement (Second) of Torts § 580B (a private-figure plaintiff may recover "proved, actual harm" upon showing fault); APJI 34.11 (modified).

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 16 – *DISPUTED***
Actual Malice

Actual malice should not be confused with malice as an evil intent or a motive arising from spite or ill will. Ill will, improper motive, or personal animosity play no role in determining whether The Times acted with actual malice. Actual malice has two parts, and Mr. Spears must prove both parts by clear and convincing evidence.

The first part is whether, at the time of publication, The Times knew of or recklessly disregarded the falsity of the implied statement. That means Mr. Spears must prove that when The Times published the statement, either: (1) The Times knew the implied statement was false; (2) The Times had a high degree of awareness that the implied statement was probably false; or (3) The Times had a serious doubt that the implied statement was true.

The second part of the test is whether, at the time of publication, The Times intended to communicate the implied defamatory meaning or recklessly disregarded the implied defamatory meaning. Otherwise put, the test is whether The Times knew that the implied defamatory meaning was not just possible, but likely, and still made the statement despite its knowledge of that likelihood.

Mr. Spears must prove both of these parts by clear and convincing evidence to establish actual malice. If he fails to award either part, you may not award punitive damages.

Clear and convincing evidence is a higher standard of proof than preponderance of the evidence. It is an intermediate standard that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt.

Actual malice is a subjective test. You must determine The Times's actual state of mind when it published the Article. You must not consider whether a reasonably prudent publisher would have published the Article or whether a reasonably prudent publisher would have investigated before publishing it. The beliefs or actions of a reasonable publisher are irrelevant to this inquiry.

The fact that the Article can be read to convey a defamatory meaning does not, by itself, establish that The Times intended the defamatory meaning or recklessly disregarded it. It is The Times's subjective view at the time of publication—not Mr. Spears's subjective impression of the Article—that determines whether The Times published with actual malice.

If you disbelieve the testimony of The Times's witnesses regarding their intent or state of mind, your disbelief alone is not sufficient to establish actual malice by clear and convincing evidence. Even if you reject The Times's testimony that it did not intend the defamatory meaning, you may not find actual malice based solely on that rejection. Mr. Spears must point to affirmative evidence—beyond the mere disbelief of The Times's witnesses—establishing by clear and convincing evidence

that The Times intended to communicate the defamatory meaning or recklessly disregarded the defamatory meaning.

You may consider evidence that The Times took steps to verify the accuracy of the Article. A defendant's efforts to verify accuracy are evidence that weighs against a finding of actual malice.

A negligent error—even a serious one—is not a basis for a finding of actual malice. If you find that The Times made a mistake in its choice or words or in the way it presented information, but that the mistake was the product of negligence rather than knowledge of falsity or reckless disregard of the truth, you may not find actual malice.

Source: APJI 34.03 (modified); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) (private-figure plaintiffs suing on matters of public concern "may not recover…presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth"); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *32-33 (11th Cir. Apr. 24, 2026) ("In a defamation by implication case, the plaintiff must show by clear and convincing evidence not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant 'intend[ed] to communicate the defamatory meaning' or recklessly disregarded the defamatory meaning—i.e., 'the defendant [] knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood.'"); *id.* at *37 ("[D]iscredited testimony is not considered a sufficient basis for drawing a contrary conclusion" and finding actual malice; "[t]o establish actual malice by clear and convincing evidence, Moore needed more evidence than just the jury's disbelief of SMP's witnesses to establish that SMP intended the defamatory implied meaning in the ad or acted with reckless disregard to the defamatory implied meaning."); *id.* at *39

