FILED
2026 Aug-10 PM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KAI SPEARS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 23-CV-00692-ACA |
| v. | ) | |
| | ) | |
| THE NEW YORK TIMES COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S TRIAL MEMORANDUM

Defendant The New York Times Company ("The Times") respectfully submits this Trial Memorandum for the convenience of the Court, setting forth its view of the law governing the substantive claims in this case.

## LEGAL ISSUES INVOLVED IN THIS CASE

### I. Defamation

Defamation is a state-law tort limited by a body of First Amendment law. *See generally* Robert D. Sack, Sack on Defamation § 1:1 (5th ed. 2017) ("Since 1964, the history of the law of defamation has in large measure been the history of the establishment of First Amendment doctrine to govern the torts of libel and slander, and the application of that doctrine to long-established, frequently contrary, common-law principles.").

Under Alabama law, "[t]he elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)); *accord Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1998).

## II. Express Defamatory Meaning and Defamatory Implication

"Alabama law does not recognize defamation-by-implication as a distinct tort. Instead, Alabama law recognizes a single tort of defamation that can be proved through various means, such as an express defamatory meaning, 'defamatory implication,' and 'defamatory innuendo.'" *Moore v. Cecil*, 174 F.4th 862, 872-73 (11th Cir. 2026) (quoting *Finebaum v. Coulter*, 854 So. 2d 1120, 1124-25 (Ala. 2003)). [1]

[1] Defamation *per quod* is sometimes discussed as "innuendo," which is distinct from defamatory implications from the publication itself, which are defamation *per se*. As explained in Judge Sack's leading treatise on defamation law:

> Defamatory implications lead to one of the language traps that dot the defamation landscape. In common speech the words "implication," "insinuation," and "innuendo" share roughly synonymous meanings. In the law of defamation, they are critically different. "Implication" or "insinuation" connotes the understanding that the average reader may be expected to draw from the face of the communication alone. "Innuendo" refers specifically to the defamatory meaning a

As relevant here, "[d]efamation by implication occurs when a defendant juxtaposes a series of facts to imply a defamatory connection between them." *Id.* at 882 (quoting 50 Am. Jur. 2d *Libel and Slander* § 161). This means that the claimed defamation "stems not from what is literally stated but from what is implied," and because of this, "[t]he relevant legal framework for actual malice in a defamation by implication case requires clear and convincing evidence of both actual falsity and subjective intent to communicate the defamatory implication." *Id*. at 881, 882. "Showing known falsity of the implication alone is inadequate . . . because the challenged statement has defamatory and nondefamatory meanings." *Id*. at 883 (cleaned up).

Accordingly:

> in a defamation-by-implication case, the plaintiff must show by clear and convincing evidence not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant "inten[ded] to communicate the defamatory meaning" or recklessly disregarded the defamatory meaning—*i.e.*, "the defendant[ ] knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood."

---

> reader may be expected to draw from the communication because of extraneous facts known to the reader but not contained in the communication.

Robert D. Sack, Sack on Defamation § 2:4:4 (5th ed. 2017); *see also Bowling v. Pow*, 301 So. 2d 55, 59 (Ala. 1974) ("The innuendo is that part of the complaint wherein the plaintiff seeks to explain the meaning of language as defamatory, which could or would otherwise be considered as innocuous or so ambiguous or uncertain in meaning that a defamatory sense is not clearly revealed.").

*Moore*, 174 F. 4th at 883 (quoting *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90-91 (3d Cir. 2013)).

While *Moore* states the rule clearly, this is not a new requirement. In *Finebaum v. Coulter*, Alabama's Supreme Court held that the defendants were entitled to summary judgment on the plaintiff's defamation claim based on an implication theory—that the defendants had "implied that [the plaintiff] 'is a homosexual'"—because the plaintiff "did not present clear and convincing evidence that [the defendant] intended to imply that [the plaintiff] is a homosexual." 854 So. 2d at 1122, 1129. The court held that in such cases, "'[n]ot only must the plaintiff establish that the statement is susceptible of a defamatory meaning which the defendants knew to be false or which the defendants published with reckless disregard for its potential falsity, but also that the defendants intended to imply or were reckless toward the implications.'" *Id.* at 1124-25.

