FILED
2026 Aug-16 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KAI SPEARS,** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **NO. 7:23-CV-00692-ACA** **OPPOSED** |
| **THE NEW YORK TIMES CO.** | * | |
| **Defendant.** | * | |

**PLAINTIFF KAI SPEARS' BRIEF REGARDING HOW TO CHARACTERIZE THE UPDATES TO THE SUBJECT ARTICLE**


R. Matt Glover
Prince Glover Hayes
2311 University Blvd Suite A
Tuscaloosa, Alabama 35401
(205) 345-1234
mglover@princelaw.net

Stephen P. New
*Pro Hac Vice*
Stephen New and Associates
P.O. Box 5516
430 Harper Park Drive
Beckley, WV 25801
Phone: (304) 250-6017
steve@newlawoffice.com

M. Virginia Buck
Attorney at Law
13112 Martin Rd. Spur
Northport, AL 35473
(205) 752-6773
bucklaw@charter.net

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Table of Citations ........................................ ii

Introduction ........................................ 1

Relevant Factual Background ........................................ 1

Argument ........................................ 2

Conclusion ........................................ 9

Certificate of Service ........................................ 10

# TABLE OF CITATIONS

**Cases**

*Braig v. Field Communications*,
456 A.2d 1366 (Pa. Super. 1983) ........................................................................6

*Firth v. State*,
98 N.Y.2d 365, 369, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002) ...........................3

*Gray v. WALA-TV*,
384 So.2d 1062 (Ala. 1980) ...........................................................................6, 8

*Holter v. WLCY T.V., Inc.*,
366 So.2d 445 (Fla. 2nd DCA 1978)....................................................................7

*Poff v. Hayes*,
763 So.2d 234 (Ala. 2000) ...................................................................................4

**Other Authorities**

50 Am. Jur. 2d Libel and Slander §461 ..................................................................2

53 C.J.S. Libel and Slander; Injurious Falsehood §98 .........................................3, 4

Rodney A. Smolla, 1 Law of Defamation § 1:27.50 §3:85 (2d ed.).........................5

## INTRODUCTION

This Court has indicated from the bench that it believes the updates to the subject article do not constitute "republications" for purposes of the doctrine that holds that a republication of a falsehood after learning of contradictory information is evidence of actual malice at the time of the republication.

Plaintiff has concerns that some confusion may have been created by a line of cases dealing with the "single publication rule" which analyzes the question of what constitutes a "republication" that would create a new lawsuit with a new statute of limitations, which is not an issue in this case.

Because both Parties have urged this Court that, under the circumstances of this case, a jury can determine actual malice as of the time of the last update to the article which continued to assert the false information about Spears, Spears would like to provide this Court with the following further briefing on this issue.

## RELEVANT FACTUAL BACKGROUND

The subject article falsely placing Spears at the scene of a shooting in the car which delivered the murder weapon was first published online on March 15, 2023 at 7:10 PM CT. UA responded within the hour informing Witz his story inaccurately reported Spears' presence at the scene of the shooting. (Tr. Aug. 10, p. 66). By the next day, Spears, his father, and his attorney had publicly denied the report as had

UA Athletic Director Greg Byrne. (Tr. Aug. 10, p. 110; Tr. Aug. 11, pgs. 48-49, 144).

As The Times has acknowledged, following the initial publication of the subject article, "The Times subsequently ***published*** three updates to the Article to include a denial from University of Alabama representative Jessica Paré (at 11:22 p.m. CT on the 15th), a denial from Christian Spears (at 3:09 p.m. CT on March 16), and a denial from University of Alabama Athletic Director Greg Byrne (at 3:57 p.m. CT on March 16)." (Doc. 210 at 1)(emphasis added). However, all three of the subsequent publications continued to falsely report that Spears was the passenger in question.

## ARGUMENT

As Spears has previously pointed out to this Court in earlier briefing on this issue,

> Proof tending to show that the defendant ***repeated or republished*** the defamation complained of is admissible to show malice. ***Republication after receiving notice of the potential falsity*** of the initial publication ***is relevant*** in a defamation case to a determination of actual malice in the initial publication ***as well as the republication***.

50 Am. Jur. 2d Libel and Slander §461 (emphasis added).

This Court has indicated from the bench that the updated and republished articles are not "republications" within the meaning of ***this*** doctrine. While the Court did not elaborate, it seemed the Court based that conclusion on the fact that there

were not significant changes to the article. Spears would respectfully contend that for purposes of ***this*** doctrine, the fact that only minor changes were made to the updates is irrelevant to the issue of whether the updates are "republications" for purposes of whether the jury is permitted to determine whether there was actual malice at the time of the updates.

