FILED
2026 Aug-19 PM 12:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| KAI SPEARS,<br><br>Plaintiff,<br><br>v.<br><br>THE NEW YORK TIMES COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>23-CV-00692-ACA |

**DEFENDANT THE NEW YORK TIMES COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant The New York Times Company ("The Times") respectfully submits this memorandum of law in support of its renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).

## PRELIMINARY STATEMENT

For the same reasons set forth in the Rule 50(a) motion by The Times, Doc. 284, and oral argument thereon, The Times hereby renews its motion for judgment at the close of evidence. The evidentiary record in his case provides no legally sufficient basis for a reasonable jury to find for Plaintiff Kai Spears on either his claim for false light invasion of privacy or his defamation claim, or, in the alternative, limits recovery for such claims, for several discrete reasons:

*First*, Spears has failed to present clear and convincing evidence of actual malice fault, as is necessary for a jury to find for him on his false light claim. The failure is twofold. There is no clear and convincing evidence that, at the time of publication of the Article, the individuals at The Times responsible for the Article, reporter Billy Witz and his editor Oskar Garcia, had a subjective awareness that they were publishing false information. There is also no clear and convincing evidence that Witz or Garcia were *aware* of the false light or defamatory meaning alleged here—that the Article did not just incorrectly portray Spears as a potential victim but as someone reprehensibly involved in the events of the shooting—and *intended* to convey that meaning.

On this basis, defense judgment is warranted for the false light claim, and Spears's defamation claim should be narrowed to potential recovery of actual damages.

*Second*, Spears has failed to establish that the Article conveys the defamatory or highly offensive meaning alleged by Spears.

On this basis, defense judgment is warranted for both claims.

*Third*, any reasonable meaning conveyed by the Article about the connection between Spears and teammates who were at the scene of the shooting is not materially different than what the evidence reveals actually happened the evening of

January 15, 2023. As such, Spears cannot meet his burden of establishing material falsity.

On this basis, defense judgment is warranted for both claims.

*Fourth*, in the absence of actual malice, a defamation plaintiff must provide evidence of actual damages. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Here, where Spears offered "little or no direct evidence concerning the degree of suffering he … has experienced," *Liberty Nat'l Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 163 (Ala. 2002), he has not met that standard.

On this basis as well, defense judgment is warranted for the defamation claim.

*Fifth*, and finally, even if the Court *were* to find clear and convincing evidence of constitutional actual malice, Plaintiff has failed to provide evidence sufficient to establish two separate statutory requirements under the Alabama Code to recover punitive damages.

On this final Rule 50 basis, defense judgment is warranted on Spears's claim for punitive damages.

## LEGAL STANDARD

Judgment as a matter of law "is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Christopher v. Fla.*, 449 F.3d 1360, 1364 (11th Cir. 2006). A court's analysis under Rule 50 "'is squarely and narrowly focused on the

sufficiency of evidence,' that is, whether the evidence is 'legally sufficient to find for the party on that issue.'" *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018) (quoting *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007)). "All reasonable inferences are drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded." *Id.*

"Nonetheless, a non-movant must present more than a mere scintilla of evidence" to survive a Rule 50 motion. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001); *see Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989) ("[T]here must be a substantial conflict in evidence to support a jury question."). Ultimately, "[a] court should deny a motion for judgment as a matter of law 'only if reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'" *U.S. Steel*, 261 F.3d at 1288 (quoting *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("[T]he trial judge *must* direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." (emphasis added)).

Where a heightened evidentiary standard applies—such as the clear and convincing standard that governs certain elements of Spears's claims here—the trial judge should apply that standard in evaluating whether the plaintiff has put forward

enough evidence. *Anderson*, 477 U.S. at 252 ("[T]he trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity.")

