FILED
2026 Sep-28 PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KAI SPEARS,<br>Plaintiff,<br><br>v.<br><br>THE NEW YORK TIMES COMPANY,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>23-CV-00692-ACA |

# DEFENDANT THE NEW YORK TIMES COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR REMITTITUR

In the alternative to its Post-Verdict Renewed Motion for Judgment as a Matter of Law, The Times moves for remittitur of the jury's $1,000,000 compensatory damages award on the false light invasion of privacy claim because it exceeds the maximum amount supported by the evidence. To preserve its rights, The Times also conditionally moves for remittitur of the punitive damages award, pending the outcome of Spears's pending Rule 59(e) motion seeking to alter, amend, or vacate the Court's Final Judgment.[1]

[1] If the Court's ruling on Spears's pending Rule 59(e) motion subjects The Times to a punitive damages award in excess of three times the final compensatory damages award on the false light claim, The Times will renew and supplement this motion for remittitur and will request an evidentiary hearing pursuant to *Hammond v. City of Gadsden,* 493 So. 2d 1374 (Ala. 1986).

**STANDARD OF REVIEW**

In the Eleventh Circuit, the remedy for a damages award that is "outside the bounds of evidence is for the 'district court [to] reduce the award to the maximum amount established by the evidence.'" *Hicks v. City of Tuscaloosa,* 2016 WL 1180119, at *7 (N.D. Ala. Mar. 28, 2016) (quoting *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1268 (11th Cir. 2008)). *See also Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985) ("In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."); *Warren v. Ford Motor Credit Co*., 693 F.2d 1373, 1380 (11th Cir. 1982) (remittitur is appropriate where "the award exceeds the maximum limit of a reasonable range within which the jury may properly operate").

Punitive damages awards are subject to a *de novo* standard of review. *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001). When considering motions for remittitur of punitive damages in Alabama, courts apply the factors of *Green Oil Co. v. Hornsby,* 539 So.2d 218 (Ala. 1989) and *Hammond v. City of Gadsden,* 493 So.2d 1374 (Ala. 1986) within the framework of the guideposts of *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996). In reviewing a punitive damages award for excessiveness, the Court must explain its reasoning under the applicable review factors and "reflect in the record the reasons for interfering with a

jury verdict, or refusing to do so, on the grounds of excessiveness of the damages." *Hammond* at 1379. In addition, a defendant against whom a punitive damages award has been rendered has a right to an evidentiary hearing. *American Employers Ins. Co. v. Southern Seeding Services, Inc.,* 931 F.2d 1453, 1458 (11th Cir. 1991).

## ARGUMENT

### I. The $1,000,000 Compensatory Damages Award on the False Light Claim Should Be Remitted to an Amount Supported by the Evidence

The jury's $1,000,000 compensatory damages award on the false light claim is beyond any amount supported by the evidence and should be remitted. Spears suffered no pecuniary loss, produced not a single witness who testified that his reputation within his community had been lessened, and advanced scant evidence of mental anguish.

#### A. **No Pecuniary Loss**

Spears offered no evidence of lost wages, lost scholarship funding, or other out-of-pocket financial harm from the Article. After the Article was published, he received a full scholarship to the University of Alabama, Tr. 49:24-50:7 (Aug. 18); Tr. 13:3-11; 19:3-7 (Aug. 13), and later received a full scholarship to Marshall University, Tr. 52:19-21 (Aug. 18). He experienced more playing time after the Article was published than he did before the Article was published, Tr. 19:8-10 (Aug. 13), and people "rallied" behind him during that season, Tr. 19:11-16 (Aug. 13).