("[C]onstitutional malice does not flow from a finding…[that] the [publication] may be capable of supporting the impression the plaintiff claims;" "[s]imply because a statement reasonably can be read to contain a defamatory inference does not mean that the publisher of the statement either intended the statement to contain such a defamatory implication or even knew the readers could reasonably interpret the statements to contain the defamatory implication."); *id.* at *43 ("A defendant's efforts to verify the accuracy of its statements militates against a finding of actual malice;" "[t]he publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth is…given assurance that those errors that nonetheless occur will not lay him open to an indeterminable financial liability.")(quoting *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971)); *id.* at * 44 ("[A] negligent error is not a basis for a finding of actual malice;" [t]he First Amendment cautions courts against intruding too closely into questions of editorial judgment, such as the choice of specific words."); *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016) ("This actual malice test is subjective….The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant;" "there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth"); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,* 6 F.4th 1247, 1252 (11th Cir. 2021) ("This actual malice test is subjective; the public-figure plaintiff must show that the defendant in fact entertained serious doubts as to the truth of the statement."); *Fults v. GDCP Warden,* 764 F.3d 1311, 1314 (11th Cir. 2014) ("The 'clear and convincing' standard [is] an intermediate standard of proof that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt. It requires proof that a claim is highly probable."); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 510 (1991) ("Actual malice under the New York Times standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1198 n. 17 (11th Cir. 1999) ("Ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice.").

GIVEN _______________ REFUSED ________________

**The Times's Proposed Charge No. 17 – *DISPUTED***
Actual Malice Distinguished from Ill Will

You must not confuse actual malice as I have defined it with more common definitions of malice, such as ill will or hatred. Mr. Spears cannot prevail merely by proving that The Times or its employees were motivated by ill will, prejudice, hostility, hatred, contempt, or even a desire to injure. If you find that any of The Times's employees were so motivated toward Mr. Spears, you may consider such state of mind as evidence that the employee might have published the Article knowing that it was implicitly false, or with a high degree of awareness of likely falsity. But hostility, disapproval or other forms of ill will do not as such establish actual malice; a reporter may despise someone but nevertheless publish only what he believes to be the truth in writing about that person. Therefore, while you may consider ill will or other relevant forms of bias, to prevail, Mr. Spears must establish actual malice in the sense I have defined it.

Source: Modern Federal Jury Instructions, Instruction 91-4.

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 18 – *DISPUTED***
Reckless Disregard

The Times may be found to have acted with a reckless disregard for the truth of the Article if any of its employees or agents in fact entertained serious doubts as to its truth or acted with a high degree of awareness that it was probably false.

This test may be met even if none of The Times's employees knew with certainty that the statement was false. On the other hand, reckless conduct is not measured by whether a reasonably prudent person would have published the Article. Your inquiry in this area concerns a subjective matter, namely, the state of mind of The Times and its employees or agents, unless you find from the evidence that obvious reasons existed to have led The Times's employees to doubt the accuracy of the Article.

Source: Modern Federal Jury Instructions, Instruction 91-5.

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 19 – *DISPUTED***

State of Mind at Time of Publication

An important principle to keep in mind in deciding the issue of actual malice is that your decision must turn upon the state of mind of The Times and its responsible employees or agents at the time of publication of the alleged defamatory Article. You may not rely on any evidence as to events or circumstances after publication, unless I tell you in these instructions that you may rely on such evidence as pertinent to credibility or to state of mind at the time of publication.

In this connection, please note that, after publication, The Times had no duty whatever to investigate anyone's claim that the Article was false, or to issue any retraction of the Article, or to further investigate its sources. You may not consider any failure of The Times to engage in these types of activities as evidence of the existence of actual malice at the time of publication.

Source: Modern Federal Jury Instructions, Instruction 91-7.

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 20 – *DISPUTED***
Denial Limiting Instruction

You have heard evidence regarding the denials received by The Times and added to the Article. You may consider this evidence in your deliberations as to Mr. Spears's defamation claim. But the press, like The Times, need not accept denials, however vehement; such denials are so commonplace that, in themselves, they hardly alert the conscientious reporter to the likelihood of error. Where a publisher, like The Times, includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice. The reasoning behind the rule is simple. Where a publisher, like The Times, gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has. Moreover, discouraging the inclusion of such contrary sources would run counter to the constitutional goal of promoting the free and robust discussion of public events. Thus, reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice.