Because Alabama does not recognize a distinct defamation by implication tort, this two-part showing for actual malice applies to *any* defamation claim that involves the juxtaposition of words or sentences. *Moore*, 174 F.4th at 882 & n.16 ("[N]o matter whether it is phrased as the juxtaposition of words or defamation by implication, Moore's claim is in fact an implication claim.").

## III. Defamatory Meaning

As a general matter,

> [t]he foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation.

*Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003) (cleaned up). Defamation includes two distinct categories under state law. Defamation *per se* encompasses statements "which on their face and without the aid of extrinsic proof are recognized as injurious," while defamation *per quod* encompasses statements not injurious "from their face in the usual and natural signification, but only in consequence of extrinsic facts, showing the circumstances under which they were said or the damages which resulted to the defamed party therefrom." *Myers v. Mobile Press-Register, Inc.*, 266 Ala. 508, 510-11 (1957) (cleaned up); *accord Cottrell v. NCAA*, 975 So. 2d 306, 346 (Ala. 2007). When a challenged statement "is not actionable per se, it is incumbent on the plaintiff to allege special damages." *Myers*, 266 Ala. at 511. These damages "must be 'alleged, in order that the defendant may have notice thereof and be prepared to meet the same upon trial.'" *Hearn v. U.S. Bank, N.A.*, 2017 U.S. Dist. LEXIS 224778, at * 11 (N.D. Ala. July 12, 2017) (quoting *Irby v. Wilde*, 150 Ala. 402, 404-05 (1907)).

To prevail on a defamation claim, it is the plaintiff's burden to prove that the challenged statement is capable of defamatory meaning. *McCaig*, 544 So. 2d at 877. That is, not every false statement is presumptively harmful to reputation such that a claim is viable without plausibly pleading, and later proving, special damages. *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978) ("While it may be odious to berate someone in public with threats and ethnic slurs and to attack someone with epithets such as 'dead beat' and 'crook,' such questionable behavior is, nevertheless, not actionable in Alabama absent allegations of special damages.").

Rather, a communication is considered defamatory if it "subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public." *Butler*, 871 So. 2d at 16. This is a "'question of law' for the court," *Moore*, 109 F.4th at 1360 n.6 (quoting *Kelly v. Arrington*, 624 So.2d 546, 548 (Ala. 1993)), at least "in the first instance," *Harris*, 466 So. 2d at 964.

Thus, Alabama courts have held a variety of highly negative statements not to be defamatory *per se*, including allegedly false allegations that a bank officer had made a loan due to an illicit relationship with a woman, that a lawyer had "extorted" a settlement, and that a man had "abandoned his family." *Anderton v. Gentry*, 577 So. 2d 1261, 1263-64 (Ala. 1991) (oral statement that bank officer made loan due to illicit relationship not actionable *per se* because "statements made by [defendant] do not suggest actions within the definition of adultery or prostitution") (citations

omitted); *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 391 (Ala. 1999) (read in context, statement that lawyer attempted to "extort" money not defamatory *per se*); *Cottrell*, 975 So. 2d at 346 (rejecting argument that challenged "statement that [plaintiff] had abandoned his family imputed . . . indictable offenses").

"The test to be applied in determining whether a newspaper article makes a defamatory imputation is whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language." *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993); *see Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1149 (N.D. Ala. 2022) (applying Alabama law and finding that "the proper legal test asks what the average lay person would impute from the statement at issue about a plaintiff").