Spears would first point out that there can be some confusion in this area of the law since cases and legal treatises have used the word "republication" to mean two different things in two different contexts. The issue of what constitutes a "republication" in defamation cases most frequently arises when a plaintiff has missed the statute of limitations and argues that a subsequent publication or update provides an entirely new cause of action for defamation. This involves a somewhat complicated doctrine (which is fortunately not at issue in this case) called the single publication rule. "The single publication rule, adopted in whole or in part in a number of jurisdictions, generally permits no more than a single cause of action based on any single mass media publication." 53 C.J.S. Libel and Slander; Injurious Falsehood §98. The court in *Firth v. State*, 98 N.Y.2d 365, 369, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002) noted that the rule benefits both plaintiffs and defendants because it protects defendants from multiple lawsuits and also "reduces the possibility of hardship to plaintiffs by allowing the ***collection of all damages in one***

***case***[.]" 775 N.E.2d at 465 (emphasis added) It also means that the statute of limitations begins to run from the date of the initial publication.

However, there is a "republication" exception to the single publication rule which is often invoked by plaintiffs who have missed the statute of limitations: "Under the republication exception to the single publication rule in a defamation case, any future republication of the alleged false statements could form the basis for a new defamation cause of action against the republisher." 53 C.J.S. Libel and Slander; Injurious Falsehood §98. Courts frequently wrestle with what constitutes a "republication" for purposes of ***this*** rule. In *Poff v. Hayes*, 763 So.2d 234 (Ala. 2000), the court recognized that in Alabama, "'repetition or ***republication*** of [an] ***identical*** libel [and slander] is ***not a new cause of action*** for which a separate suit may be maintained, ***but*** is merely an aggravation of the pre-existing cause, and in proper cases ***may tend to show actual malice***.'" (quoting *Age–Herald Publ'g Co. v. Huddleston*, 92 So. 193, 197 (1921)(emphasis added).

The court in *Wolsfelt v. Gloucester Times*, 155 N.E.3d 737 (Mass. Ct. App. 2020), in applying the single publication rule to internet publications, found that for purposes of ***this*** rule, an update to an internet publication which made only minor changes would not constitute a "republication" that would create an entirely new cause of action with a new statute of limitations.

The present case, however, does not involve the question of what constitutes a "republication" for purposes of the exception to the single publication rule. Spears brought this action well within the statute of limitations and is properly seeking all resulting damages in one action. This case involves an entirely different issue. The question in this case is what consideration a jury in a defamation case can give to a "republication" of a falsehood after the defendant has been put on notice that the information is wrong. Spears has understood this Court to be in agreement that this can be relevant to actual malice at the time of the original publication. However, Spears would respectfully request that this Court find that the jury can also consider the question of actual malice at the time of the updates, which Spears would contend are "republications" for purpose of ***this*** rule. In the kind of context presented by the present case, courts have allowed juries to consider the state of mind of the defendant at the time of the subsequent reassertion of the falsehood:

> Sometimes a media outlet will undertake republications, reaction stories, sequels, and ***other follow-ups*** to an original story. In the interregnum period between the publication or broadcast of the original story and the follow-up or sequel, new information may come to light that may shed doubt on the accuracy of the original story. When in such a republication or follow-up story no new investigation is undertaken, despite the appearance of new reasons for doubt, actual malice may exist with regard to the sequel even if the first story was protected.

Rodney A. Smolla, 1 Law of Defamation § 1:27.50 §3:85 (2d ed.)(emphasis added).

This is true even when the subsequent reassertion of the original falsehood involves no substantive changes. For instance, as Spears has previously noted, in

*Gray v. WALA-TV*, 384 So.2d 1062 (Ala. 1980), limited on other grounds in *Nelson v. Lapeyrouse Grain Corp*., 534 So. 2d 1085, n. 3 (Ala. 1988), the court found evidence of actual malice where a television station re-reported ***identical*** defamatory allegations after denials following the first broadcast created "serious doubts" about the information. In *Gray*, a television station ran reports indicating that the plaintiffs had been paid by the City of Mobile for work on a contract it failed to perform. Following the initial broadcast, one of the plaintiffs informed the news director of the station that the report was inaccurate. In response, the station conducted further investigation, including contacting various officials at City Hall. Subsequently, the plaintiff's attorney sent a letter to the news director informing him the broadcast was inaccurate. Additionally, a city commissioner issued a statement which contradicted the station's report. Nonetheless, the station "***continued with its version of the story***." 384 So.2d at 1066 (emphasis added). The court found under these facts, "Whether the defendant entertained serious doubts as to the truth of these broadcasts is a question peculiarly suited for a jury determination." *Id*.