## ARGUMENT

### I. Spears Has Failed to Present Clear and Convincing Evidence of Actual Malice

Whether the evidentiary record supports a finding of actual malice is a question of law. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984) ("Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'"). The trial court must evaluate "whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." *Anderson*, 477 U.S. at 257 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that the standard under Rule 50 "mirrors" the standard for summary judgment outlined in *Anderson v. Liberty Lobby* "such that 'the inquiry under each is the same'").

Constitutional actual malice is a subjective standard that asks whether those responsible for publication of a challenged communication *personally believed* that

the statement at issue was false or very likely to be false but published it anyway. *Bose Corp.*, 466 U.S. at 498 (no actual malice where trial court "did not identify any independent evidence that [defendant] realized the inaccuracy of the statement, or entertained serious doubts about its truthfulness, at the time of publication"); *Berisha v. Lawson*, 973 F.3d 1304, 1316 n.8 (11th Cir. 2020) (no actual malice where plaintiff offered "no evidence that anyone at" the defendant book publisher "actually harbored doubts—let alone *serious* doubts—about the accuracy" of the challenged statements).

Whether the defendant acted with actual malice fault is evaluated at the time of publication. *Moore v. Cecil*, 174 F.4th 862, 885 (11th Cir. 2026) (quoting *Bose*, 466 U.S. at 512), *cert. pet. filed*, No. 26-122 (July 28, 2026). Courts have long made clear that evidence of "a failure to investigate, standing on its own" does not prove actual malice; "[r]ather there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

### A. Plaintiff has not presented any evidence that those responsible for publication of the Article published despite a knowledge of falsity or a purposeful avoidance of the truth

There is no evidence in the record, much less clear and convincing evidence, that at the time of publication, Witz or Garcia published the Article with knowledge that it was false or with reckless disregard of its likely falsity. *See Moore*, 174 F.4th

at 881 (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F4th 1247, 1252 (11th Cir. 2021)); *see also see also Harte-Hanks*, 491 U.S. at 666.

Witz and Garcia, as did Michael Abrams on behalf of The Times, all testified that they were confident in the reporting and that they believed the truth of the reporting, at the time of publication. *See* Tr. 124:1-12 (Aug. 10, 2026) (Abrams); Tr. 23:21-23 (Aug. 14, 2026) (Witz); Tr. 125:4-5 (Aug. 14, 2026) (Witz); Garcia Dep. 35:22-35:25 (Garcia). Plaintiff has not produced any evidence calling into question the sincere beliefs of each of the three witnesses who testified in this case on behalf of The Times.

Rather, Spears has framed this case as being about the purposeful avoidance of the truth. That standard, however, was set forth in the seminal Supreme Court case, *Harte-Hanks*, 491 U.S. 657. In that case, the Supreme Court made clear that actual malice is not a "professional standards rule," and that the standard requires "more than an extreme departure from professional standards." *Id.* at 665. Indeed, as the Court explained, "evidence of an intent to avoid the truth" must not only be sufficient to establish "an extreme departure from professional publishing standards," but also "sufficient to satisfy the more demanding *New York Times* standard of actual malice." *Id*. at 693.

In *Harte-Hanks*, the evidentiary record of a purposeful avoidance of the truth was of sufficient character to create an inference of the defendant's subjective

awareness of falsity. A newspaper learned of damaging information about a candidate its owner opposed but decided either not to speak with either the key witness or to review recordings made available by the subject of the story, and published despite denials from six other witnesses, including the plaintiff. *Id*. at 681-83. Under such extreme circumstances, an inference of subjective awareness of falsity could be established. *Id.*

No such record exists here. There is no evidence in the record suggesting that Witz failed to conduct an investigation that was so circumscribed as to give rise to an inference of a deliberate attempt to avoid the truth about whether Spears was a passenger in the car. Rather, the evidence shows that Mr. Witz took extensive "efforts to verify the accuracy" of the Article, conduct that "militates against a finding of actual malice." *Moore*, 174 F.4th at 887; *see also Michel*, 816 F.3d at 703-04 (actual malice requires "some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth" and plaintiff failed to make such a showing where "record . . . indicates that the reporters conducted some outreach and engaged in due diligence"); *Trump v. Dow Jones & Co., Inc.*, --- F. Supp. 3d ----, 2026 WL 1453673, at *7-8 (S.D. Fla. May 22, 2026) (no actual malice where newspaper reached out for comment before publication, received a denial from President Trump, and included his denial).