### B. Limited Evidence of Reputational Harm

There was no evidence from any witness that Spears's reputation in his community was negatively impacted by the Article, Tr. 51:1-15 (Aug. 18); Tr. 18:25-19:2 (Aug. 13), or that anyone within his social circle even believed the Article was true, Tr. 51:19-21 (Aug. 18); Tr. 14:23-15:3 (Aug. 13). No one at the University of Alabama told Spears they viewed him differently after the Article was published. Tr. 50:12-14 (Aug. 18). His family members never indicated that they felt negatively toward him after the Article was published, Tr. 51:16-21 (Aug. 18), and he consistently had the support of his family, Tr. 51:16-18 (Aug. 18); Tr. 132:5-14; 133:24-134:22; 136:12-20; 152:22-153:22; 154:17-155:11 (Aug. 12). Spears testified that his teammates "had his back," Tr. 50:8-11 (Aug. 18), and he had the university's full support, Tr. 50:12-16 (Aug. 18); Tr. 13:3-11; 19:3-7 (Aug. 13). Cooper Lee testified that he was unaware of anyone who thought less of Spears after the Article, Lee Dep. 208:09-208:21 (Aug. 17), and even Spears's father testified that the experience ultimately "made his son a better man." Tr. 146:3-11 (Aug. 12).

### C. Limited and Uncorroborated Evidence of Emotional Distress

Spears offered no evidence he suffered any physical manifestations of emotional distress, no evidence he sought mental health treatment or counseling, and no evidence that he required medication or other interventions for trauma. *See* Tr. 82:20-83:11; 87:20-88:4; 89:16-21; 90:16-23; 93:12-21 (Aug. 17). The only

evidence of emotional harm consisted of Spears testifying he was "embarrassed," was heckled by opposing fans at three basketball games during a single season, was heckled by unknown fraternity members on one occasion, and dropped one class. Tr. 82:20-83:11; 87:20-88:4; 89:16-21; 90:16-23; 93:12-21 (Aug. 17); Tr. 49:3-23 (Aug. 18).[2] While unpleasant, there was no evidence those events caused significant emotional suffering.

### D. Precedent Demonstrates that Remittitur Is Warranted Here

Damages awards supported by the type of evidence Spears introduced have been remitted. In contrast, cases in which large compensatory damages awards were affirmed have carried stronger records of demonstrable and corroborated emotional anguish. For example, in *Kmart Corp. v. Kyles,* 723 So.2d 572, 578-80 (Ala. 1998), a case concerning malicious prosecution, the Alabama Supreme Court remitted a

[2] *See, e.g.,* Tr. 82:1-4 (Aug. 17) ("Honestly, my heart kind of dropped a little bit. I was really just in—initially I was just kind of shocked that it was even posted and then I was just kind of in disbelief that my name was attached to something like that."); *id.* at 83:3-11 ("it was honestly kind of embarrassing," "humiliating," "sad," "life was cruel" and Spears "felt a little helpless"); *id*. at 88:11-14 (being called names and heckled made Spears feel "really just hurt" and it was "not a good feeling to have"); *id*., 87:20-24 (Spears was "heckled" and told that he was a "killer" and a "murderer" who "should be in jail"); *id*. at 89:16-19 (at the second game after the Article was published, Spears encountered "the same thing [he] experienced the first game," which was "a lot of heckling; people saying the same mean things to you; derogatory remarks"); *id*. at 89:21 (he felt "the same way" at the second game as he did the first game, "[i]t sucked" and was "not a good feeling"); *id.* 90:16-23 ("fraternity dudes" recognized him and were "screaming at [him] that [he was] a killer in public on The Strip"); *id*. at 91:15-16 (at the third game after the Article was published, "people [were] just heckling, saying mean remarks"); *id*. at 93:15-21 (Spears testifying that "after everything that happened[, he] was just really unfocused and…was struggling a little bit in school which is normally unusual for [him] and [he] ended up dropping out of [one] class" after a "tough" semester); *id.* at 100:8-10 (Spears felt like there was a "spotlight on [him] and it wasn't a good one at the time" and that "it never goes away").