Source: *Kai Spears v. The New York Times Co.,* No. 7:23-cv-00692-ACA (Dec 6, 20023 Order), p. 17 ("libel is actionable per se "if the language used exposes the plaintiff to public ridicule or contempt") (citing *Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989)); *id.* at 17-18 (quoting *Michel v. NYP Holdings Inc*., 816 F.3d 686, 703 (11th Cir. 2016).

GIVEN ______________ REFUSED ______________

**<u>The Times's Proposed Charge No. 21 – *DISPUTED*</u>**
<u>Defamation—Mitigation by Retraction</u>

The Times says that even if you find it liable for defamation, you should reduce the amount of damages you award because it retracted the statements that Mr. Spears says are defamatory.

Under Alabama law, The Times may show that Mr. Spears's damages have been mitigated if: first, the Article was published in good faith, by mistake, or through inadvertence of misapprehension; and second, The Times retracted the Article in the same medium in which it appeared, and did so in a prominent position in that medium. The burden of proving mitigation by retraction is on The Times.

I will now explain to you what constitutes a retraction that satisfies the law. A retraction is a withdrawal or taking back of the statements that Mr. Spears says were defamatory. To qualify as a retraction under the law, The Times must have published the retraction in the same medium in which the original statement appeared. The retraction must also have been given a prominent position in that medium. A prominent position means the retraction was placed or presented in such a way that it would be likely to come to the attention of those who saw or heard the original statements. Whether the retraction appeared in a prominent position is a question of fact for you to decide based on the evidence.

In addition to proving that there was an adequate retraction, The Times must also prove that the statements Mr. Spears says were defamatory were made in good

faith—that is, The Times did not know the statement was false at the time it was made. The Times must show that the statement resulted from an honest mistake, inadvertence, or misapprehension, and was not made with knowledge of its falsity or with a deliberate intent to injure Mr. Spears.

If The Times proved both of these things—good faith in making the original statements and an adequate retraction in the same medium in a prominent position—you should consider the retraction in deciding the amount of damages, if any, to award Mr. Spears. A retraction that satisfies these requirements does not defeat Mr. Spears's claim, but you may consider it as a factor that reduces or lessens the damages Mr. Spears is entitled to.

Source: APJI 34.13 (modified); Ala. Code § 6-5-184 ("The defendant in an action of slander or libel may prove under a general denial in mitigation of damages that the charge was made in good faith by mistake or through inadvertence or misapprehension, and that he has retracted the charge in the same medium of publication as the charge was originally promulgated and in a prominent position therein.").

GIVEN ______________ REFUSED _______________

**Plaintiff's Proposed Charge No. 13 – *DISPUTED***

Punitive Damages—Libel—Private Person/ Public Concern or Public Figure, Etc.

Punitive damages are awarded to a plaintiff to punish a defendant for its wrongful conduct and to protect the public by deterring or discouraging a defendant and others from doing the same or similar wrongs in the future.

Before you can award punitive damages you must have decided to award Plaintiff Kai Spears compensatory or nominal damages.

To recover punitive damages, Plaintiff Kai Spears must first prove to your reasonable satisfaction from the evidence:

1. That when Defendant The New York Times published the statement:

    a. It knew the statement was false; or

    b. It had a high degree of awareness the statement was false; or

    c. It had a serious doubt that the statement was true;

2. That at least five days before May 30, 2023, Plaintiff Kai Spears sent a written demand to Defendant The New York Times that it publicly retract the statement; and,

3. That Defendant The New York Times did not, within five days of the written demand, publish a full and fair retraction in as prominent and public place or manner as it published the original statement.

A retraction is a withdrawal of a statement.