Alabama jurisprudence has long provided that when analyzing an allegedly defamatory statement, "the printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them." *Loveless v. Graddick*, 295 Ala. 142, 148 (1975) (quoting *McGraw v. Thomason*, 265 Ala. 635, 93 So. 2d 741 (1957)). This is a "lay reader" standard: "*A forced construction is not to be put upon them . . . , nor are they to be subjected to the critical analysis of a trained legal mind*, but must be construed and determined by the natural and probable effect on the mind of the average lay reader." *Id.* (emphasis added); *see also Camp v. Yeager*, 601 So. 2d

924, 927 (Ala. 1992) (the question for the jury is what "idea [the statement] convey[ed] to those who heard and saw it," and not the "effect" it had once "subjected to the critical analysis of a trained legal mind.").

## IV. Material Falsity

In 1986, the U.S. Supreme Court held that "where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false." *Phila. Newspapers v. Hepps*, 475 U.S. 767, 768-69 (1986); *accord Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 n.6 (11th Cir. 1987) (recognizing that in *Hepps*, "the Supreme Court held that the burden of showing falsity in a defamation action against a media defendant must always lie with the plaintiff"). The Supreme Court acknowledged this conflicted with "the common law's rule on falsity—that the defendant must bear the burden of proving truth," but explained that "the Constitution requires us to tip [the scales] in favor of protecting true speech" on matters of public concern by placing the burden of proving falsity on all plaintiffs, including private figure plaintiffs, in matters involving speech of public concern. *Hepps*, 475 U.S. at 776-77. "To do otherwise could only result in a deterrence of speech which the Constitution makes free." *Id.* at 777 (cleaned up).

In this context, "falsity" as a legal matter means material falsity. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). Material falsity (sometimes

also referred to as "substantial truth") is a term of art that requires the fact finder to determine whether a statement, if entirely accurate, would result "in a material change in the meaning conveyed by the [published] statement." *Id*. In such an evaluation, the question is whether "the substance, the gist, the sting," of the allegedly defamatory statement is "justified." *Id*.; *see also Alabama Ride Co. v. Vance*, 235 Ala. 263, 266 (1938) (where a publication is "substantially true . . . in all respects material the plea of truth was sustained and this was a complete defense to the action." (cleaned up)). Pursuant to the rule of material falsity, liability is incurred only when the inaccurate statement would create "'a different effect on the mind of the reader" from that which the truth would have produced. *Masson*, 501 U.S. at 517 (quoting R. Sack, Libel, Slander & Related Problems 138 (1980)). Stated another way, the question is whether the "gist" or "sting" of a statement is true. *Parekh v. CBS Corp.*, 820 F. App'x 827, 834 (11th Cir. 2020).

Under this standard, even statements that are literally false may not be actionable if they are not *materially* false. *Id*.; *see also Berisha v. Lawson*, 973 F.3d 1304, 1316 (11th Cir. 2020) (none of the allegedly inaccurate statements in the book "undermine . . . the book's core claims about Berisha"); *Drill Parts & Serv. Co.*, 619 So. 2d at 1290 (affirming defense judgment "[b]ecause we conclude that a jury, when reading these articles in their entirety, could not find that they conveyed a false meaning").

## V. Proof Standards for a Private Figure Where Challenged Speech Relates to a Matter of Public Concern

### A. Liability Standard

In *Gertz v. Robert Welch*, the Supreme Court held "that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. 323, 347 (1974). Alabama has adopted a negligence standard for private-figure defamation claims. *Mead Corp. v. Hicks*, 448 So. 2d 308, 313 (Ala. 1983) ("The plaintiff must prove by a preponderance of the evidence that the defendant was negligent in making the statement."); *see also Moore*, 109 F.4th at 1365 (defamation under Alabama law requires "fault amounting at least to negligence" (quoting *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003)).

Under this negligence standard, "defendants who made false defamatory statements about private figures may be held liable if their conduct created an unreasonable risk of harm to the plaintiff." *Mead*, 448 So. 2d at 312.