Similarly, in *Braig v. Field Communications*, 456 A.2d 1366 (Pa. Super. 1983), a television statute "'published' a television program entitled 'On Target—The Bowe Case', which was taped on September 10, 1979, broadcast on September 23, 1979, at 11:30 p.m., and rebroadcast ***without change*** on September 29, 1979, at 10:00 a.m." 456 A.2d at 1368 (emphasis added). The second broadcast occurred

notwithstanding the fact that information came to the attention of the station manager which caused him to doubt the accuracy of the report after the first broadcast. The plaintiff who was the subject of the false report brought a defamation action against the station. On appeal from summary judgment, the plaintiff did "not contend that he could establish actual malice on the part of [defendant] as a result of the initial broadcast,"[1] but that there was "evidence of actual malice on the basis of what transpired between the original broadcast and the rebroadcast on September 29, 1979." *Id*. at 1376. The appellate court found, "Viewing the evidence in the light most favorable to the plaintiff, we agree." *Id*. The court explained, "A jury should decide [the station manager's] 'state of mind' in deciding to ***rebroadcast*** the program." *Id*. (emphasis added). The court noted that based on the station manger's conduct after the first broadcast but before the second broadcast, "A jury could properly infer that he had 'serious doubts' concerning the truth of the statements" but "wanted to air the program a second time, despite 'serious doubts.'" *Id*.

Likewise, in *Holter v. WLCY T.V., Inc*., 366 So.2d 445 (Fla. 2nd DCA 1978), a television station broadcast a story at 5:30PM with allegations about the plaintiff who was the mayor. Following the broadcast, the mayor contacted the reporter who was responsible for the story and denied the report. The reporter contended that

[1] Spears believes that in the present case there is evidence of actual malice both at the time of the initial publication and the "republications" or "updates."

"this telephone call was the first instance in which it occurred to him that a 'mix-up' could possibly be afoot," and "conceded that he felt that there remained a lot of investigative work to be done." 366 So.2d at 448. Yet the station rebroadcast the ***same*** story again at 11:00 PM. *Id*. at 449. In finding that the question of actual malice was for the jury, the court noted the reporter "should certainly have had doubts prior to the 11:00 p.m. newscast." *Id*. at 453.

There is no principled basis on which the present case can be meaningfully distinguished from *Gray v. WALA-TV* and these other cases. The Times, after being told by multiple sources that the information about Spears was false, made changes to the article but chose to leave the false information about Spears in the article before making the conscious decision to publish that false information three more times. While a jury could find actual malice at the time of the original publication based on any number of factors, including a grossly inadequate investigation, they could also easily find that The Times had serious doubts by the time it published the information again the third time. This conduct cannot be meaningfully distinguished from the decision of the defendants in the above cases to rebroadcast information after being confronted with information which created doubts. As was true in those cases, the jury in this case should be permitted to determine whether actual malice existed not only at the time of the initial publication but, additionally or alternatively, at the time of the last update which reasserted the false information about Spears.

Spears is certainly not going to contend that the law is clear on this point. But it is important to note that The Times has ***agreed*** that, under the circumstances of this case, actual malice should be determined from the time of the last update, which contained the false information, 3:57 PM March 16, 2023.[2] With both Parties agreeing to this, and with the above case law supporting this analysis, Spears would respectfully request that this Court grant both Parties what they have asked for and permit the jury to consider whether actual malice existed at the time of the 3:57 PM March 16, 2023 update.

## CONCLUSION

For the reasons stated herein, Spears would urge this Court to permit the jury to consider the existence of actual malice at the time of the March 16, 2023, 3:57 PM update to the subject article.

Respectfully submitted this 16th day of August 2026.

/s/ R. Matt Glover (asb-7828-a43g)
R. MATT GLOVER
PRINCE GLOVER HAYES
2311 University Blvd Suite A
Tuscaloosa, Alabama 35401
Phone: (205) 345-1234
Email: mglover@princelaw.net

[2] Spears is not waiving his argument that actual malice can also be found from the subsequent "stands by our reporting" emails. This brief only addresses whether the updates constitute "republications" for purpose of principle of law discussed in 50 Am. Jur. 2d Libel and Slander §461.

/s/ Stephen P. New (WV Bar #7756)
STEPHEN P. NEW
Attorney for Plaintiff
STEPHEN NEW AND ASSOCIATES
P.O. Box 5516
430 Harper Park Drive
Beckley, West Virginia 25801
Phone: (304) 250-6017
Email: steve@newlawoffice.com

/s/ M. Virginia Buck (asb- 7341-C58M)
M. VIRGINIA BUCK
Attorney at Law
Attorney for Plaintiff
13112 Martin Rd. Spur
Northport, AL 35473
(205) 752-6773
Email: bucklaw@charter.net

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on Aug. 16, 2026. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ R. Matt Glover*
R. MATT GLOVER