Witz first learned of Spears's identity on the morning of March 15, 2023 during a meeting with Source A in Tuscaloosa. Tr. 180:12-181:14 (Aug. 13, 2026); *id.* 159:1-5. Source A also provided Witz with access to surveillance footage from the shooting, photographs from the law enforcement impound lot, and a transcript from the preliminary hearing in the criminal case. *See* Tr. 163:19-165:5 (Aug. 13, 2026). Witz then immediately drove to Birmingham, *see* Tr. 183:10-11 (Aug. 13, 2026), where Spears and his team were preparing for a game the next day. Over the course of the next 10 hours, Mr. Witz interviewed or tried to obtain comment from more than 10 individuals.

Witz's first stop in Birmingham was to seek comment from Spears directly. Spears testified that he understood Witz's question to mean "how [he] felt being in the car" with Miller at the time of the shooting. Tr. 40:10-12 (Aug. 18, 2026). As Jessica Paré testified, Spears clearly understood that he had been asked about "being in the car at the time of the shooting." Tr. 59:15-17 (Aug. 10, 2026). Spears did not deny being a passenger in Miller's car; rather, he told Witz that he could not comment. Tr. 77:11-13 (Aug. 17, 2026) (Spears testifying that "I just kind of did what I was trained during the media sessions prior and just said I'm sorry, I'm not going to comment on that.").

Witz next went to Miller for comment, and Miller also responded that he could not comment on the matter. *See* Tr. 187:23-188:4 (Aug. 13, 2026).

Witz then sought comment from 10 additional possible sources of information to confirm what he had learned about Spears:

(1) The University of Alabama, including by contacting Coach Oats and Aaron Jordan, *see* Tr. 185:7-188:7 (Aug. 13, 2026); Tr. 195:8-11 (Aug. 13, 2026) (emailed questions); Tr. 196:3-13 (Aug. 13, 2026) (followed up by phone);

(2) Spears's parents Christian and Julia Spears, *see* Tr. 160:15-23 (August 12, 2026) (Christian Spears knew as early as 2:30 p.m. that someone from The Times had called to ask about his son being involved in a shooting); Tr. 8:24-9:8 (Aug. 13, 2026); Tr. 10:17-11:1 (Aug. 13, 2026) (Christian Spears decided not to call Witz back); Tr. 189:21-190:9 (Aug. 13, 2026); Tr. 192:20-194:18 (detailing how Witz called Christian Spears at least five times directly);

(3) Marshall University officials, including Rodney Casey, Cody Linn, and Grant Traylor, *see* Tr. 194:22-195:5 (Aug. 13, 2026) (Mr. Casey); Tr. 138:11-139:3 (Aug. 12, 2026);

(4) An anonymous source, Source B, who was described in testimony as "a high-level professional who had access to knowledge about the case that not very many people would have," Tr. 198:10-22 (Aug. 13, 2026); and

(5) Law enforcement, including Stephanie Taylor, the Public Information Officer for the Tuscaloosa Police Department, and Jack Kennedy from the Violent Crimes Unit, *see* Tr. 196:18-24 (Aug. 13, 2026); Tr. 200:8-14 (Aug. 13, 2026).

There was *no* evidence that Mr. Witz deliberately avoided the truth, much less the clear and convincing evidence of such an avoidance of the truth necessary to send the issue to a jury.