$100,000 compensatory damages award to $15,000. There, the plaintiff was falsely accused of theft in the presence of her family and had her home searched for stolen property by sheriff's deputies, but she presented no evidence of medical expenses, sleeplessness, worry, or other psychological injury and did not testify to mental anguish; the only evidence of suffering was her husband's testimony that she cried on one occasion. Likewise, in *Delchamps, Inc. v. Bryant,* 738 So. 2d 824, 838 (Ala. 1999), another malicious prosecution case, the Alabama Supreme Court affirmed a remittitur of a $400,000 compensatory award to $100,000 where plaintiff's only testimony about mental anguish was that the experience was "hard" and that he had been "put through humiliation," but there was no corroborating evidence from family members or professionals, and no evidence of sleeplessness, loss of income, or quantifiable effects of his suffering. In *Delchamps,* the court noted that "[w]hile the virtue of stoically dismissing one's own suffering by limiting any description of it to a few terse words has its place, the courtroom is not one of them if the person suffering is a plaintiff who expects a significant award to pass judicial scrutiny." *Id.* at 838. *See also Lodge v. Kondaur Capital Corp.,* 750 F.3d 1263, 1273 (11th Cir. 2014) (holding that a plaintiff seeking substantial compensatory damages for emotional distress must show "significant" distress that is "clearly established" and rejecting claim where plaintiffs offered only generalized testimony that they were

"stressed out" without corroborating medical evidence, testimony from family or co-workers, or evidence of the duration or severity of the distress).[3]

In contrast to those cases (and this case), in *Liberty National Life Insurance Co. v. Daugherty,* 840 So. 2d 152, 167-68 (Ala. 2002), the Alabama Supreme Court upheld a $300,000 compensatory damages award in a defamation case where the plaintiff presented evidence that he received approximately 25 to 30 telephone calls from former customers informing him of the defendant's false statements about him, and that he developed high blood pressure, suffered from bouts of irritability, and experienced years of strain on his marriage as a result. And in *Cont'l Cas. Ins. Co. v. McDonald,* 567 So.2d 1208, 1221-22 (Ala. 1990), a $750,000 compensatory damages award in an outrage case was affirmed where plaintiff's treating physician characterized the defendant's conduct as causing delays that were "very detrimental" to the plaintiff's physical condition, increasing his narcotics dependency, the plaintiff presented corroborating testimony from his wife, and contemporaneous writings documented his feelings of anxiety and frustration. *Id.* at 1212-13. Here, Spears's own "conclusory statements that [he] suffered emotional distress" are simply not enough to justify the jury's $1,000,000 compensatory damages award.

---

[3] When a plaintiff suffers no physical injury and offers "little or no direct evidence concerning the mental suffering sustained as a result" of the wrongdoing, courts give "stricter scrutiny" to an award for mental *distress. National Ins. Ass'n v.* Sockwell, 829 So.2d 111, 113 (Ala. 2002).

*See Akouri v. Fla. Dept. of Transportation,* 408 F.3d 1338, 1345 (11th Cir. 2005) (emotional distress must be "demonstrable" and "sufficiently articulated;" "neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a [tort] occurred is sufficient") (quoting *Price v. City of Charlotte,* 93 F.3d 1241 (4th Cir. 1996).

The Times has located only one case from the Alabama Supreme Court affirming a compensatory damages award for emotional distress or mental anguish of this size. In *O'Rear v. B.H.,* 69 So.3d 106 (Ala. 2011), the court affirmed a $1,000,000 award against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began providing the boy with addictive prescription drugs in exchange for sex over a number of years, resulting in the boy becoming a drug addict, dropping out of school, being incarcerated, and suffering severe emotional distress and mental anguish. *E.g., id.* at 116-17. The facts of this case are, obviously, not remotely comparable.