Plaintiff Kai Spears must also prove by clear and convincing evidence that Defendant The New York Times consciously or deliberately acted toward Plaintiff Kai Spears with wantonness or malice.

Clear and convincing evidence means evidence that, when weighed against opposing evidence, produces in your mind a firm conviction about each element of the claim and a high probability that your conclusion is correct.

Proof by clear and convincing evidence requires a level of proof greater than proof to your reasonable satisfaction from the evidence or the substantial weight of the evidence, but it is less than proof beyond a reasonable doubt.

Wantonness is conduct that is carried on with a reckless or conscious disregard of Plaintiff Kai Spears' rights.

Malice is the intentional doing of a wrongful act without just cause or excuse, either:

1. With an intent to harm Plaintiff Kai Spears' reputation or lower his esteem in the community, or make others not want to associate with Plaintiff Kai Spears, or

2. Under circumstances that the law will imply an evil intent.

The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent

statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration. The plaintiff may show that … defendant had failed to make a proper investigation before publication of the statement in question.

When an article is not in the category of "hot news," that is, information that must be printed immediately or it will lose its newsworthy value, "actual malice may be inferred when the investigation for a story ... was grossly inadequate in the circumstances."

Whether you award punitive damages is up to you. If you do, the amount of the award is determined by the character and degree of Defendant The New York Times' wrongful conduct and the necessity to prevent the same or similar wrongful conduct by it and others in the future.

Source: APJI 34.18; *Herbert v. Lando*, 441 U.S. 153 (1979); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983)(quoting *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)).

**The Times's Proposed Charge No. 22 – *DISPUTED***
Defamation—Punitive Damages

Punitive damages are not favored in the law and are to be awarded only in exceptional circumstances. Their purpose is to punish a defendant for its wrongful conduct and to protect the public by deterring or discouraging a defendant and others from doing the same or similar wrongs in the future.

Before you can award punitive damages: (1) you must have decided to award Mr. Spears compensatory or nominal damages; (2) Mr. Spears must have proved by clear and convincing evidence that The Times published the alleged implied defamatory statement with actual malice; and (3) Mr. Spears must have proved by clear and convincing evidence that The Times consciously or deliberately acted toward Mr. Spears with wantonness or common law malice.

You will recall from my earlier instruction that actual malice has two parts. The first part is whether, at the time of publication, The Times knew of or recklessly disregarded the falsity of the implied statement. The second part of the test is whether, at the time of publication, The Times intended to communicate the implied defamatory meaning or recklessly disregarded the implied defamatory meaning. Both of these parts must be proven by clear and convincing evidence.

In addition to actual malice, Mr. Spears must also prove by clear and convincing evidence that Mr. Spears consciously or deliberately acted toward Mr. Spears with wantonness or common law malice.

Wantonness is conduct that is carried on with a reckless or conscious disregard of Mr. Spears's rights.

Common law malice is distinct from actual malice. Common law malice is the intentional doing of a wrongful act without just cause or excuse with an intent to harm Mr. Spears's reputation or lower his esteem in the community, or make others not want to associate with Mr. Spears.

Clear and convincing evidence, as I explained to you earlier, is a higher standard of proof than preponderance of the evidence. It is an intermediate standard that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt.

If Mr. Spears fails to prove each of these legal requirements by clear and convincing evidence, you may not award punitive damages for the defamation claim. If Mr. Spears does prove each of these legal requirements by clear and convincing evidence, you may—but are not required to—award punitive damages in an amount that you find appropriate to punish The Times for its conduct and to deter similar conduct in the future.