> In determining whether the defendant acted as a reasonable, prudent person under the circumstances in publishing the defamatory communication the finder of fact may take into account the thoroughness of the check that a reasonable person would make before publishing the statement, the nature of the interests that the defendant was seeking to promote in publishing the statement, and the extent of damage to which the statement exposed the plaintiff's reputation.

*Id.*

As the Restatement explains, the conduct that matters for purpose of negligence are those of the publisher *prior to* publication:

> [T]he question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true. Putting the question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity of defamatory character of the communication *before publishing it*.

RESTATEMENT (SECOND) OF TORTS § 580B, cmt. G (1977) (emphasis added). This is the law in Alabama. *Mead*, 448 So. 2d 312 ("[T]he finder of fact may take into account the thoroughness of the check that a reasonable person would make *before publishing the statement.*") (emphasis added). Courts around the country recognize this same standard. *See, e.g.*, *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978) ("[T]he appropriate question … is whether the defendant exercised reasonable care and caution in checking on the truth or falsity and the defamatory character of the communication *before publishing it*.") (emphasis added); *accord Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371, 375 (6th Cir. 1981); *see also Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 883-84 (Minn. 2019) (nonprofit did not act negligently by failing to conduct an investigation of statements *before publication*) (emphasis added).

### B. Standard to Recover Presumed or Punitive Damages

In *Gertz*, the U.S. Supreme Court also held that a private-figure defamation plaintiff whose claim is based on speech regarding a matter of public concern is

limited to recovery of *actual damages*, regardless of a lesser burden for liability, unless the plaintiff establishes constitutional actual malice. 418 U.S. at 349 ("[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."); *see also Nelson*, 34 So. 2d at 1095 ("A 'defamed' plaintiff . . . whose case involves matters of public concern must prove, by clear and convincing evidence, that the defamatory communication was made with *Sullivan* actual malice – that is, 'with knowledge that it was false or with reckless disregard of whether it was false or not[]'" in order to recover "presumed and punitive damages."). Thus, the Alabama Supreme Court reversed a trial verdict where a jury instruction regarding entitlement to presumed damages in a defamation absent a showing of actual malice, finding it "patently unconstitutional in view of the explicit directions of *Gertz*." *Beneficial Management Corp. v. Evans*, 421 So. 2d 92, 96-97 (Ala. 1982). Alabama has codified this requirement by statute. Ala. Code § 6-5-186 (outlining two requirements for recovery of punitive damages in defamation cases, including a statement of actual malice).

The rationale for the legal standard is to limit damages for negligent defamation to those that are compensatory. The Supreme Court explained in *Gertz* that "the doctrine of presumed damages invites juries to *punish* unpopular opinion rather than to compensate individuals for injury sustained by the publication of a

false fact." 418 U.S. at 349 (emphasis added). Punitive damages, meanwhile, "further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996); *see Johnson Pub. Co. v. Davis*, 124 So. 2d 441, 450 (Ala. 1960) ("The punishment by way of damages is intended not alone to punish the wrongdoer, but as a deterrent to others similarly minded.").

While the First Amendment requires constitutional actual malice for either presumed or punitive damages when challenged publications relate to a matter of public concern, states may require additional proofs—and many do for punitive damages. Federal courts in the Eleventh Circuit therefore look to state law to determine whether additional showings are required. *Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. 1983) ("Many states do not permit punitive damages unless the plaintiff can show that the defendant entertained 'common law' or 'express' malice. Common law malice differs substantially from the *New York Times* definition of actual malice. The former focuses on the defendant's feelings toward the plaintiff while the latter goes to the defendant's knowledge of the truth or falsity of a publication about the plaintiff.").