**B. Spears failed to prove an awareness of the defamatory meaning and an intent to convey the defamatory meaning**

As the Eleventh Circuit recently stated, when a challenged statement "has defamatory and nondefamatory meanings," the court "can no longer presume with certainty that the defendant knew they were making a defamatory statement." *Moore*, 174 F.4th at 883 (reversing denial of defendant's renewed Rule 50 motion where, as relevant here, plaintiff failed to prove the defendant's intent to defame). Rather, when a plaintiff "alleges a defamatory meaning, a defamatory implication, or a defamatory innuendo, not only must the plaintiff establish that the statement is susceptible of a defamatory meaning which the defendants knew to be false or which the defendants published with reckless disregard for its potential falsity, but also that the defendants intended to imply or were reckless toward the implications." *Finebaum v. Coulter*, 854 So. 2d 1120, 1124-25 (Ala. 2003).

That is, when a defamation claim is premised on the *meaning* of the words in a publication, the plaintiff must prove by convincing clarity "not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant "inten[ded] to communicate the defamatory meaning" or recklessly disregarded the defamatory meaning—*i.e.*, "the defendant[ ]

knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood." *Moore*, 174 F.4th at 883 (quoting *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90-91 (3d Cir. 2013)); *see Finebaum*, 854 So. 2d at 1124-25 (articulating the same standard).

Because there is more than one claimed meaning to the Article, Spears must, but has failed to, produce any evidence, much less clear and convincing evidence, that, at the time of publication, Witz or Garcia was aware that the Article would convey to the reasonable reader the defamatory meaning or false light alleged here—that Spears was reprehensibly involved in the shooting—or that they intended to convey that meaning. The evidence shows the opposite.

For example, Abrams testified that The Times believed only that Spears was "a potential witness or victim in the shooting that night." Tr. 76:4-10 (Aug. 12, 2026); *see* Tr. 64:15-19 (Aug. 12, 2026) ("Did you tell the jury in your testimony that you thought this article just portrayed Mr. Spears as a mere witness or victim? A. I believe that's what the article says or the article implies, yes."). Garcia testified by deposition that the Article does not "say that Spears was anything more than present" at the shooting. Garcia Dep. 125:15-126:15; *see* Garcia Dep. 134:16-134:17 ("I don't believe that being present at a shooting is inherently harmful."). Witz testified that the "overarching theme of the story" was "that this shooting as tragic as it was could have been far worse." Tr. 63:1-3 (Aug. 13, 2026). He confirmed that

the article's first paragraph—describing "two players were in a car struck by bullets in the crossfire"—"kind of sums up what the story was going to be about." Tr. 63:11-12 (Aug. 13, 2026). He testified that "the story had a focus and it was that this tragedy, as heartbreaking as it was, could have been far worse. There could have been more Jamea Harrises." Tr. 42:4-7 (Aug. 13, 2026).

Finally, Abrams testified that the edit to the draft article that changed the language to "a fatal January shooting that involved members" from previous versions, including one that used the word marred, "appears to be a more accurate statement. Marred could be an opinion." Tr. 73:1-12 (Aug. 12, 2026); *see also id.* at 73:21-22 ("it was an accurate description of the fatal January shooting"); *id.* at 74:2-5 (explaining that it was more accurate because "it's a statement of fact . . . whereas marred is a statement of opinion"). As Supreme Court made clear in *Bose*, when "the evidence presented merely shows that" the author is "guilty of using imprecise language in the article—perhaps resulting from an attempt to produce a readable article for its mass audience," that is insufficient evidence to establish by clear and convincing evidence that a statement was published with knowledge that it was false or with reckless disregard of whether it was false. 466 U.S. at 492.

Just as in *Moore*, where the court recognized that defendant's "detailed fact-checking of the other statements in the [publication]," combined with defendant's "failure to fact-check the veracity of the implication shows that [defendant] did not

know that the implication even existed." *Moore*, 174 F.4th at 887. As detailed above, Witz spent nearly ten hours speaking, or attempting to obtain comment from, more than a dozen people who he believed would have information regarding whether Spears was Miller's passenger in the car at the time of the shooting. There is no evidence that Witz believed he was conveying that Spears was reprehensibly involved in the shooting or that he intended to convey that meaning despite his awareness that such a meaning was false.