**E. The Jury's Compensatory Damages Award for False Light Cannot Be Reconciled with Its Compensatory Damages Award for Defamation**

The inconsistency of the jury's two compensatory damages awards further shows that the false light compensatory damages are excessive. The jury was instructed that compensatory damages on both claims encompassed the same

categories of harm: emotional distress, shame and humiliation, mental anguish, and harm to reputation. Tr. 10:25-11:6; 13:10-11; 20:3-15 (Aug. 20). On the defamation claim, the jury awarded $250,000 in compensatory damages, but on the false light claim, it awarded $1,000,000 in compensatory damages. There is nothing in the evidence that would justify a fourfold increase in the false light compensatory damages over the defamation compensatory damages. The same Article was at issue. The same categories of harm were recoverable. The same evidence of actual injury was before the jury on both claims. And Mr. Spears did not introduce any evidence that the harm he suffered as a result of the alleged defamation was different in degree or kind than the harm he suffered as a result of having been placed in an alleged false light. This disparity suggests that the jury did not follow the Court's instructions and the false light award was untethered from the evidence.

## II. Any Punitive Damages Award Over Three Times the Final Compensatory Damages Award for False Light Should Be Remitted.

It is The Times's position that the Court properly applied Alabama law to limit the punitive damages award to an amount equal to or less than three times the amount of a remitted compensatory damages award on the false light claim. *See* Doc. 297. However, plaintiff has challenged that ruling. *See* Doc. 294. Therefore the following arguments are advanced conditionally, to preserve The Times's rights in the event the Court grants Spears's Rule 59(e) motion.

### A. The Statutory Cap Must Be Applied to the Remitted Final Compensatory Damages Award for False Light.

Alabama Code § 6-11-21(a) provides that punitive damages "shall not exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars ($500,000), whichever is greater." The jury was only allowed to award punitive damages on the false light claim. The statutory cap should therefore be calculated based on the compensatory damages awarded only on that claim, not on the combined damages across both claims. If the Court grants The Times's motion to remit the false light compensatory award, the statutory cap should be applied to that remitted figure.

### B. A Punitive Damages Award Over Three Times the Remitted Compensatory Damages Award for False Light Would Violate Due Process

In *Gore,* the Supreme Court set forth three guideposts for evaluating whether a punitive damages award is grossly excessive: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive award and civil or criminal penalties for comparable misconduct. 517 U.S. 559, 575. The *Hammond/Green Oil* factors, which are "similar and auxiliary in many respects" to the *Gore* guideposts, are: (1) the reprehensibility of the defendant's conduct; (2) the relationship of the punitive damages award to the harm that actually occurred; (3) the defendant's profit from its

misconduct; (4) the defendant's financial position; (5) the litigation costs to the plaintiff; (6) whether the defendant has been subject to criminal sanctions for similar conduct; and (7) other civil actions the defendant has been involved in arising out of similar conduct. *Ross v. Rosen-Rager,* 67 So.3d 29, 41-42 (Ala. 2010). Should the Court's ruling on Spears's Rule 59(e) motion result in an increase in the punitive damages award above three times the amount of the final compensatory damages award for false light, the applicable *Gore* and *Hammond/Green Oil* factors weigh toward remittitur.[4]

### 1. Reprehensibility

To assess reprehensibility, the Court should consider whether: (1) the harm caused was physical, as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct was financially vulnerable; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1283 (11th Cir. 2008).[5]

---

[4] A number of the punitive damages review factors are not applicable, so will operate neutrally here and are not discussed.

[5] Illustrative Alabama cases on the reprehensibility factor include: *Tanner v. Ebbole,* 88 So.3d 856 (Ala. Civ. App. 2011) (affirming punitive damages awards of $100,000 and $10,000 in a defamation case against individual defendants who maliciously and with the intent to harm the plaintiff's business stated to potential customers and others that plaintiff, a competitor tattoo artist, had multiple sexually-transmitted diseases and used "nasty needles"); *Travelers Indem. Co. v.*

Spears did not present evidence of physical harm, nor was there an allegation that The Times disregarded his (or anyone's) health or safety. There is no evidence that Spears was particularly financially vulnerable; he immediately retained counsel to represent him against The Times and had the benefit of professional media handlers who were provided to the team, Tr. 11:17-24; 12:25-13:2; 101:19-102:3 (Aug. 13). He also had strong family support at every juncture. Tr. 133:9-16; 134:16-22; 135:5-19; 140:25-141:12 (Aug. 12); Tr. 26:10-12 (Aug. 17).