Source: APJI 34.18 (modified); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) (private-figure plaintiffs suing on matters of public concern

"may not recover…presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth"); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832, at *32-33 (11th Cir. Apr. 24, 2026) ("In a defamation by implication case, the plaintiff must show by clear and convincing evidence not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant 'intend[ed] to communicate the defamatory meaning' or recklessly disregarded the defamatory meaning—i.e., 'the defendant [] knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood.'"); *id.* at *37 ("[D]iscredited testimony is not considered a sufficient basis for drawing a contrary conclusion" and finding actual malice; "[t]o establish actual malice by clear and convincing evidence, Moore needed more evidence than just the jury's disbelief of SMP's witnesses to establish that SMP intended the defamatory implied meaning in the ad or acted with reckless disregard to the defamatory implied meaning."); *id.* at *39 ("[C]onstitutional malice does not flow from a finding…[that] the [publication] may be capable of supporting the impression the plaintiff claims;" "[s]imply because a statement reasonably can be read to contain a defamatory inference does not mean that the publisher of the statement either intended the statement to contain such a defamatory implication or even knew the readers could reasonably interpret the statements to contain the defamatory implication."); *id.* at *43 ("A defendant's efforts to verify the accuracy of its statements militates against a finding of actual malice;" "[t]he publisher who maintains a standard of care such as to avoid knowing falsehood or reckless disregard of the truth is…given assurance that those errors that nonetheless occur will not lay him open to an indeterminable financial liability.") (quoting *Time, Inc. v. Pape,* 401 U.S. 279, 291 (1971)); *id.* at * 44 ("[A] negligent error is not a basis for a finding of actual malice;" [t]he First Amendment cautions courts against intruding too closely into questions of editorial judgment, such as the choice of specific words."); *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016) ("This actual malice test is subjective….The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant;" "there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth"); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,* 6

F.4th 1247, 1252 (11th Cir. 2021) ("This actual malice test is subjective; the public-figure plaintiff must show that the defendant in fact entertained serious doubts as to the truth of the statement."); *Fults v. GDCP Warden,* 764 F.3d 1311, 1314 (11th Cir. 2014) ("The 'clear and convincing' standard [is] an intermediate standard of proof that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt. It requires proof that a claim is highly probable."); *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 510 (1991) ("Actual malice under the New York Times standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1198 n. 17 (11th Cir. 1999) ("Ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice."); Ala. Code § 6-11-20.

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 23 – *DISPUTED***

Punitive Damages—Damages Limited to Defendant's Conduct

No defendant shall be liable for any punitive damages unless you first find that it has engaged in conduct, as I have defined it for you, warranting punitive damages. The Times shall be liable only for punitive damages, if any, commensurate with its own conduct.

Source: Ala. Code § 6-11-21(e).

GIVEN _______________ REFUSED _______________

**The Times's Proposed Charge No. 24 – *DISPUTED***
Punitive Damages Not to Be Based on Out-of-State Conduct

In considering the issue of punitive damages, you may not impose punitive damages against The Times for out-of-state conduct. Accordingly, you may not impose punitive damages against The Times for any injuries that may have occurred in other states, or for the purpose of changing The Times's conduct in another state.

Source: *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 409 (2003); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 585 (1996); *N.Y. Life Ins. Co. v. Head,* 234 U.S. 149, 161 (1914); *White v. Ford Motor Co.,* 312 F.3d 998, 1020 (9th Cir. 2002).

GIVEN _______________ REFUSED _______________

**<u>The Times's Proposed Charge No. 25 – *DISPUTED*</u>**

<u>Punitive Damages—Not to Be Based on Wealth, Profits, or Revenues</u>

In determining the proper amount of punitive damages, if any, you may not consider The Times's size or overall profits and revenues.

Source: *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003); *Cooper Industries v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 442 (2001); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574–85 (1996); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432 (1994); *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 464 (1993); *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1 (1991).

GIVEN _______________ REFUSED _______________

**<u>Plaintiff's Proposed Charge No. 14 – *DISPUTED*</u>**
<u>False Light Invasion of Privacy</u>

Plaintiff Kai Spears says Defendant New York Times publicized false information about Kai Spears and he was put in a false light in the public eye. Kai Spears says the false information included that he was a passenger in a vehicle that transported a gun to the site of a fatal shooting.