Alabama requires, "in any civil action, except civil actions for wrongful death," that a plaintiff prove "by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with

regard to the plaintiff." Ala. Code § 6-11-20. So, while a private-figure plaintiff in Alabama asserting a claim over a statement relating to a matter of public concern can recover presumed damages upon clear and convincing proof of constitutional actual malice, to recover punitive damages such a plaintiff must prove *both* constitutional actual malice and common law malice as defined by statute.

**i. Actual Malice**

In the First Amendment context, actual malice is a term of art that does not denote personal spite or ill will, but, rather, that the defendant published the statement either with knowledge that it was false, or with reckless disregard of its likely falsity. *Moore*, 174 F.4th at 881 (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F4th 1247, 1252 (11th Cir. 2021)); *Dershowitz v. CNN, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025) ("[A]ctual malice [should not] be confused with evil intent or a motive arising from spite or ill will. . . Speakers' feelings about their subjects are irrelevant—all that matters are the speakers' subjective beliefs about the truth of their own statements." ((cleaned up)); *see also see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Actual malice is measured for individuals responsible for the challenged publication. *New York Times v. Sullivan*, 376 U.S. 254, 287 (1964) ("The mere presence of the [contrary] stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought

home to the persons in the Times' organization having responsibility for the publication[].")

Like negligence, actual malice is evaluated *at the time of publication*. *Sullivan*, 376 U.S. at 286; *Hunt*, 720 F.2d at 647 ("The test of actual malice . . . focuses on the defendant's state of mind *at the time of publication*." (emphasis added)). Thus, where "allegations casting doubt on the reliability of . . . sources relate only to events that occurred after publication of the Article," they "cannot be relevant to the publisher's state of mind [regarding] his alleged malice at the time of publication." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (internal quotations omitted); *see also, e.g.*, *cFarlane v. Sheridan Square Press*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) (actual malice must "necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication"). As a federal court in the Eleventh Circuit concluded:

> The statement of an ABC employee that the legal department thought after the broadcast that it might contain libelous material does not, without more, prove that defendants had such thoughts at the time the segment was aired, which is the critical time for purposes of establishing actual malice.

*Silvester v. Am. Broad. Cos., Inc.*, 650 F. Supp. 766, 779 (S.D. Fla. 1986), *aff'd*, 839 F.2d 1491 (11th Cir. 1988).

Precisely because state of mind is evaluated at time of publication, a failure to retract "does not indicate malice at the time of the publication." *Sullivan*, 376 U.S.

at at 287. Indeed, the Supreme Court held that where a reporter "had made a mistake and when confronted with it, he refused to admit it and steadfastly attempted to maintain that no mistake had been made—that the inaccurate was accurate," such circumstances are not evidence of actual malice because they "do[] not establish that he realized the inaccuracy *at the time of publication*." *Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S. 485, 512 (1984) (emphasis added). As such, the Eleventh Circuit has recognized that "[i]t is also clear the failure to retract or correct a falsehood does not prove actual malice." *Hunt,* 720 F.2d at 643 n.19.

Moreover, the standard is "not an objective one," and therefore the beliefs or actions of a hypothetical reasonable person are irrelevant. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702-03 (11th Cir. 2016) (citing *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)). As such, "a failure to investigate, standing on its own, does not indicate the presence of actual malice." *Michel*, 816 F.3d at 703 (citing *Hart-Hanks*, 491 U.S. at 692). Similarly, a finding of actual malice "requires more than a departure from reasonable journalistic standards." *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999). This is because "we focus only on the defendant's actual state of mind." *Moore*, 174 F.4th at 811. Courts ask whether the defendant himself or herself actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false. *Silvester v. ABC*, 839 F.2d 1491, 1493 (11th Cir. 1988).