### C. Spears's claim for false light invasion of privacy fails as a matter of law

Because Spears has failed to present clear and convincing evidence of actual malice, his claim for false light invasion of privacy fails as a matter of law. *See Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler*, 871 So. 2d at 12); *Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 180-81 (Ala. 1993); *see also Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301, 1314 (N.D. Ala. 2017) (actual malice for purposes of false light is the same "actual malice" fault standard that a public figure plaintiff must prove to prevail on a defamation claim).

### C. Spears is not entitled to recovery of presumed and punitive damages

Further, because Spears has failed to establish actual malice by clear and convincing evidence, he is also not entitled to recovery of either presumed or

punitive damages. As this Court has recognized, Spears is a private figure, but his claims are against a media company on a matter of public concern. And as such, he must also prove constitutional actual malice to recover presumed or punitive damages. *Gertz*, 418 U.S. at 349-50. Having failed to do so, those damages are unavailable here.

* * *

For these reasons, defense judgment is warranted for the false light claim and the defamation claim should be narrowed to potential recovery of actual damages.

## II. The Article Does Not Reasonably Convey a Defamatory or Highly Offensive Meaning

Alabama law also requires a defamation plaintiff to prove that a challenged statement is capable of defamatory meaning. *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989). Because Spears failed to plead special damages, he can only prevail if the Article is defamatory *per se*. Doc. 22 (Dec. 6, 2023 Mem. Op.) at 9 (Spears failed to plead special damages).

An article is defamatory *per se* if it objectively "exposes the plaintiff to public ridicule or contempt." *Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003). Alabama courts have made clear that not every false statement is presumptively harmful to reputation. *See Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978) ("While it may be odious to berate someone in public with threats and ethnic slurs and to attack someone with epithets such as 'dead beat' and 'crook,' such questionable behavior

is, nevertheless, not actionable in Alabama absent allegations of special damages.”). The determination of whether a particular challenged statement is reasonably understood as defamatory “is a question of law for the trial court’s determination.” *McCaig*, 544 So. 2d at 878; *Cottrell v. NCAA*, 975 So. 2d 306, 346 (Ala. 2007) (same). In making this determination, courts must determine “whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language.” *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993); *see Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1149 (N.D. Ala. 2022) (applying Alabama law and finding that “the proper legal test asks what the average lay person would impute from the statement at issue about a plaintiff”).

Similarly, Alabama law requires a false light plaintiff to prove that the false light in which he was placed “would be highly offensive to a reasonable person.” *Moore*, 174 F.4th at 881 (quoting *Flickinger v. King*, 385 So. 3d 504, 517 (Ala. 2023)). A statement is highly offensive “only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.” RESTATEMENT (SECOND) OF TORTS § 652E cmt. C (1977).[1] If a statement, “when read in context,” “does not

[1] Alabama adopted RESTATEMENT (SECOND) OF TORTS § 652E in *Schifano*, 624 So. 2d at 180 .

impute any wrongdoing," then even if the statement is false it is not "highly offensive." *Id.*; *see also Flickinger*, 385 So. 3d at 518 (statement alleging that person was "racist" was not "highly offensive" for purposes of false light tort.). That is, "only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position . . . is there a cause of action for invasion of privacy." RESTATEMENT (SECOND) OF TORTS § 652E cmt. c.

Spears contends that the Article, read as a whole, *conveys* that he was reprehensibly or criminally involved in the shooting. *See* Doc. 22 (Dec. 6, 2023 Mem. Op.) at 11; Doc. 43 (March 27, 2024 Order) at 3 & n.2 ("the nature of Plaintiff's defamation claim is to prosecute the potentially false and defamatory implications of published statements"). This is not an objectively reasonable interpretation based on the evidence Spears presented at trial, entitling The Times to judgment as a matter of law on his defamation claim. Nor does the evidence Spears presented at trial show that the Article conveyed a highly offensive meaning, warranting a defense judgment on his false light claim.