Spears's claims against The Times involve the publication of a single article, not a repeated pattern of misconduct or a series of wrongs by The Times. *See* Ex. 1. Spears did not present evidence that anyone at The Times harbored personal animus toward him or acted intentionally to place him in a false light. Tr. 23:21-23; 125:4-5 (Aug. 14); 189:14-18 (Aug. 13); Garcia Dep. 35:22-35:25 (Aug. 12). In fact, Witz testified that he had never heard of Spears prior to reporting for the Article and had no preexisting opinion about him, Tr. 180:21-181:23 (Aug. 13), nor is there evidence that Garcia knew of Mr. Spears prior to the Article. Rather, they believed they were reporting the truth about him, based on sources who were in a position to know

---

*Griner,* 809 So.2d 808 (Ala. 2001) (affirming $200,000 punitive damages award where insurers flagrantly and willfully disregarded their legal obligations when denying insured's claims); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S.1 (1991) (upholding Alabama Supreme Court's affirmance of $840,000 punitive damages award where insurance agent embezzled plaintiff's premiums, causing her health insurance to lapse without her knowledge); *Aetna Life Ins. Co. v. Lavoie,* 470 So.2d 1060 (Ala. 1984) (affirming a $3,500,000 punitive damages award where insurer refused to pay a $1,650 hospital bill, while stating in internal company documents that the bill should be paid if the insureds "act like they are going to file suit").

the facts and who had no reason to mislead. *See* Tr. 23:21-23; 132:4-5 (Aug. 14); 189:15-18 (Aug. 13); Garcia Dep. 35:22-35:25 (Aug. 12). None of Spears's witnesses contradicted Witz and Garcia's testimony regarding their subjective beliefs that the Article was true. The Times acknowledged its mistake and apologized to Spears. Tr. 157:7-17 (Aug. 13). *See also* Tr. 28:7-9 (Aug. 14).

The fifth *Gore* factor—whether the harm resulted from "intentional malice, trickery, or deceit, or mere accident," is particularly illustrative on these facts. As demonstrated in Section II of The Times's contemporaneously-filed Memorandum of Law in Support of Post-Verdict Renewed Motion for Judgment as a Matter of Law, there is no clear and convincing evidence of actual malice or common law malice in the record. Rather, the evidence showed The Times's error was an accident, Under *Gore*, such an error is not reprehensible.[6]

[6] In defamation cases from other jurisdictions, reprehensible conduct was based on much more than publishing a single article believed—mistakenly—to be accurate. *E.g.,Carroll v. Trump,* 151 F.4th 50 (2d Cir. 2025) (upholding $65 million punitive damages award where defendant engaged in a years-long, sustained defamatory campaign against plaintiff that continued throughout trial); *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612 (Tex. App.—Houston [14th Dist.], cert denied 472 U.S. 1009 (1985) (affirming $1.3 million punitive damages award where three corporate executives systematically called former employee a "crook" and "classical sociopath" to multiple audiences over a period of months); *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914 (Tex. App.—Corpus Christi 1991) (affirming $1 million punitive damages award where senior vice president told broker's clients that the broker was "going to lose his license" and was "in big trouble with the SEC" without verification); *Harvey-Jones v. Coronel,* 196 A.3d 36 (Md. App. 2018) (upholding a $200,000 punitive damages award where the defamation was based on defendant's forging public documents in order to defame the plaintiff).

**2. Ratio and Relationship to Harm Caused or Likely to Occur**

Punitive damages "should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred." *Green Oil* at 223. *See also State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 425 (2003) (noting that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process" and observing that "when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee").