Defendant New York Times says the publicity is protected by:

To recover, Plaintiff Kai Spears must prove to your reasonable satisfaction from the evidence all of the following:

1. That Defendant New York Times intentionally publicized false information about Plaintiff Kai Spears; Information is publicized if it is communicated to the public at large or to so many people that the information is substantially certain to become public knowledge.

2. That Defendant New York Times knew the information was false, or it acted with reckless disregard about whether it was false or not;

3. That Defendant New York Times knew when it publicized the information it would place Kai Spears in a false light, or Defendant New York Times acted with reckless disregard to whether Plaintiff Kai Spears would or would not be placed in a false light;

4. That the information placed Plaintiff Kai Spears in a false light in the public eye and the false light would be highly offensive to a reasonable person; and,

5. That the false light Plaintiff Kai Spears was put in caused him harm.

If Plaintiff Kai Spears proves all these things, and Defendant New York Times did not prove ( ), you must find for him and then you must determine an amount of money to award Plaintiff Kai Spears.

If Plaintiff Kai Spears did not prove all these things, you must find for Defendant The New York Times.

Source: APJI 49.03.

**The Times's Proposed Charge No. 26 – *DISPUTED***
False Light Invasion of Privacy—Elements

For the false light invasion of privacy count, Mr. Spears says The Times publicized implicitly false information about him and that he was placed in a false light in the public eye. Mr. Spears says the false information was that he was in a car at the scene of the shooting and that this placed him in a false light by implying that he was reprehensibly involved in the events of the shooting. The Times denies these claims.

To recover, Mr. Spears must prove each of the following five elements.

(1) that The Times intentionally publicized implicitly false information about Mr. Spears. Information is publicized if it is communicated to the public at large or to so many people that the information is substantially certain to become public knowledge.

(2) that The Times knew at the time of publication that the information was implicitly false, or it acted with reckless disregard about whether it was false or not.

(3) that The Times knew when it publicized the information it would place Mr. Spears in a false light, or The Times acted with reckless disregard as to whether Mr. Spears would or would not be placed in a false light.

(4) that the information placed Mr. Spears in a false light in the public eye and the false light would be highly offensive to a reasonable person. A false light is "highly offensive" only when there is such a major misrepresentation of one's character, history, activities, or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in Mr. Spears's position. Not every inaccuracy or unflattering portrayal rises to this level. The false light must involve a major misrepresentation, not merely a minor or insignificant one; and

(5) that the false light Mr. Spears was placed in caused him harm.

For elements (1), (4), and (5) above, Mr. Spears must prove those elements to your reasonable satisfaction from the evidence.

For elements (2) and (3), Mr. Spears must prove those elements by clear and convincing evidence. These two elements reflect the two parts of the actual malice standard, that I previously explained, as it applies to a case involving an alleged false implication.

For element (2), Mr. Spears must prove by clear and convincing evidence that The Times knew the implied meaning conveyed by the Article was false, or that The Times acted with reckless disregard as to whether the implied meaning was false.

For element (3), Mr. Spears must prove by clear and convincing evidence that The Times intended the Article to convey the false light meaning—that Mr. Spears

was reprehensibly involved in the events of the shooting—or that The Times recklessly disregarded that the Article conveyed that meaning. In other words, Mr. Spears must prove by clear and convincing evidence that The Times knew the false light meaning was not just possible, but likely, and still published the Article despite that knowledge. It is not enough for Mr. Spears to prove that the Article can be read to place him in a false light. Mr. Spears must prove that The Times actually intended or recklessly disregarded the false light meaning. Mr. Spears must prove both of these elements by clear and convincing evidence. If he fails to prove either one, you must find for The Times on the false light claim.