In order "to establish actual malice by clear and convincing evidence," the plaintiff must produce "more evidence than just the jury's disbelief of [defendant's] witnesses." *Moore*, 174 F.4th at 885. Evidence tending to show actual malice can include "fabrication by the defendant" or reliance "wholly on an unverified anonymous telephone call," *St. Amant*, 390 U.S. at 732. Several categories of evidence weigh against a finding of actual malice, including (1) "[a] defendant's efforts to verify the accuracy of its statements," *Moore*, 174 F.4th at 887; *accord Michel*, 816 F.3d at 704; (2) inclusion of contrary information so readers can "weigh for themselves the likelihood of a statement's veracity," *Moore*, 174 F.4th at 886; (3) review of public filings or records, *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *17 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016).

Finally, in a defamation-by-implication claim, actual malice "does not flow from a finding" that the allegedly defamatory statement "may be capable of supporting the impression the plaintiff claims." *Moore*, 174 F.4th at 885. "Simply because a statement reasonably can be read to contain a defamatory inference does not mean that the publisher of the statement either intended the statement to contain such a defamatory implication or even knew the readers could reasonably interpret the statements to contain the defamatory implication ." *Id.* (quoting Saenz v. Playboy Enters., Inc., 841 F.2d 1309, 1318 (7th Cir. 1988). Thus, where a statement "*could*

convey the implication" about a plaintiff, "that fact is not clear and convincing evidence that [the defendant] intended that implication or recklessly disregarded that the [statement] conveyed that implication." *Id.* (emphasis in original) (ordering district court to enter judgment in favor of defendant on defamation-by-implication claim). *See generally* Doc. 273 (Response Br. on Defamation by Implication by Defendant The New York Times Company).

## VI. Damages

### A. Actual Damages

The Supreme Court in *Gertz* found no need to "define 'actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions." 418 U.S. at 350. The Court continued:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury."

*Id*. at 350.

In defamation cases, actual damages typically include (a) provable financial losses, sometimes called "special damages" or "pecuniary damages"; (b) provable harm to reputation, often based on expert analyses; and (c) physical and emotional damages. *See, e.g.*, Sack on Defamation § 10:3.2.

An Alabama appellate court has echoed *Gertz*, noting that "in establishing actual damages, plaintiff is not limited to out-of-pocket loss but may show mental anguish and other traditional tort measures of actual damages. *Prudential Ins. Co. v. Watts*, 451 So. 2d 310, 313 (Ala. Ct. App. 1984). As that court explained, the record in that matter was "replete with evidence from which the jury could conclude that the statements made by Prudential were embarrassing and humiliating, and caused [plaintiff] mental suffering." *Id*.

As to recovery of actual damages for "mental anguish," the Alabama Supreme Court explained that "the presence of physical injury or physical symptoms is not a prerequisite for a claim for damages for mental anguish. The plaintiff is only required to present some evidence of mental anguish, and once the plaintiff has done do, the question of damages for mental anguish is for the jury." *Liberty Nat'l Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 163 (Ala. 2002). In that case, the Plaintiff testified to having received 25-30 telephone calls as a result of the defamatory statement and "develop[ed] high blood pressure, became very irritable, [] felt terrible," harmed his relationship with his wife, and could not sleep, all over a period of two years. *Id.* As the court went on to say, however, while "[t]he testimony of a witness is admissible to prove that he or she suffered mental anguish . . . we give stricter scrutiny to an award of damages for mental anguish where the victim has

offered little or no direct evidence concerning the degree of suffering he or she has experienced." *Id*.

### B. Presumed and Punitive Damages

Where presumed damages are available because a plaintiff has proved constitutional actual malice, challenged statements "are deemed to be injurious as a matter of law, and damages are presumed," and a jury may enter an award on this basis. *Drummond Co. v. Collingsworth*, 2026 U.S. Dist. LEXIS 121959, *62-63 (N.D. Ala. June 2, 2006) (citing *Tanner v. Ebbole*, 88 So. 3d 856, 863 (Ala. Civ. App. 2011)).