At the outset, nowhere in the Article did The Times report that Spears was involved in any criminal conduct. Instead, Spears's claimed defamatory meaning hinges on the word "involved." But that is precisely the word that Spears chose to use himself, telling friends over text that he was "too involved in that stuff," that it

really "F'd" him up, that he "seen too much," and he was "right there." Tr. 35:05-36:8 (Aug. 18, 2026). Lee—the actual passenger in Mr. Miller's car—and Coach Oats also relied on the same word. *See* Lee Dep. 89:07-09 (Mr. Lee testifying that he went to a friend's house and "was like, 'Hey, you know, I was involved in something last night, you know. I'm okay.'"); Ex. 259 (Coach Oats told reporters that the shooting death of Ms. Harris had been "hard to deal with, tragic, to have any involvement in a young woman losing her life.").

While no one would assert that Spears, Lee and Oats had identical relations to the shooting, each described themselves as having been *involved* in the shooting. And as former Chief Judge Proctor made clear, "the proper legal test asks what the average lay person would impute from the statement at issue about a plaintiff, not what a trained legal mind would conclude." *Jones v. Buzzfeed*, 591 F. Supp. 3d 1127, 1149 (N.D. Ala. 2022).

On this basis, defense judgment is warranted for both claims.

## III. Mr. Spears Has Not Met His Burden of Creating a Jury Question on Material Falsity

Falsity is yet another essential element of a defamation claim and false light claim under Alabama law. *McCaig*, 544 So. 2d at 877; *Bias v. Cenlar Agency, Inc.*, 2018 WL 2365428, at *5 (N.D. Ala. May 24, 2018). When a private-figure plaintiff sues a media company over speech that is a matter of public concern, the plaintiff bears the burden of proving falsity as a matter of constitutional law. *Phila.*

*Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 n.6 (11th Cir. 1987).

In this context, a plaintiff must prove *material falsity*. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); *Ala. Ride Co. v. Vance*, 178 So. 438, 440 (1938) (where a publication is "substantially true . . . in all respects material the plea of truth was sustained and this was a complete defense to the action" (cleaned up)); *Drill Parts*, 619 So. 2d at 1290 (affirming summary judgment because a jury could not find that "substantially correct" articles "conveyed a false meaning"). Under this standard, "minor inaccuracies do not satisfy the falsity component if 'the substance, the gist, the sting, of the libelous charge be justified.'" *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1108 (N.D. Ala. 2022) (quoting *Masson*, 501 U.S. at 517) (applying Alabama law). Instead, liability is incurred only when the inaccurate statement would create "a different effect on the mind of the reader" from that which the truth would have produced. *Masson*, 501 U.S. at 517 (quoting R. Sack, Libel, Slander & Related Problems 138 (1980)).

Where, as here, Mr. Spears has failed to introduce evidence that the allegedly defamatory implication was materially false, The Times is entitled to judgment as a matter of law on both claims. *See, e.g.*, *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (a plaintiff cannot avoid the First Amendment's limitations on a defamation claim by asserting another tort); *see Moldea v. New York Times Co.*, 22

F.3d 310, 319 (D.C. Cir. 1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion."); *Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995) ("[I]t is not imaginable that [a false light claim] could escape the same constitutional constraint as [plaintiff's] defamation claim.").