As set forth in Section I, the evidence of actual harm to Spears was minimal. He had no pecuniary loss, limited reputational injury, no mental health treatment, was not prescribed medication, and his emotional distress stemmed from having been heckled at three basketball games during a single season. *See supra* at I. Any punitive award above three times the final compensatory damages for false light would bear no reasonable relationship to that harm and would exceed the limit of due process. *E.g., O'Rear v. B.H.,* 69 So.3d 106 (Ala. 2011) (affirming a 2:1 ratio); *Ala. River Grp. v. Conecuh Timber, Inc.,* 261 So.3d 226 (Ala. 2017) (remitting to a 3:1 ratio); *Thomas v. Heard,* 256 So.3d 644 (Ala. 2017) (affirming punitive damages

awards to three plaintiffs at ratios of .88:1, 1.67:1, and 1:1); *Travelers Indem. Co. v. Griner,* 809 So.2d 808 (Ala. 2001) (affirming .67:1 ratio).[7]

### 3. Costs of Litigation

This factor accounts for "all the costs of litigation" to "encourage plaintiffs to bring wrongdoers to trial." *Green Oil,* 539 So.2d at 223-24. While this litigation presumably was costly, a punitive damages award of three times the final compensatory damages for false light would fully offset litigation costs.

## CONCLUSION

If its Post-Verdict Renewed Motion for Judgment as a Matter of Law is not granted, The Times respectfully requests that the Court remit the $1,000,000 compensatory damages award on the false light claim to an amount consistent with the evidence and the punitive award to a maximum of three times the final false light award. Any punitive damages award over three times the amount of the final

[7] Courts routinely remit or cap punitive damages awards in defamation cases at or near 3:1 and have reduced or reversed awards that exceed that range. *E.g. Burnett v. National Enquirer, Inc.,* 193 Cal. Rptr. 206 (Cal. Ct. App. 1983) (remitting $750,000 punitive damages award to $150,000 where reporter composed article despite knowing the story was "totally unverified hearsay" and that one anecdote in particular was invented); *Bunton v. Bentley,* 176 S.W. 3d 21 (Tex. App.—Tyler 2005) (affirming $1,000,000 punitive damages award (for an approximate 3.3:1 ratio) against $300,000 in compensatory damages, as remitted, where a cable television host repeatedly accused a sitting district court judge of being "corrupt" and a "criminal who ought to be in jail"); *Richmond Newspapers, Inc. v. Lipscomb,* 362 S.E.2d 32 (Va. 1987) (entirely vacating $45,000 punitive damages award against newspaper where the evidence was "insufficient to establish the New York Times malice by clear and convincing proof," even where the evidence did show negligence in reporting); *Geraci v. Probst,* 61 A.D.3d 717 (N.Y. App. Div. 2d Dep't 2009) (remitting a $500,000 punitive damages award to $50,000 where defendant falsely stated that plaintiff had illegally profited from a business transaction).

compensatory damages awarded on the false light claim would violate Alabama law and due process.

Dated: September 28, 2026

Respectfully submitted,

*<u>/s/ Matthew J. Winne</u>*
Michael L. Bell
*mbell@lightfootlaw.com*
John G. Thompson
*jthompson@lightfootlaw.com*
Matthew J. Winne
*mwinne@lightfootlaw.com*
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (facsimile)

Chad R. Bowman (pro hac vice)
*bowmanchad@ballardspahr.com*
Emmy Parsons (pro hac vice)
*parsonse@ballardspahr.com*
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 661-2200
(202) 661-2299 (facsimile)

**Attorneys for Defendant**
**The New York Times Company**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 28th day of September 2026, I filed the foregoing with the Clerk of Court and electronically served same to the following:

R. Matt Glover
PRINCE GLOVER HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, AL 35406
Phone: (205) 345-1234
Fax: (205) 752-6313
Email: mglover@princelaw.net

Stephen P. New
NEW, TAYLOR & ASSOCIATES
430 Harper Park Drive
P.O. Box 5516
Beckley, WV 25801
Telephone: 304-250-6017
Facsimile: 304-250-6012
Email: steve@newlawoffice.com

Mary Virginia Buck
BUCK LAW
13112 Martin Road Spur Northport, AL 35473
Phone: (205) 752-6773
Email: bucklaw@charter.net

*/s/ Matthew J. Winne*
Of Counsel