Clear and convincing evidence means evidence that, when weighed against opposing evidence, produces in your mind a firm conviction and a high probability that your conclusion is correct. It requires a level of proof greater than proof to your reasonable satisfaction from the evidence, but less than proof beyond a reasonable doubt. To meet this standard on elements (2) and (3), Mr. Spears must prove that it is highly probable that The Times knew the information was false or acted with reckless disregard as to its falsity, and that it is highly probable that The Times knew the publication would place Mr. Spears in a false light or acted with reckless disregard as to whether he would be placed in a false light.

In considering elements (2) and (3), you must determine The Times's actual state of mind when it published the information. You must not consider whether a

reasonably prudent publisher would have published the information or whether a reasonably prudent publisher would have investigated further before publishing it. The beliefs or actions of a reasonable publisher are irrelevant to this inquiry.

You are to evaluate this false light claim separately from the defamation claim. False light is a distinct claim with its own elements. A false light claim may be maintained even if the false statement is not necessarily defamatory.

If Mr. Spears proved all of the things I provided to you above—elements (1), (4), and (5) to your reasonable satisfaction from the evidence, and elements (2) and (3) by clear and convincing evidence—then you must find for him on the false light claim and then you must determine an amount of money to award him.

If Mr. Spears did not prove all of these things, you must find for The Times on the false light claim.

Source: APJI 49.03 (modified); *Regions Bank v. Plott,* 897 So. 2d 239, 244 (Ala. 2004) (stating elements of false light claim and requiring defendant's "knowledge of or acted in reckless disregard" as to falsity); *Flickinger v. King,* 385 So. 3d 504, 517 (Ala. 2023) (stating that, to establish false light, plaintiff must show (1) the defendant gave publicity to a matter concerning another that places the other before the public in a false light; (2) the false light in which the other was placed would be highly offensive to a reasonable person, and (3) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed); *Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993) (adopting Restatement (Second) of Torts § 652E); *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (distinguishing false light from defamation as independent torts); *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003) (a statement need not be defamatory to be highly offensive for false light purposes);

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021); *Moore v. Cecil,* 2026 U.S. App. LEXIS 11832 (11th Cir. Apr. 24, 2026).

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 27 – DISPUTED PORTION IN BOLD**

False Light Invasion of Privacy—Nominal Damages

If Plaintiff Kai Spears did not prove that the **false light** invasion of privacy caused him substantial harm, you may award nominal damages. Nominal damages are a very small amount, usually $1.00.

Source: APJI 49.04 (modified to specify false light).

GIVEN ______________ REFUSED _______________

**Plaintiff's Proposed Charge No. 15 – *DISPUTED***
Compensatory Damages—Invasion of Privacy

Plaintiff Kai Spears asks for compensatory damages for the following:

1. Mental anguish and emotional distress including shame and humiliation.
2. Damage to reputation.
3. Reputational repair costs.
4. Loss of enjoyment.

You should award compensatory damages if Plaintiff Kai Spears reasonably satisfied you from the evidence that the invasion of his privacy caused him actual harm. These damages are an amount of money that fairly and reasonably compensates Plaintiff Kai Spears for that harm.

Source: APJI 49.05.

**The Times's Proposed Charge No. 28 – *DISPUTED***
False Light Invasion of Privacy—Compensatory Damages

If—and only if—you find for Mr. Spears on the false light claim, you must then decide the amount of compensatory damages, if any, to award him.

Mr. Spears asks for compensatory damages for emotional distress including shame and humiliation, and harm to his reputation.

You should award compensatory damages if Mr. Spears reasonably satisfied you from the evidence that the false light invasion of his privacy caused him actual harm. These damages are an amount of money that will fairly and reasonably compensate Mr. Spears for that harm.

Damages for actual harm are not limited to out-of-pocket loss. You may consider emotional distress including shame and humiliation suffered by Mr. Spears as a result of being placed in a false light, harm to Mr. Spears's reputation, and any other actual harm that was a direct result of the false light publication, so long as it is supported by the evidence.

Any award of compensatory damages must be supported by evidence. Damages must not be based on speculation, guesswork, or sympathy. You must use your sound judgment to determine what amount, if any, has been proved.