For an award of punitive damages in Alabama, in addition to constitutional actual malice a plaintiff must also prove, "by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff," as those terms are defined in by statute:

> **(1)** **Fraud.** An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.
>
> **(2)** **Malice.** The intentional doing of a wrongful act without just cause or excuse, either:
>
> > **a.** With an intent to injure the person or property of another person or entity, or
> >
> > **b.** Under such circumstances that the law will imply an evil intent.

> **(3)** **Wantonness.** Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.
>
> …
>
> **(5)** **Oppression.** Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights.

Ala. Code § 6-11-20(b).

Once a plaintiff proves he is entitled to punitive damages, any such award must comply with several statutory and constitutional limits.

*First*, Alabama Code § 6-11-21(a) imposes a cap on punitive damages in civil actions, including in defamation cases. *See Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 893 (Ala. 2004) (noting that the trial court analyzed the punitive damages award in light of § 6-11-21). It provides that "no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater." Ala. Code. § 6-11-21(a).

*Second*, Alabama Code § 6-5-183 provides that, in defamation cases, "the truth of the words spoken or written or the circumstances under which they were spoken or written may be given in evidence under a general denial in mitigation of the damages." Accordingly, courts *may* limit or reduce awards of punitive damages when there is "some element of truth" in a defamatory statement or "some" of the challenged statements are true. *Johnson Pub. Co.*, 124 So. 2d at 453 (reducing damages award to $45,000 from $67,500); *see Slack v. Stream*, 988 So. 2d 516, 533

(Ala. 2008) (describing the reduction of the punitive damages award in *Johnson Publishing Co.* as limited to defamation cases).

*Finally*, any award of punitive damages must comply with the Due Process Clause of the Fourteenth Amendment. *See generally BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). The Supreme Court in *Gore* "instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

## VII. False Light Invasion of Privacy

Under Alabama law, a plaintiff pleading a cause of action for false light invasion of privacy "must show that (1) 'the defendant gave publicity to a matter concerning another that places the other before the public in a false light,' (2) 'the false light in which the other was placed would be highly offensive to a reasonable person, and (3) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Moore*, 174 F.4th at 881 (quoting *Flickinger v. King*, 385 So. 3d 504, 517 (Ala. 2023)).

A statement is highly offensive "only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.[2] If a statement, "when read in context," "does not impute any wrongdoing," then even if the statement is false it is not "highly offensive." *Id.*; *see also Flickinger v. King*, 385 So. 3d at 518 (statement alleging that person was "racist" was not "highly offensive" for purposes of false light tort.). That is, "only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position . . . is there a cause of action for invasion of privacy." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.

In addition, a plaintiff pleading a claim for false light must prove by clear and convincing evidence that the defendant had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Regions Bank*, 897 So. 2d 244 (quoting *Butler*, 871 So. 2d at 12); *Schifano*, 624 So.2d at 180-81. This is the same "actual malice" fault standard that a public figure plaintiff must prove to prevail on a defamation claim. *See Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301, 1314 (N.D. Ala.

---

[2] Alabama adopted RESTATEMENT (SECOND) OF TORTS § 652E in *Schifano v. Greene Cty. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993).

2017); *see also Moseley v. The Birmingham News Co.*, 1990 WL 300846 at *4 (Ala. Cir. Ct. Oct. 5, 1990) ("Moseley's false light and defamation claims are essentially identical. . . To insure that the constitutional safeguards of defamation law are not circumvented, the Court will analyze Moseley's false light claim as if it were a defamation claim.").

Dated: August 10, 2026

Respectfully submitted,

*/s/ Matthew J. Winne*
Michael L. Bell
*mbell@lightfootlaw.com*
John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice*)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice*)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant**
**The New York Times Company**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 10th day of August 2026, I filed the foregoing to the Clerk of Court and electronically served same to the following:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

Mary Virginia Buck
BUCK LAW
13112 Martin Road Spur Northport, AL 35473
Phone: (205) 752-6773
Email: bucklaw@charter.net

*/s/ Matthew J. Winne*