Here, the Article reported that Spears was in Miller's car when it was hit with bullets. But as the evidence as revealed, Spears was, if anything, far more involved in the events of the shooting. In fact, Spears testified that when he texted a friend that he was "involved" in the shooting, he was describing a number of events:

> I mean, the whole day after that I got interviewed by Mr. Shaw. I went to the police station. We had the emotional team meeting. I had a FaceTime call with my friend, him showing me the bullet holes. I had Cooper Lee coming to my dorm room crying to me, explaining how he almost got killed, and I had all this stuff that's never in my life ever happened to me before. . . So I wasn't necessarily saying I was involved in it by any means of knowing about the shooting or having any implication that I took part in this shooting or anything like that because I had no idea there was a fight; I had no idea there was a gun in the car; I had no idea [about] any of this stuff, but I did have to deal with the aftermath that came with it and all the stuff that was required from the team and that's what I told him then.

Tr. 36:12-37:12 (Aug. 18, 2026).

In addition, before the shooting, Spears was with Miller the night of the shooting, *see* Tr. 29:6-13 (Aug. 17, 2026); tried to join Bradley (who was then with Darius Miles) at Twelve25, *see* Tr. 115:6-116:25 (Aug. 17, 2026); rode in Miller's

car about an hour before the shooting when the gun was in the car, *see* Tr. 30:18-23 (Aug. 17, 2026); was with Miller when he received a text message from Miles saying he needed his gun, *see* Tr. 124:5-125:24 (Aug. 17, 2026); almost got into Miller's car minutes before the shooting, *see* Tr. 133:6-12 (Aug. 17, 2026); and placed the FaceTime call to Bradley mere minutes before the shooting when Mr. Bradley told Mr. Miller it was "urgent" and they "need[ed]" him, *see* Tr. 130:1-133:1. By Spears's own telling, he was "too involved in that stuff," that it really "F'd" him up, that he "seen too much," and he was "right there." Tr. 35:05-36:8 (Aug. 18, 2026).

Had the Article reported all of these true facts, rather than just the mistake that Spears was in Miller's car at the time of the shooting, the alleged meaning of a connection to or involvement in the shooting would not have been materially different. On this basis, a defense judgment is warranted for both claims.

**IV. Spears Has Failed to Present Evidence of Actual Damages**

As detailed above, in the absence of actual malice in cases like this one, a defamation plaintiff must provide "competent evidence" of actual damages. *Gertz*, 418 U.S. at 350; *see also id.* (limiting recovery for private-figure defendants in defamation cases under the negligence standard to "damages as are sufficient to compensate him for actual injury"). The Supreme Court in *Gertz* declined to "define 'actual injury'" and noted:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by

> defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury."

*Id*.

In defamation cases, actual damages typically include (a) provable financial losses, sometimes called "special damages" or "pecuniary damages"; (b) provable harm to reputation, often based on expert analyses; and (c) physical and emotional damages. *See, e.g.*, R. Sack, Sack on Defamation § 10:3.2 (2107). Alabama law also requires a plaintiff to present evidence of actual damages. *See Liberty Nat'l Life Ins. Co.*, 840 So. 2d at 162-63 (plaintiff must "present some evidence of mental anguish" to collect damages for mental anguish, and Alabama courts scrutinize such awards "where the victim has offered little or no direct evidence concerning the degree of suffering he or she has experienced").

Spears has offered no evidence of any lost wages or other pecuniary harm. In fact, the evidence at trial shows the opposite: he was given a scholarship in the season after the Article was published. *See* Tr. 19:3-16 (Aug. 13, 2026) (Christian Spears testifying that, after the Article, Mr. Spears won a scholarship, received occasional playing time, and that people "rallied behind" him at games). Spears has also not produced any evidence, other than his own speculation, on reputational harm. *See* Tr. 18:25-19:2 (Aug. 13, 2026) (testimony of Christian Spears) ("Q. You