If you also find for Mr. Spears on the defamation claim, you must be careful to avoid awarding duplicative damages. You may not award damages for the same harm twice across the two claims.

Source: APJI 49.05; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349-50 (1974)

GIVEN ______________ REFUSED _______________

**The Times's Proposed Charge No. 29 – *DISPUTED***
No Double Recovery

Mr. Spears asserts two claims in this case — one for defamation and one for false light invasion of privacy. These are separate and independent claims, and you have considered each one independently as I instructed you to do.

If you find for Mr. Spears on both claims, you must be careful to avoid awarding duplicative damages. Both claims arise from the same article published by The Times. Much of the harm Mr. Spears alleges—including a lessened reputation and loss of standing in the community, personal shame and humiliation, emotional distress, and mental anguish and suffering—may overlap between the two claims. You may not award damages for the same harm twice.

You should determine what total sum, if any, will fairly compensate Mr. Spears for all actual harm proved, without duplication. Any overlap between the two claims must not result in a double recovery.

Source: *Ex parte Goldsen,* 783 So. 2d 53 (Ala. 2000); *Shepherd v. Maritime Overseas Corp.,* 614 So. 2d 1048, 1051 (Ala. 1993)

GIVEN ______________ REFUSED _______________

**AGREED Proposed Charge No. 12**
Duty to Deliberate

Of course, the fact that I have given your instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe that Mr. Spears should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your only interest it to seek the truth from the evidence in the case.

Source: 3.8.1 Duty to Deliberate, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

**The Times's Proposed Charge No. 30 – *DISPUTED***
Quotient Verdict

If you decide that Mr. Spears is entitled to recover damages, you must determine the amount of those damages from the evidence and these instructions, using the considered judgment of each juror. You cannot agree before arriving at a verdict that each juror will separately determine the amount of the award, total the separate figures, and then divide the number by [INSERT NUMBER OF JURORS] to determine the amount to award Mr. Spears.

Source: APJI 24.01; *United States v. 4925 Acres of Land,* 143 F.2d 127, 128 (5th Cir. 1944) ("Quotient verdicts have been generally denominated as 'gambling verdicts' and this is an improper method to be used by jurors in arriving at a verdict. The instruction [allowing the jury to return a quotient verdict] constituted reversible error."); *Bonner v. City of Prichard,* 661 F.2d 1206 (5th Cir. 1981) (recognizing that Fifth Circuit Court of Appeals decisions released prior to October 1, 1981 are binding precedent within the Eleventh Circuit Court of Appeals).

GIVEN _____________ REFUSED ______________

**AGREED Proposed Charge No. 13**
Election of Foreperson; Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as a foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[EXPLAIN VERDICT FORM]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it, and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Source: 3.9 Election of Foreperson Explanation of Verdict Form, 11th Cir. Pattern Jury Instructions, Civil Cases, Dec. 15, 2025

GIVEN _______________ REFUSED ________________

Respectfully submitted,

*<u>/s/ Matthew J. Winne</u>*
Michael L. Bell
*mbell@lightfootlaw.com*
John G. Thompson
*jthompson@lightfootlaw.com*
Mattthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice*)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice*)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant**
**The New York Times Company**

*<u>/s/ R. Matt Glover (w/ permission)</u>*
R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

Mary Virginia Buck
BUCK LAW
13112 Martin Road Spur Northport, AL 35473
Phone: (205) 752-6773
Email: bucklaw@charter.net

**Attorneys for Plaintiff**
**Kai Spears**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of July 2026, I filed the foregoing with the Clerk of Court and electronically served same to the following:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

Mary Virginia Buck
BUCK LAW
13112 Martin Road Spur Northport, AL 35473
Phone: (205) 752-6773
Email: bucklaw@charter.net

*/s/ Matthew J. Winne*
OF COUNSEL