are not aware of anyone who has told you that this article made them think less of your son, are you? A. I am not aware of anyone, no."). Nor has Spears adduced any evidence that he suffered physical injuries, needed medication, or sought mental health treatment. Instead, Spears testified that: he was embarrassed by the Article, he was heckled by fans at a few basketball games, he was heckled by "fraternity dudes," and that he dropped a class. *See* Tr. 82:20-83:11 (Aug. 17, 2026) ("it was honestly kind of embarrassing" and "humiliating,"); Tr. 87:20-88:4 (heckled); Tr. 89:16-21 (Aug. 17, 2026) (heckled); Tr. 90:16-23 (Aug. 17, 2026) (heckled by fraternity dudes); Tr. 93:12-21 (Aug. 17, 2026) (dropped a class). Even by his own account, the heckling did not last, however; Spears testified that he did not have heckling issues with fans in the 2023-2024 season, and he does not recall anyone booing him in the 12 or 13 games he played that season. Tr. 49:3-23 (Aug. 18, 2026).

Spears testified that after the Article was published, none of his teammates and no one at the university told him that they thought any less of him. Tr. 50:8-14 (Aug. 18, 2026). He admitted that, other than fans when he was playing, he could not remember anyone who personally told him that they thought less of him because of the Article. *See* Tr. 51: 9-15 (Aug. 18, 2026). Christian Spears also testified that he was unaware of anyone who thought less of his son after reading the Article, as did Lee. *See* Tr. 18:25-19:2 (Aug. 13, 2026) (testimony of Christian Spears); Lee

Dep. 208:09-208:21 (testimony of Lee).[2] This testimony represents the type of "little or no direct evidence concerning the degree of suffering he … has experienced," *Liberty Nat'l Life Ins. Co.*, 840 So. 2d at 163, on a necessary element of his defamation claim. On this basis as well, defense judgment is warranted for the defamation claim.

## V. Spears Has Failed to Establish Two Statutory Requirements to Recover Punitive Damages

Under Alabama's general statute governing punitive damages, in "any civil action, except civil actions for wrongful death," a plaintiff must prove by "clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice," as those four terms are defined by statute. Ala. Code § 6-11-20(a); *see also id.* § 6-11-20(b) (definitions). No evidence in this case establishes oppression, fraud, wantonness, or malice against Spears by The Times as those terms are defined by statute. *Id.* Additionally, with regard to his defamation claim, Spears has also not proved another statutory prerequisite for punitive damages—a timely retraction demand:

> ***Vindictive or punitive damages shall not be recovered in any action for libel on account of any publication unless*** (1) it shall be proved that the publication was made by the defendant with knowledge that the matter published was false, or with reckless disregard of whether it was false or not, ***and (2) it shall be proved that five days before the***

[2] Similarly, when Lee was publicly identified as Miller's passenger, he testified that no one thought less of him. Lee Dep. 220:20-222:1.

> ***commencement of the action the plaintiff shall have made written demand upon the defendant for a public retraction of the charge or matter published***; and the defendant shall have failed or refused to publish within five days, in as prominent and public a place or manner as the charge or matter published occupied, a full and fair retraction of such charge or matter.

Ala. Code § 6-5-186 (emphases added). There is no evidence in the record proving that Spears, at any point before filing the present action, made a written demand on The Times for a public retraction of the Article. On this final Rule 50 basis, defense judgment is warranted on any claim for punitive damages.

**CONCLUSION**

For the foregoing reasons, Defendant The New York Times Company respectfully requests that the Court enter judgment in its favor, as a matter of law, because Spears has not carried his evidentiary burden of establishing his claims.

Dated: August 19, 2026 Respectfully submitted,

*/s Matthew J. Winne*
Michael L. Bell
*mbell@lightfootlaw.com*
John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (*pro hac vice*)
*bowmanchad@ballardspahr.com*
Emmy Parsons (*pro hac vice*)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant**
**The New York Times Company**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 19th day of August 2026, I filed the foregoing to the Clerk of Court and electronically served same to the following:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

Mary Virginia Buck
BUCK LAW
13112 Martin Road Spur Northport, AL 35473
Phone: (205) 752-6773
Email: bucklaw@charter.net

*/s/ Matthew J. Winne*